DAVID B. GOLUBCHIK (SBN 185520)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, RANKIN
    & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

Attorneys for Debtor
and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | ) CASE NO. 5:09-bk-60291 |
| | ) |
| **CIMINO BROKERAGE COMPANY dba** | ) Chapter 11 |
| **CIMINO BROTHERS PRODUCE**, | ) |
| | ) |
| Debtor and | ) |
| Debtor in Possession. | ) |
| | ) |
| | ) |
| | ) |
| | ) Disclosure Statement Hearing: |
| | ) Date:   June 16, 2010 |
| | ) Time:  2:30 p.m. |
| | ) Place: Courtroom "3035" |
| | )           280 South First St. |
| | )           San Jose, CA 95113 |
| | ) |
| | ) |

**SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING PLAN OF
REORGANIZATION DATED AS OF JUNE 16, 2010**

1

**EXHIBIT LIST**

Exhibit "A"   Plan of Reorganization Dated as of June 16, 2010

Exhibit "B"   Plan projections

Exhibit "C"   Liquidation analysis, including liquidation analysis prepared by Scouler & Co.

Exhibit "D"   A list of all known Claims that were included in the Schedules or were asserted in proofs of claim to which no objection has been filed to date, but as to which an objection may be filed by the Debtor (or by the Reorganized Debtor after the Effective Date) as the Debtor is continuing with its investigation of Claims.

Exhibit "E"   Schedule of transfers potentially subject to avoidance actions (from Statement of Financial Affairs) – includes insider and non-insider transfers

Exhibit "F"   Valuation of equity in Debtor (prepared by Crowe).

Exhibit "G"   Historical financials from and after date of bankruptcy filing.

Exhibit "H"   Latest available cash, accounts receivable and inventory position of Debtor.

2

# I.

## INTRODUCTION

This Second Amended Disclosure Statement ("Disclosure Statement") is being furnished by Cimino Brokerage Company dba Cimino Brothers Produce, Chapter 11 Debtor and Debtor in Possession in the above-captioned Chapter 11 Case (the "Debtor"), in connection with the Debtor's solicitation of votes to confirm the Plan of Reorganization Dated as of June 16, 2010 (the "Plan") proposed by the Debtor. A copy of the Plan is attached hereto as Exhibit "A".[1]

This Disclosure Statement sets forth certain information regarding the Debtor's pre-petition operating and financial history, the reasons for its Chapter 11 bankruptcy filing, and significant events that have occurred during the Chapter 11 Case. This Disclosure Statement also describes certain terms and provisions of the Plan, certain effects of confirmation of the Plan, and the manner in which distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders of Claims entitled to vote on the Plan must follow for their votes to be counted.

By an order following a hearing on June 16, 2010, the Bankruptcy Court has: (a) approved this Disclosure Statement as containing "adequate information" in accordance with Bankruptcy Code Section 1125 to enable a hypothetical, reasonable investor typical of Holders of Claims against the Debtor to make an informed judgment as to whether to accept or reject the Plan; and (b) authorized use of this Disclosure Statement in connection with the solicitation of votes with respect to the Plan. **APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.** No solicitation of votes may be made except pursuant

---

[1] All capitalized terms used in this Disclosure Statement have the meanings ascribed to such terms in the Plan. To the extent of any inconsistency between the definitions in the Plan and herein, the definitions in the Plan shall govern.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 3 of 171

to this Disclosure Statement and Bankruptcy Code Section 1125. In voting on the Plan, Holders of Claims entitled to vote on the Plan should not rely on any information other than that contained in this Disclosure Statement, the Plan and all exhibits hereto and thereto.

Pursuant to the provisions of the Bankruptcy Code, only certain classes of Claims are entitled to vote on the Plan. If you are entitled to vote to accept or reject the Plan, a "Ballot" and pre-addressed envelope for the return of the Ballot are enclosed. If you are a creditor in Classes 3-5, 8 or 10-16 and did not receive a Ballot, received a damaged or illegible Ballot, or lost your Ballot, please contact counsel for the Debtor, whose contact information is on the first page of this document.

THE DEBTOR RECOMMENDS THAT THE HOLDERS OF CLAIMS IN ALL SOLICITED CLASSES VOTE TO ACCEPT THE PLAN.


## II.

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN (AS SUBSEQUENTLY AMENDED IN ACCORDANCE WITH THE TERMS THEREOF AND APPLICABLE LAW). THE INFORMATION IN THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ANY PARTY WHO DOES NOT OBJECT TO THE DISCLOSURE STATEMENT IS NOT DEEMED TO WAIVE ANY RIGHTS TO OBJECT TO THE CONFIRMATION OF THE PLAN ON ANY BASIS OTHER THAN LACK OF ADEQUATE DISCLOSURE UNDER BANKRUPTCY CODE SECTION 1125.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS TO THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE BY THE DEBTOR AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN SINCE SUCH DATE. THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR, WHO IS UNABLE TO WARRANT OR REPRESENT THAT THIS DISCLOSURE STATEMENT IS WITHOUT ERROR. HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN CAREFULLY AND IN THEIR ENTIRETY AND, WHERE POSSIBLE, CONSULT WITH COUNSEL OR OTHER ADVISORS PRIOR TO VOTING ON THE PLAN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 5 of 171

NOTHING CONTAINED HEREIN SHALL BE DEEMED TO CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS OR INTERESTS. YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX OR OTHER LEGAL CONSEQUENCES OF THE PLAN.

IF ANY INCONSISTENCY EXISTS BETWEEN THE TERMS AND PROVISIONS OF THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS AND PROVISIONS OF THE PLAN SHALL CONTROL. CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE FORWARD LOOKING FORECASTS AND ARE BASED UPON CERTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES.

**IRS CIRCULAR 230 NOTICE**

TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN AND OTHER MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 6 of 171

# III.

## OVERVIEW OF THE PLAN

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan, which is attached hereto as Exhibit "A." For a more detailed description of the terms and provisions of the Plan, see Article VI. below, entitled "The Plan of Reorganization."

## A.    Plan Structure.

The Plan is a plan of reorganization for the Debtor. Pursuant to the Plan, the Debtor will continue to operate its business for the benefit of all creditors. The Debtor has proposed to make payments to creditors over a period of five (5) years from the Effective Date from business operations. Additionally, a "new value" contribution in the amount of $350,000 will be provided to the Debtor by an entity to be formed by one or more of the Debtor's general partners (Armand Cimino, Stephanie Cimino and Vince Cimino) (the "Contributor"). At least two (2) business days prior to the hearing on Plan confirmation, the Debtor will disclose the identities of equity holders of the Contributor, the allocated percentages of interest in the Contributor and the amount each party is contributing to the Contributor and/or Reorganized Debtor. $250,000 of the "new value" contribution will be allocated to administrative expense claims, with $100,000 to be available as an initial payment to general unsecured creditors.

Pursuant to the Debtor's projections, the Debtor anticipates that it will be able to repay all holders of Claims in full over such five (5) year period, as discussed in the Plan and the accompanying projections. While it is difficult to project the Debtor's performance with accuracy, the Plan provides for certain minimum payments to general unsecured creditors which will result in a total payout of not less than $1,300,000 for the benefit of holders of General Unsecured Claims.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 7 of 171

Additionally, the status of the Reorganized Debtor entity will be changed from a general partnership to a limited liability company, with 100% equity interest in the Reorganized Debtor to be issued to the Contributor.

The Plan will become effective on the Effective Date, which shall be the first business day of the first full calendar month which is at least fourteen (14) days following the date the Bankruptcy Court enters the Plan Confirmation Order, unless there is a stay in effect, in which case the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Plan Confirmation Order. The Debtor estimates that the Effective Date will be on or around September 1, 2010.

**B.      Summary of Classification and Treatment of Claims and Interests Under the Plan**

The Plan classifies all pre-petition Claims against and Interests in the Debtor into separate Classes, except for Administrative Claims and Priority Tax Claims, which are not classified pursuant to the Bankruptcy Code. The following chart identifies the classified and unclassified Claims specified in the Plan, estimates the amount of unclassified and classified Claims, and summarizes the treatment of the classified and unclassified Claims under the Plan.

It should be noted that the estimated amounts of Claims are based on the Debtor's schedules, Claims filed, and the outcome of any objections which may be filed to Disputed Claims. However, not all objections to Disputed Claims will be completed prior to the Effective Date, the outcome of which will likely have some impact upon the ultimate amount of Allowed Claims. As a result, for certain Classes of Claims, the actual amounts of Allowed Claims could materially exceed or be materially less than the estimated amounts shown in the chart that follows. The Debtor has not yet fully analyzed all proofs of Claim filed in the Chapter 11 Case. Estimated Claim amounts for each

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 8 of 171

Class set forth below are based upon the Debtor's review of its books and records, and include estimates of a number of Claims that are contingent, disputed and/or unliquidated.

For certain Classes of Claims, estimated percentage recoveries are also set forth below. Estimated percentage recoveries have been calculated based upon a number of assumptions, including the estimate amount of Allowed Claims in each Class. Accordingly, for these reasons, no representation can be or is being made with respect to whether the estimated percentage recoveries shown in the table below for Class 16 will actually be realized by the holders of allowed Claims in such Class.

| Class | Claim/Interest | Amount of Claim | Treatment | Impaired |
|-------|----------------|-----------------|-----------|----------|
| N/A | Administrative Claims | $300,000 est. | Paid in full on the later of the Plan Effective Date and the date the Court enters an order allowing such fees and expenses. | N/A |
| N/A | Priority Tax Claims | $73,100 est. | Paid in full, with interest thereon at the rate specified in 26 U.S.C. § 6621 on the Effective Date, within five (5) years of the Petition Date. Estimated monthly payments to be approx. $1,800 for 48 months after the Effective Date. | N/A |
| 1 | Secured claim of Bank of America (Laredo residence – 1st priority) | $235,000 est. | Debtor anticipates that the residence will be sold within 60 days of the Effective Date, at which time secured debt will be paid in full. Pending sale of property, payments will continue pursuant to loan documents (approx. $2,450 per month). | N |
| 2 | Secured claim of Chase Home Finance | $30,000 est. | Debtor anticipates that the residence will be sold within 60 | N |

9

| | | | | |
|---|---|---|---|---|
| | (Laredo residence – 2nd priority) | | days of the Effective Date, at which time secured debt will be paid in full. Pending sale of property, payments will continue pursuant to loan documents (approx. $350 per month) | |
| 3 | Secured claim of Bank of America (Laredo cooler equipment and building – 1st priority) | $1,061,066 est. | Pursuant to agreement with secured creditor, the principal amount of the debt will be reduced by $5,583.49 which consists of three months principal payments. Additionally, Debtor shall use best efforts to sell the icing equipment (per agreement with secured creditor, Debtor will have 90 days to do so without prejudice to any parties should a sale not occur within such timeframe), the proceeds of which will be turned over to secured creditor and applied to outstanding balance in secured creditor' discretion. The balance of the claim shall be a term note, bearing interest at the rate of 7.5% per annum, until paid. Pending satisfaction of secured claim, claimant will retain lien on property. | Y |
| 4 | South Texas Business Fund (Laredo cooler equipment and building – 2nd priority) | $680,000 est. | Claim will be paid with payments of approx. $8,000 per month. Pending satisfaction of secured claim, claimant will retain lien on property. | Y |
| 5 | Secured claim of Bank of the West (sweeper and scissorlift equipment) | $19,500 est. | Claim will be paid over a period of nine (9) months after the Effective Date, with payments of approx. $850 per month for the first eight (8) months and a final payment of approx. $10,650 in month 9. Pending satisfaction of secured | Y |

| | | | | |
|---|---|---|---|---|
| | | | claim, claimant will retain lien on property. | |
| 6 | Secured claim of Bank of the West (forklifts) | $90,000 est. | On the Effective Date, collateral will be surrendered to claimant in full and complete satisfaction of its secured claim herein. | N |
| 7 | Secured claim of Bank of the West (ice injector system) | $89,000 est. | On the Effective Date, collateral will be surrendered to claimant in full and complete satisfaction of its secured claim herein. | N |
| 8 | Cisco Systems Capital Corp. (VOIP telephone system) | $10,000 secured claim and $90,000 est. unsecured deficiency claim | Claim will be paid over a period of two (2) months after the Effective Date, with payment of approx. $6,700 in month one and balance of approx. $3,300 in month 2. Pending satisfaction of secured claim, claimant will retain lien on property. | Y |
| 9 | Chase Auto Finance (2006 Mustang) | $16,000 est. | The Debtor is in the process of selling this asset in excess of the amount of the secured debt. The proceeds of the sale shall be used to pay the balance of the secured claim in full. | N |
| 10 | Ford Motor Credit (2006 Ford F.150) | $2,400 est. | Claim will be paid over a period of three (3) months, with payments of approx. $800 per month. Pending satisfaction of secured claim, claimant will retain lien on property. | Y |
| 11 | Ford Motor Credit (2008 Ford Expedition) | $17,000 est. | Claim will be paid over a period of 16 months, with payments of approx. $1,100 per month. Pending satisfaction of secured claim, claimant will retain lien on property. | Y |
| 12 | Ford Motor Credit | $16,000 est. | Claim will be paid over a | Y |

| | | | | |
|---|---|---|---|---|
| | (2008 Ford Explorer - Salinas) | | period of 22 months, with payments of approx. $750 per month. Pending satisfaction of secured claim, claimant will retain lien on property. | |
| 13 | Ford Motor Credit (2008 Ford Explorer – Laredo) | $26,000 est. | Claim will be paid over a period of 58 months, with payments of approx. $500 per month. Pending satisfaction of secured claim, claimant will retain lien on property. | Y |
| 14 | GMAC (2007 Yukon) | $1,300 est. | Claim will be paid over a period of one (1) month, with payment of approx. $1,300. Pending satisfaction of secured claim, claimant will retain lien on property. | Y |
| 15 | Wells Fargo Bank | $2,120,986 secured and $4,300,000 deficiency general unsecured | During the pendency of this case, approximately $369,000 in adequate protection payments was made to claimant, which amount will be applied as a credit against the secured claim, reducing the secured claim to $1,751,986. Claim will be paid over a period of 60 months after the Effective Date. Interest shall be consistent with non-default loan terms. Pending satisfaction of secured claim, claimant will retain lien on property. | Y |
| 15.1 | Temple-Inland, Inc. | $913,000 | The Debtor asserts that there is insufficient value in the Debtor's collateral to provide a security interest to TIN, whose alleged security interest is junior to the asserted security interests of Wells Fargo Bank and Bank of America. Based on the foregoing, Temple will receive no distribution on | Y |

12

| | | | | |
|---|---|---|---|---|
| | | | account of Claim 15.1, with the treatment for such claim to be included in Class 16. In the event that a determination is made at Plan confirmation that Temple is entitled to a secured claim, the Debtor proposes to pay the secured portion of such claim over a period of five (5) years at market interest, as may be determined at Plan confirmation, but which the Debtor estimates to be 6% per annum.<br><br>At a June 16, 2010 hearing, Temple expressly elected to treat its claim in accordance with 11 U.S.C. Section 1111(b). In the event that Temple is entitled to a secured claim in an amount greater than of inconsequential value, its claim will be treated solely as a Class 15.1 claim. If Temple's secured claim is determined to be of inconsequential value, Temple's claim will be treated as a Class 16 claim, including, inter alia, its voting rights as such..<br><br>Additionally, Debtor asserts that this claim is disputed and subject to offset. | |
| 16 | General Unsecured Claims | $1,800,000 est of vendor debt plus approx. $5,300,000 in unsecured deficiency claims (including Temple's disputed claim) | On the Effective Date, claimants will receive, in the aggregate, $100,000 from the "new value" contribution. Thereafter, commencing in month 13 and continuing through month 60, claimants will receive on a quarterly basis, in the aggregate, 50% of available cash on hand at the end of the quarter after all | Y |

13

| | | | expenses and a $750,000 operational cash reserve. Based on the Debtor's projections, the Debtor estimates that it will be able to pay 100% of allowed Class 17 claims during such repayment period. However, Class 17 shall be guarantied a minimum distribution of $75,000 per quarter during such repayment period. Based on the foregoing, Class 17 is guarantied to receive not less than $1,300,000 during the Plan repayment period, although the Debtor estimates that all claims will be satisfied in full during such time. | |
|---|---|---|---|---|
| 17 | Equity Interests | N/A | On the Effective Date, all equity interests in the Debtor shall be cancelled and terminated. 100% equity in the Reorganized Debtor, which will be a Limited Liability Company, will be issued to the Contributor | Y |

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST AND QUICKEST RECOVERY POSSIBLE FOR HOLDERS OF ALLOWED CLAIMS AND THUS STRONGLY RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.

## IV.

## PLAN VOTING PROCEDURES AND REQUIREMENTS

**A.    Notice to Holders of Claims and Interests.**

Approval by the Bankruptcy Court of this Disclosure Statement means that the Bankruptcy Court has found that this Disclosure Statement contains information of a kind and in sufficient and

14

adequate detail to enable Holders of Claims to make an informed judgment whether to accept or reject the Plan. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, THE PLAN WILL BE BINDING ON ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, WHETHER OR NOT THEY WERE ENTITLED TO VOTE OR DID VOTE ON THE PLAN, AND WHETHER OR NOT THEY RECEIVE OR RETAIN ANY DISTRIBUTIONS OR PROPERTY UNDER THE PLAN. THUS, THE DEBTOR ENCOURAGES ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE EITHER TO ACCEPT OR REJECT THE PLAN.

THIS DISCLOSURE STATEMENT AND THE PLAN AND ANY EXHIBITS THERETO ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN. No solicitation of votes for the Plan may be made except after distribution of this Disclosure Statement, and no person has been authorized to distribute any information concerning the Plan other than the information contained herein.

**B.** **Holders of Claims In Classes 3-5, 8, and 10-16 are Entitled to Vote on the Plan.**

Subject to the provisions of the order approving this Disclosure Statement, any Holder of a Claim against the Debtor in Classes 3-5, 8 and 10-16 shall be entitled to vote to accept or reject the Plan if: (i) such Holder's Claim has been included by the Debtor in the Schedules as undisputed, non-contingent and liquidated in an amount more than $0.00, or (ii) such Holder has filed a proof of

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 15 of
171

claim on or before the applicable Bar Date; unless such Claim is the subject of a pending objection or has been entirely Disallowed by an order of the Bankruptcy Court.

Unless otherwise permitted, the Holder of any Disputed Claim is not entitled to vote with respect to such Disputed Claim unless the Bankruptcy Court temporarily allows such Disputed Claim for the purpose of voting to accept or reject the Plan. The Debtor may stipulate with some Holders of Disputed Claims for provisional allowance of their Claims for voting purposes. Alternatively, the Holder of a Disputed Claim may seek a Bankruptcy Court order provisionally allowing such Holder's Claim for voting purposes prior to the Confirmation Hearing or such earlier date as may be established by the Bankruptcy Court.

A vote on the Plan may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

All known Holders of Claims entitled to vote on the Plan have been sent a Ballot together with this Disclosure Statement. If you are a Creditor in Class 3-5, 8 or 10-16 and did not receive a Ballot, received a damaged or illegible Ballot, or lost your Ballot, or if you are a party in interest and have any questions concerning this Disclosure Statement, any of the Exhibits hereto, the Plan or the voting procedures in respect thereof, please contact counsel for the Debtor designated below.

## C.  Voting Procedures.

After carefully reviewing this Disclosure Statement and the Exhibits hereto, please indicate your vote with respect to the Plan on the enclosed Ballot and return it either by facsimile, overnight courier or regular mail to counsel for the Debtor at the address specified in the ballot and below. Holders of Claims in Classes entitled to vote should read the Ballot carefully and follow the instructions contained therein. BALLOTS SUBMITTED TO THE BALLOTING AGENT BY ELECTRONIC TRANSMISSION WILL NOT BE ACCEPTED AND WILL BE VOID.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 16 of
171

Please vote and return your ballot to the Balloting Agent at the following address:

David B. Golubchik, Esq.
Levene, Neale, Bender, Rankin & Brill L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Facsimile: (310) 229-1244

FOR YOUR VOTE TO COUNT, YOUR BALLOT MUST ACTUALLY BE <u>RECEIVED</u> AT THE SPECIFIED ADDRESS NO LATER THAN 5:00 P.M. PREVAILING PACIFIC TIME ON <u>JULY 16,</u> 2010.

IF YOU MUST RETURN YOUR BALLOT TO A TRUSTEE, BANK, BROKER OR AGENT, YOU MUST RETURN YOUR BALLOT TO IT IN SUFFICIENT TIME FOR IT TO PROCESS THE BALLOT AND RETURN IT TO DEBTOR'S COUNSEL BY THE VOTING DEADLINE.

To obtain additional ballots, you may contact Debtor's counsel at the addresses specified above.

The Debtor believes that prompt confirmation and implementation of the Plan is in the best interests of the Debtor, all Holders of Claims and the Debtor's estate.

## V.

## DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS

A.    **Background**

The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 <u>et seq.</u> (the "Bankruptcy Code") on November 24, 2009 (the "Petition Date"). The Debtor continues to operate its business and manage its financial affairs as a debtor in possession.

17

The Debtor was founded over 15 years ago by the Cimino family, which has been in the agricultural business since 1895. The Debtor is a fourth generation family produce business with experience in may aspects of the industry such as wholesale, distribution, growing, shipping, retail, foodservice, purchasing and processing. The Debtor is currently owned 50% by Vincent Cimino, 25% by Armand Cimino and 25% by Stephanie Cimino.

**B.  Business Operations**

The Debtor is a year-round grower, shipper and distributor of fresh vegetables and fruits, primarily broccoli. The Debtor, through its Mexican wholly-owned subsidiary (Cimino Brothers Produce Mexico S.A. de C.V. ("Mexican Subsidiary")) is the creator of the Asian Cut Crown broccoli category, and has developed the largest national network of Asian foodservice distributors and customers in the nation. The Debtor is also the largest grower/shipper of fresh broccoli in Mexico and is the largest importer of fresh broccoli in the United States. Unlike its competitors based purely in North America, the Debtor leverages its operations in Mexico to grow and ship fresh and safe quality produce on a year-round basis (depending on the produce item, the growing season in North America is as short as six months, and is generally not longer than 10 months). As an agricultural enterprise, the Debtor's Mexican subsidiary was the first grower/shipper organization in Mexico to be Hazard Analysis and Critical Control Point (HACCP) certified. Moreover, the Debtor is Customs-Trade Partnership Against Terrorism (C-TPAT) Level II certified, which provides for bio-security certification and expedited processing at the U.S. border which significantly mitigates delays associated with cross-border shipments. The Debtor has received a grade of 100% for their Food Safety Certification from Primus Labs (the leading Food Safety Certification Company in the United States.) As a result of its year-round growing capabilities, as well as agricultural and border crossing certifications, the Company commands pricing that is higher than national averages.

18

The Debtor's administrative operations are carried out from its facilities in Salinas, California. The Debtor's primary cooling facilities in the United States are located in Laredo, Texas. As the largest inland port of entry, the Laredo facility is strategically located to deliver fresh produce fast and efficiently to the retail and wholesale grocery industry as well as food service organizations and food processors across the United States.

In order to take advantage of the strategic synergies in Mexico, the Debtor formed the Mexican Subsidiary in approximately April 1998. Substantial funding was initially provided by the Debtor to start operations through the Mexican Subsidiary. Specifically, through funds provided by the Debtor, the Mexican Subsidiary procured equipment in Mexico, including a state-of –the-art cooling facility, similar to that in Laredo, Texas. The Mexican Subsidiary would develop and start the growth of seeds. Thereafter, the plants would be provided to numerous growers in Mexico to grow fruits and vegetables. The Debtor would routinely advance funds to the Mexican growers for such operations and would then apply such advance, or a portion thereof, as a credit against product received from the growers. The Debtor carried such advances as "Grower Receivables" on its books.

## C. Financial Performance and Problems Suffered By Debtor

The Debtor's revenue grew from $14.6 million in 2004 to $20.7 million in 2007. The strong growth in revenue was due to a combination of growth in number of customers, an increase in the number of pack styles (and corresponding unit growth) sold through its existing customer base, and an overall increase in average unit prices. Concurrently, the Debtor's EBITDA grew approximately 49% from $1.3 million in 2004 to $1.9 million in 2005.

The Debtor experienced some heavy rainfall and low yields in the third and fourth quarters of 2007. This restrained the growth path that the Debtor was pursuing for 2007. Grower advances increased as the impact of the rain on lowering yields and plant losses required new plantings for

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 19 of 171

future growing cycles into 2008. This had a large impact on cash flow and cash needs for operating capital as it delayed the company's progress.

The Debtor experienced some severe problems in 2008, commencing with the most rainfall in the last 70 years in Mexico. Subsequently, due to the shortage of plantings from the heavy amounts of rain, the broccoli market became very active, to the point that it became one of the most prolonged high markets in broccoli history. The Debtor was poised to take advantage of the market with the volume that it had in Mexico. Unfortunately, the Debtor's main carton supplier supplied it with approximately 350,000 poor quality cartons, which did not allow it to maximize potential profit. Many deliveries contained damaged products and, in addition to loss of revenue related to the delivery of such damaged product, several strategic customers cancelled future business dealings with the Debtor. Litigation is pending for damages associated with the foregoing. An independent damage expert economist has calculated the initial damages to be approximately $6,500,000. Additionally, plant losses required new plantings as well as advances to growers being carried forward into future growing cycles that had a very large impact on cash flow and cash needs for operating capital.

**D.** **Events Leading To Bankruptcy Filing**

Other than the purchase money security interests, the Debtor's operations were financed primarily by Wells Fargo Bank ("Bank"), which is now owed approximately $6.3 million. In 2009, the Bank required the Debtor to pay down its Line of Credit by $1,500,000 by February 28, 2009. The Debtor was only able to pay it down by approximately $500,000. The Bank initially indicated that this was not a problem and would continue to support the Debtor. However, the Bank changed its position as it moved through 2009 and demanded an exit strategy, including demanding that the Debtor obtain alternate funding. The Debtor used best efforts to obtain alternative financing. However, the short time period provided by the Bank, and the worst economic environment in decades, impeded the Debtor's ability to do so.

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 20 of 171

In early November 2009, the Bank called in financial advisors to analyze the Debtor's operations to determine whether a liquidation should be conducted. At the same time, the Bank demanded that the Debtor hire its own financial analyst. Results by the Bank were demanded on an expedited basis and the Debtor had not had a sufficient opportunity to analyze operations and provide sufficient "assumptions" to the Bank's advisors. Based on very incomplete information, the Bank's advisors, without input from the Debtor's management, advised the Bank that liquidation should be conducted. The projections prepared for the Bank showed an immediate cessation resulting in the Bank recovering approximately $900,000.

Based on the foregoing, the Bank instructed the Debtor that operations must be immediately terminated. Although notice of a foreclosure sale was not provided to the Debtor, the Bank seized the Debtor's accounts located with the Bank, with a balance of over $300,000, and told the Debtor that the Bank wants the Debtor to cease operating, without even an opportunity to conduct an orderly liquidation to maximize value.

The Debtor disagreed with the Bank's position. Specifically, the Debtor disagreed with the "projections" of the third party professionals based on the fact that the assumptions used were incomplete and inaccurate, resulting in substantially reduced revenue as compared to historical revenue.

While the Bank seized the Debtor's accounts maintained with the Bank, in the ordinary course of business, the Debtor also maintained accounts in Laredo, Texas. The Debtor continued to utilize such accounts to preserve operations. Unfortunately, while the Debtor was using best efforts to preserve the Bank's collateral, the Bank took the position that the Debtor "converted" its collateral and advised the Debtor that a state court hearing will be held on November 25, 2009 to seek a TRO and writ of possession as against the Debtor. Based on such improper conduct, the Debtor determined that the commencement of this case was necessary and proper and in the best interest of all creditors and parties in interest.

///

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 21 of 171

### E.      Significant Post-Petition Events

#### 1.      Cash Collateral

Immediately upon commencement of this Case, the Debtor filed numerous first day emergency motions, including a motion for authority to use cash collateral. The Bank opposed such relief and sought to stop operations. At a hearing held on November 25, 2009, the Court granted interim use pending further hearing.

Prior to the continued hearing, the Bank propounded document production requests upon the Debtor, which were responded to. The Bank also conducted a deposition of the Debtor. After the conclusion of such discovery, the Debtor and Bank entered into a stipulation for use of cash collateral through March 19, 2010. The Court also scheduled a status conference and holding date of March 5, 2010 for request to use cash collateral past March 19, 2010.

Additionally, prior to the Continued Hearing, Temple joined in the Bank's objection to use of cash collateral. As a December 16, 2009 hearing, the Court granted use of Temple's cash collateral, if any, through January 29, 2010, with a holding date set forth January 8, 2010. Prior to the January 8, 2010 hearing, the Debtor and Temple stipulated to extend use of cash collateral through March 29, 2010.

The Bank and Temple refused to extend use of cash collateral past March 19, 2010, necessitating the Debtor to file a further request for use of cash collateral, which the Bank and Temple opposed. At the March 5, 2010 hearing, the Court granted use of cash collateral for a period of four (4) weeks and scheduled a further hearing on April 2, 2010, requesting additional information and briefing. The Debtor and Bank parties complied with the Court order and, at the April 2, 2010 hearing; the Court granted use of cash collateral through May 31, 2010 over the objection of the Bank and Temple. The Court also ordered the Debtor to file its plan of reorganization by April 23, 2010.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 22 of
171

A continued cash collateral hearing was held on May 25, 2010. At the foregoing hearing, the Court extended use of cash collateral through June 18, 2010 and, further, continued the cash collateral hearing to June 16, 2010.

### 2. Post-Petition Operations

The Debtor used best efforts to operate post-petition, although its revenues were below projections. This was based on several factors. First, based on the Bank's seizure of funds pre-petition, the Debtor's operations effectively came to a halt for several weeks, with vendors not delivering product and customers not purchasing product. Such cessation of operations was a shock to the Debtor's business and resulted in substantial delays in the Debtor regaining the trust and confidence of its vendors and customers.

In addition, lower revenues were based on the fact that the market price of broccoli dropped temporarily. Since the Debtor has no control over market prices, the reduced revenues were outside of the Debtor's control. Although revenues dropped, the Debtor also reduced its expenses to minimize the impact on its business, with total expenses slashed as much as 53%. Additionally, to take advantage of the lower prices, the Debtor increased its inventory of product. The market price of broccoli has since rebounded substantially, thereby allowing the Debtor to take advantage of its inventory reserves and increased revenues. While revenues have increased, the Debtor continues to use best efforts to keep expenses as low as possible.

It is important to note that the market price of produce constantly fluctuates. The Debtor cannot predict prices with certainty, but can take advantage of dips in price by acquiring more inventory. The Debtor uses its best estimates, based on historical sales and knowledge of conditions, to project prices.

Based on an analysis prepared by Crowe of the change in collateral base during the cash collateral period, cash and inventory has increased from the Petition Date through January 31, 2010, while accounts receivable has decreased. However, the net effect is still that the collateral base increased by $163,839.

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 23 of 171

### 3.      Grower Receivables and Intercompany Debt

On the Petition Date, the Debtor's records reflected "grower receivables" at approximately $3 million. These receivables relate to advances made to growers of primarily broccoli in Mexico to develop, plant and grow crop, which is eventually sold to the Debtor. As was explained at the initial cash collateral hearing, and as the Bank was well aware, the Debtor had no confidence in such information, which required reconciliation and analysis for a period of over five (5) years. That is the reason why, during the initial cash collateral hearing, the Debtor did not utilize the grower receivables in its adequate protection analysis and, in response to the Court's question as to whether the Bank was oversecured, the Debtor advised the Court that it does not know and its too early to tell.

Since the cash collateral hearing, the Debtor employed the accounting firm of Crowe Horwath, LLP ("Crowe"). Crowe spent countless hours analyzing the Debtor's records to understand the relationship with the Mexican growers to assist the Debtor properly accounting for, and quantifying, such receivables in light of the relationship between the Debtor and the Mexican growers, on the one hand, and the Mexican Subsidiary and the growers, on the other hand.

Based on Crowe's analysis, Crowe concluded that, funded by sales of fully grown produce to the Debtor, Mexican Subsidiary coordinates the purchase of seed and growth of transplants in greenhouses on behalf of the growers in Mexico in Mexican New Pesos. Ultimately, these transplants upon transfer to the growers become fully grown produce which the growers sell directly to Mexican Subsidiary. The purchase of the seed and transplants occurs contemporaneously with, and is part and parcel to, the negotiation of a growing contract with one of Mexican Subsidiary's network of Mexican growers. The growing contract is between Mexican Subsidiary and the grower. The growing contract is perfected with the Mexican government and collateralized by the grower's assets. Mexican Subsidiary is that entity that is advancing funds to the seed supplier and greenhouses on behalf of the growers based on projected yields negotiated with the growers. Further, Mexican Subsidiary will, from time to time, advance funds directly to growers to assist

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 24 of 171

them with meeting operational needs. If, for some reason, a grower is unable to meet the yields contracted for, Mexican Subsidiary can charge back to the grower the pro-rata amount of funds advanced. In practice, such amounts are normally taken as a reduction of the purchase price of fully grown produce purchased from the grower. If a grower completely defaults on a contract, Mexican Subsidiary has recourse to pursue collection of the funds advanced through government and legal avenues. More often, however, unrecovered amounts advanced can be collected at a later date from growers as a reduction in the purchase price of fully grown produce from a future growing cycle.

Based on Crowe's analysis, and in light of the foregoing relationships, Crowe determined that it is appropriate to book such receivables with the Mexican Subsidiary. As a result, the Debtor recorded a journal entry to reclassify the receivable to an intercompany account (with the Mexican Subsidiary) and reduce the overall balance to better reflect actual estimated amounts ultimately collectible by the Debtor. This revised balance is estimated by management (both in Salinas and Mexico) to be approximately $786,000. The uncollectible amount was expensed to Cost of Goods Sold.

Next, the Debtor also reconciled the intercompany accounts. In this reconciliation, approximately $2 million of accounts payable to the Mexico Subsidiary was offset against the same amount of receivables from the Mexico Subsidiary. Further, the transactions with Mexico were categorized to reflect the appropriate type of transaction (such as advances for operations). Capital expenditures made on behalf of the Mexico Subsidiary were reclassified to an investment in subsidiary account. After these adjustments, the net amount receivable from the Mexico Subsidiary as of the Petition Date was approximately $1.663 million, inclusive of the revised grower receivable mentioned above. The balance in the investment account was $2.438 million.

The Mexican Subsidiary has agreed that it will continue to use best efforts to collect such receivables on behalf of the Debtor and to transfer 100% of such collected proceeds to the Debtor.

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 25 of 171

### 4. Laredo Litigation

The Debtor commenced litigation in Laredo, Texas based on defective boxes provided to the Debtor by Temple-Inland, Inc. ("Temple"). An independent expert quantified the Debtor's damages at approximately $6.5 million.

Mediation was scheduled to be held in the foregoing litigation in December 2009. However, based on Debtor's allegation that Temple failed to comply with its discovery obligations, which Temple disputes, mediation could not move forward and was therefore cancelled. Additionally, Temple filed a motion to transfer venue of the case to Austin, Texas. In early June 2010, the district court in Laredo issued its intent to transfer venue of the case to Austin, Texas. On June 15, 2010, the Debtor filed a Notice of Nonsuit Without Prejudice, pursuant to which the Debtor's complaint against Temple was dismissed without prejudice. The counter-claim by Temple against the Debtor has not been dismissed, but is subject to the automatic stay. The Debtor intends to commence new litigation against Temple in the United States Bankruptcy Court for the Northern District of California, San Jose Division. Temple advised the Debtor that it intends to oppose such litigation, including venue of the case in the Bankruptcy Court. Additionally, Temple has advised the Debtor that it disagrees with the Debtor's characterization of the merits of the litigation and Temple believes that such litigation lacks merit and was filed solely to avoid payment of alleged obligations to TIN. Debtor disagrees with the foregoing but has agreed to include such statement herein.

The Debtor intends to vigorously pursue such litigation. However, based on Temple's conduct, it does not appear that this matter will be resolved quickly. Additionally, at this time, it is unclear as to the final cost of such litigation, but the Debtor believes, based on discussion with counsel, that such costs may be approximately $200,000. Based on the Debtor's operating cash reserves, as set forth in the projections, the Debtor is confident that it will be able to fund such litigation. The Debtor will retain the right to continue with such litigation after the Effective Date.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 26 of
171

## 5. Additional Measures To Improve Cashflow

The Debtor, with the assistance of Crowe, has analyzed its income and expenses, especially during the cash collateral period.

Following are cost-cutting measures which the Debtor implemented in connection with its operations in Salinas, California:

    a.    Reduced fuel and auto related expenses;

    b.    Renegotiated health insurance plan to reduce premiums;

    c.    Reduced office rent to below market rate;

    d.    Reducing expenses for office supplies (computer hardware expense, dues, advertising, subscriptions, donations, collection expense, inspections, furniture & fixture expense, misc. consulting fees, misc. office equipment);

    e.    Reducing postage expense;

    f.    Eliminating 31% of workforce in Salinas, resulting in savings in payroll and related payroll taxes and benefits;

    g.    Based on reduction in workforce, workers' compensation was reduced;

    h.    Reduced travel and promotion expenses; and

    j.    Reduced utilities expenses..

In addition to the cost-cutting measures in Salinas, following are cost-cutting measures which the Debtor implemented in connection with its operations in Laredo, Texas:

    a.    Eliminating 40% of workforce in Laredo, resulting in savings in payroll and related payroll taxes and benefits;

    b.    Reduced fuel and auto related expenses;

    c.    Based on reduction in workforce, workers' compensation was reduced;

    d.    Reducing cooler supplies;

    e.    Reducing office supplies;

27

f.     Reducing postage expense;

g.     Reduced travel and promotion expenses;

h.     Upon plan confirmation, utilities expense will be further reduced based on the fact that icing and cooling activities will be relocated to the Mexican subsidiary; and

i.     Upon sale of real property (house), expenses related to repairs and maintenance will be eliminated.

The Debtor is restructuring its operations in Laredo, Texas. Currently, storage, handling and shipping in Laredo costs the Debtor approximately $1.00 per carton. The Debtor has researched the possibility of shifting all, or a portion, of the Debtor's operations to a third-party provider. Based on such research, the Debtor concluded that third-party providers would cost approximately $0.50 per carton to be stored, handled and shipped on behalf of the Debtor. However, by shifting more cooling operations to Mexico and returning specialized cooler equipment to the secured creditors (estimated to have a value of approximately $850,000), the Debtor will have lowered its combined cost and debt payments to approximately .54 per carton. The Debtor believes this substantial cost saving will assist the Debtor with cash flow, while allowing the Debtor to maintain quality control over its products as compared to shifting production to a third party.

The Debtor will further reduce its work force in Laredo to eliminate redundant personnel as icing and cooling activities are going to be resourced to Mexico. Also, some managerial salaries will shift to the Debtor's Mexican subsidiary in line with amount of time the managers spend in Mexico versus Laredo. This reduction is expected to occur shortly after plan confirmation and will reduce payroll taxes by the same proportion.

F.     **Avoidance Actions.**

The Bankruptcy Code authorizes a debtor-in-possession or trustee to seek avoidance and recovery of "preferential" and "fraudulent" transfers. Generally, a preferential transfer is a transfer made during the ninety (90) days preceding commencement of a bankruptcy case on account of an

Case: 09-60291     Doc# 143     Filed: 06/21/10     Entered: 06/21/10 11:19:28     Page 28 of 171

existing debt that enables a creditor to receive more than it would have received in a liquidation case. Where the transfer is to an "insider", the ninety-day period is extended to one year.

The Debtor has been working with Crowe to conduct an analysis of such claims and a preliminary analysis has been completed. At this time, it appears that, of approximately $1 million in transfers to non-insiders during the preference period, such avoidance actions against non-insiders total approximately $200,000.

The Debtor will continue to work with Crowe to complete such investigation and pursue claims for the benefit of the estate and all creditors. A detailed analysis of avoidance actions against insiders has not been completed, but a preliminary analysis shows that, of approximately $7 million in transfers to insiders within the insider preference period (approximately $6.4 million of which relates to product purchases from the Mexico subsidiary, with the balance constituting primarily rent payments and compensation), there appear to be no avoidable transfers which may be pursued for the benefit the estate and its creditors.

As described more fully in the Plan, a Post-Confirmation Committee, comprised of present members of the Committee of Unsecured Creditors willing to serve, and any additional general unsecured creditors unanimously approved for inclusion on the Post-Confirmation Committee by its members, will be formed on or after the Effective Date. Such Post-Confirmation Committee will have authority to investigate, and as noted below and in the Plan, prosecute avoidance actions. The Debtor will cooperate in any investigation efforts of the Creditors' Committee and/or the Post-Confirmation Committee, however the case may be, in connection with such investigation.

Potential defendants related to avoidance actions (insider and non-insider) are set forth in Exhibit "E" hereto. Once the Debtor concludes its analysis, the Debtor or the Reorganized Debtor, whichever the case may be, will initiate actions (the "Avoidance Actions") against non-insider defendants against which the Debtor believes that it has viable avoidance claims.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 29 of
171

On the Effective Date the power and standing of this estate to pursue Avoidance Actions shall be transferred to and retained by the Reorganized Debtor pursuant to section 1123(b) of the Bankruptcy Code, or the Post-Confirmation Committee. The Post-Confirmation Committee shall have the power and standing of this estate to pursue any Avoidance Actions that the Reorganized Debtor has not commenced within 15 days' notice of the Post-Confirmation Committee's intention to prosecute such Avoidance Actions on behalf of the estate.

The Debtor and the Post-Conformation Committee may retain professionals to pursue such Avoidance Actions on an hourly or contingency basis. Any professional fees and expenses incurred in the pursuit of avoidance causes of action may be paid solely from the recovery from the pursuit of such avoidance causes of action. All claims, causes of action and avoidance actions of the Debtor and the Debtor's estate is preserved by the Plan, and the Reorganized Debtor and the Post-Confirmation Committee, however the case may be, shall have full power and authority to settle, adjust, retain, enforce or abandon any claim, cause of action or avoidance actions under section 1123(b) of the Bankruptcy Code or otherwise, regardless of whether such claims, causes of action or avoidance actions were commenced prior or subsequent to the Effective Date. Any net recovery from Avoidance Actions shall be paid on a pro-rated basis to holders of Class 16 Claims in addition to the payments provided for in the Plan until such Claims are paid in full.

## VI.

## THE PLAN OF REORGANIZATION

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND IMPLEMENTATION OF THE PLAN AND THE CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT.

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 30 of 171

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR A FULL AND COMPLETE STATEMENT OF SUCH TERMS AND PROVISIONS.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CLAIMS AGAINST, AND INTERESTS IN, THE DEBTOR UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON ALL HOLDERS OF CLAIMS AGAINST, AND INTERESTS IN, THE DEBTOR, REGARDLESS OF WHETHER SUCH CLAIM HOLDERS AND INTEREST HOLDERS VOTED ON THE PLAN AND, IF THEY VOTED ON THE PLAN, WHETHER THEY VOTED TO ACCEPT OR REJECT THE PLAN. IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, THE TERMS OF THE PLAN AND/OR SUCH OTHER OPERATIVE DOCUMENT WILL CONTROL.

**A.** **Introduction.**

In general, a Chapter 11 plan: (i) divides claims and equity interests into separate classes; (ii) specifies the Property that each class is to receive under the plan; and (iii) contains other provisions necessary to the reorganization or liquidation of the debtor. Under the Bankruptcy Code, Claims and "equity interests" (or "Interests") are classified rather than "creditors" and "shareholders." For purposes of this Disclosure Statement, the term "Holder" refers to the Holder of a Claim or Interest.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 31 of 171

**B.**      **General Plan Description.**

The Plan is a plan of reorganization for the Debtor. Pursuant to the Plan, the Debtor will continue to operate its business for the benefit of all creditors. The Debtor has proposed to make payments to creditors over a period of five (5) years from the Effective Date from business operations. Additionally, a "new value" contribution in the amount of $350,000 will be provided to the Debtor by the Contributor. $250,000 of the "new value" contribution will be allocated to administrative claims, with $100,000 to be available as an initial payment to general unsecured creditors.

Pursuant to the Debtor's projections, the Debtor anticipates that it will be able to repay all Holders of Claims in full over such five (5) year period, as discussed in the Plan and the accompanying projections. While it is difficult to project the Debtor's performance with accuracy, the Plan provides for certain minimum payments to general unsecured creditors which will result in a total payout of $1,300,000 for the benefit of Holders of General Unsecured Claims.

Additionally, the status of the Debtor's entity will be changed from a general partnership to a limited partnership or limited liability company, with 100% equity interest in the Reorganized Debtor to be issued to the Contributor.

**C.**      **Classification and Treatment of Claims.**

Bankruptcy Code Section 1122 provides that a plan of reorganization must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with Section 1122, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than Administrative Claims and Priority Tax Claims which, pursuant to Section 1123(a)(1), are not to be classified). The Debtor also is required, under Section 1122, to classify Claims against

32

and Interests in the Debtor into Classes that contain Claims and Interests that are substantially similar to the other Claims and Interests in such Class.

The Debtor believes that the Plan has classified all Claims and Interests in compliance with the provisions of Section 1122 and applicable case law, but it is possible that a Holder of a Claim or Interest may challenge the Debtor's classification of Claims and Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In that event, the Debtor intends, to the extent permitted by the Bankruptcy Code and the Bankruptcy Court, to make such reasonable modifications of the classifications under the Plan to permit confirmation and to use the Plan acceptances received for purposes of obtaining the approval of the reconstituted Class or Classes of which each accepting Holder ultimately is deemed to be a member. Any such reclassification could adversely affect the Class in which such Holder initially was a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan.

The amount of any Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims ultimately Allowed by the Bankruptcy Court with respect to each Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Class. Thus, the value of the Property that ultimately will be received by a particular Holder of an Allowed Claim under the Plan may be adversely or favorably affected by the aggregate amount of Claims ultimately Allowed in the applicable Class.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized below. The Debtor believes that the consideration, if any, provided under the Plan to the Holders of Claims and Interests reflects an appropriate resolution of their Claims and Interests, taking into account the differing nature and priority (including applicable contractual and

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 33 of
171

statutory subordination) of such Claims and Interests and the fair value of the Debtor's Assets. In view of the deemed rejection by Class 18, however, and the possible rejection of the Plan by other voting Classes, the Debtor will seek confirmation of the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code as to any dissenting Class. Bankruptcy Code Section 1129(b) permits confirmation of a Chapter 11 plan in certain circumstances even if the plan has not been accepted by all impaired Classes of Claims and Interests. Although the Debtor believes that the Plan can be confirmed under Section 1129(b), there can be no assurance that the Bankruptcy Court will find that the requirements to do so have been satisfied.

### 1. Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has <u>not</u> placed the following claims in a class.

### a. <u>Administrative Expenses</u>

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment. The following chart lists <u>all</u> of the Debtor's § 507(a)(2) administrative claims and their treatment under the Plan.

| <u>NAME</u> | <u>AMOUNT OWED</u> | <u>TREATMENT</u> |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Plan Effective Date. |
| Office of the United States Trustee ("OUST") | $0 | Paid in full on the Plan Effective Date |
| Levene, Neale, Bender, Rankin & Brill L.L.P. | $25,000 (est.) (net of pre-petition retainer) | Paid in full on the later of the Plan Effective Date and |

34

| | | |
|---|---|---|
| ("LNBRB"), bankruptcy counsel to the Debtor | | the date the Court enters an order allowing such fees and expenses. |
| Crowe Horwath LLP, accountants to the Debtor | $235,000 (est.) | Paid in full on the later of the Plan Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Manasian & Rougeau, LLP, bankruptcy counsel to the Creditors' Committee | $40,000 (est.) | Paid in full on the later of the Plan Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Post-Petition Non-Professional Fee Administrative Expenses | $0 | Paid in full out of the Debtor's funds in the ordinary course of the Debtor's business following the entry of an order of the Court if a dispute exists between the Debtor and the administrative claim holder. |
| **TOTAL** | **$300,000 (est.)** | **Paid in the manner described above.** |

<u>Court Approval of Fees Required</u>:

The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses except fees owing to the Clerk of the Bankruptcy Court and fees owing to the OUST, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by the Court will be required to be paid under the Plan. The administrative claim amounts set forth above simply represent the Debtor's best estimates as to the amount of allowed administrative claims in this case. The actual administrative claims may be higher or lower. Much of whether the actual administrative claims described above for professionals will be dependent upon whether the Debtor is required to engage in substantial litigation regarding the confirmation of the Plan and/or objecting to claims. By voting to accept the Plan, creditors are not

35

acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. Similarly, professionals who have been employed in this Case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Court order as such fees and expenses are just estimates provided at the time of the preparation of this Disclosure Statement.

To the extent allowed administrative claims are allowed prior to the Effective Date, such allowed administrative claims may be paid by the Debtor out of the Debtor's funds. To the extent allowed administrative claims are allowed after the Effective Date, such allowed administrative claims will be paid by the "new value" contribution and, if necessary, Reorganized Debtor out of its operating funds.

### b. Priority Tax Claims

Priority tax claims include certain income, employment and other taxes described by 11 U.S.C. § 507(a)(8) not secured by a lien in the Debtor's assets. The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in regular installment payments in cash (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such claim; (ii) over a period ending not later than five (5) years after the Petition Date; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for under the Plan. The following table lists all of Debtor's § 507(a)(8) priority tax claims and its treatment under this Plan:

| CLAIMANT | TREATMENT |
|---|---|
| City of Laredo Tax Dept. - $13,718.36<br><br>Internal Revenue Service - $270.00<br><br>Internal Revenue Service - $7,749.94 | Priority tax claims will be paid in full, with interest thereon at the rate specified in 26 U.S.C. § 6621 on the Effective Date (est. 8%), over a period of 48 months after the Effective Date. |

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 36 of 171

| CLAIMANT | TREATMENT |
|---|---|
| Internal Revenue Service - $7,750.20<br><br>TexWor Cashier - $41.89<br><br>United ISD Tax Office - $25,732.38<br><br>Webb County Tax Assessor - $16,612.47 | Payment Interval – monthly<br>Interest rate – 8%<br>Pmt amount/interval –  $1,800 |

2.      **Classified Claims and Interests**

a.      **Classes of Secured Claims**

Secured claims are claims secured by liens against property of the estate.   The following chart sets forth the description and treatment of each of the Debtor's secured claims:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of:<br><br>• Name = Bank of America<br><br>• Collateral description = Single family residence located at 10615 Mountain Cr., Laredo, Texas 78045 (first priority)<br><br>• Collateral value = $415,000<br><br>• Total claim amount = $235,000 est. | N | No; allowed claims in this class are not entitled to vote on the Plan. | Debtor anticipates that the residence will be sold within 60 days of the Effective Date, at which time secured debt will be paid in full.<br><br>Pending sale of property, payments will continue pursuant to loan documents<br><br>Pmt amount = $2,450 per month<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |

37

| 2 | Secured claim of:<br><br>• Name = Chase Home Finance<br><br>• Collateral description = Single family residence located at 10615 Mountain Cr., Laredo, Texas 78045 (second priority)<br><br>• Collateral value = $415,000<br><br>• Total claim amount = $30,000 est. | N | No; allowed claims in this class are not entitled to vote on the Plan. | Debtor anticipates that the residence will be sold within 60 days of the Effective Date, at which time secured debt will be paid in full.<br><br>Pending sale of property, payments will continue pursuant to loan documents<br><br>Pmt amount = $350 per month<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
|---|---|---|---|---|
| 3 | Secured claim of:<br><br>Name = Bank of America<br><br>• Collateral description = Cooling warehouse <u>and cooling equipment</u> located in Laredo, Texas (first priority, but junior to property taxes with respect to real property)<br><br>• Collateral value = $2,200,000 est. (includes real | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Pursuant to agreement with secured creditor, the principal amount of the debt will be reduced by $5,583.49 which consists of three months principal payments. Additionally, Debtor shall use best efforts to sell the icing equipment (per agreement with secured creditor, Debtor will have 90 days to do so without prejudice to any parties should a sale not occur within such timeframe), the proceeds of which will be turned over to secured creditor and applied to outstanding balance in secured creditor' discretion. The balance of the claim shall be a term note, bearing interest at the rate of 7.5% per annum, until paid. |

38

| | | | | |
|---|---|---|---|---|
| | property and cooling equipment)<br><br>• Total claim amount = $1,061,066 est. | | | Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 4 | Secured claim of:<br><br>Name = South Texas Business Fund<br><br>• Collateral description = Cooling warehouse <u>and cooling equipment</u> located in Laredo, Texas (second priority)<br><br>• Collateral value = $2,200,000 est.<br><br>• Total claim amount = $680,000 est.<br><br>South Texas Business Fund (Laredo cooler equipment and building – 2nd priority) | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over the balance of the loan term with payments of approx. $8,000 per month.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 5 | Secured claim of:<br><br>Name = Bank of the West<br><br>• Collateral description = sweeper and | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of nine (9) months after the Effective Date, with payments of approx. $850 per month for the first eight (8) months and a final payment of approx. $10,650 in month 9. |

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 39 of 171

| | | | | |
|---|---|---|---|---|
| | scissorlift equipment<br><br>• Collateral value = $18,000 est.<br><br>• Total claim amount = $19,500 est. ($18,000 secured claim and $1,500 general unsecured claim) | | | Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 6 | Secured claim of:<br><br>Name = Bank of the West<br><br>• Collateral description = forklifts<br><br>• Collateral value = unknown, but less than asserted claim<br><br>Total claim amount = $90,000 est. | N | No; allowed claims in this class are not entitled to vote on the Plan. | On the Effective Date, collateral will be surrendered to claimant in full and complete satisfaction of its secured claim herein. |
| 7 | Secured claim of:<br><br>Name = Bank of the West<br><br>• Collateral description = ice injector equipment<br><br>• Collateral value = unknown, but | $89,000 est. | No; allowed claims in this class are not entitled to vote on the Plan. | On the Effective Date, collateral will be surrendered to claimant in full and complete satisfaction of its secured claim herein. |

40

| | | | | |
|---|---|---|---|---|
| | less than asserted claim<br><br>Total claim amount = $89,000 est. | | | |
| 8 | Secured claim of:<br><br>Name = Cisco Systems Capital Corp.<br><br>• Collateral description = VOIP Telephone Equipment<br><br>• Collateral value = $10,000 est.<br><br>• Total claim amount = $100,000 est. ($10,000 secured claim and $90,000 general unsecured claim) | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of two (2) months after the Effective Date, with payment of approx. $6,700 in month one and balance of approx. $3,300 in month 2.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 9 | Secured claim of:<br><br>Name = Chase Auto Finance<br><br>• Collateral description = 2006 Ford Mustang<br><br>• Collateral value = $35,000 est.<br><br>Total claim amount = $16,000 est. | N | No; allowed claims in this class are not entitled to vote on the Plan. | The Debtor is in the process of selling this asset in excess of the amount of the secured debt. The proceeds of the sale shall be used to pay the balance of the secured claim in full.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |

| | | | | |
|---|---|---|---|---|
| 10 | Secured claim of:<br><br>Name = Ford Motor Credit<br><br>• Collateral description = 2006 Ford F-150 Truck<br><br>• Collateral value = $10,000 est.<br><br>Total claim amount = $2,400 est. | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of three (3) months, with payments of approx. $800 per month.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 11 | Secured claim of:<br><br>Name = Ford Motor Credit<br><br>• Collateral description = 2008 Ford Expedition<br><br>• Collateral value = $25,000 est.<br><br>Total claim amount = $17,000 est. | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of 16 months, with payments of approx. $1,100 per month.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 12 | Secured claim of:<br><br>Name = Ford Motor Credit<br><br>• Collateral description = 2008 Ford Explorer – located in Salinas | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of 22 months, with payments of approx. $750 per month.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall |

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 42 of 171

| | | | | |
|---|---|---|---|---|
| | • Collateral value = $20,000 est.<br><br>Total claim amount = $16,000 est. | | | be in full and complete satisfaction of such secured claim. |
| 13 | Secured claim of:<br><br>Name = Ford Motor Credit<br><br>• Collateral description = 2008 Ford Explorer – located in Laredo<br><br>• Collateral value = $20,000 est.<br><br>Total claim amount = $26,000 est. ($20,000 secured claim and $6,000 unsecured deficiency claim) | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of 58 months, with payments of approx. $500 per month.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 14 | Secured claim of:<br><br>Name = GMAC<br><br>• Collateral description = 2007 GMC Yukon<br><br>• Collateral value = $20,000 est. | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of one (1) month, with payment of approx. $1,300.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |

43

| | | | | |
|---|---|---|---|---|
| | Total claim amount = $1,300 est. | | | |
| 15 | Secured claim of:<br><br>Name = Wells Fargo Bank<br><br>• Collateral description = Substantially all assets of Debtor (including, without limitation, cash, accounts receivable, inventory, fixtures, furnishings and equipment, and intellectual property) excluding real property, vehicles and equity in Mexican subsidiary<br><br>Priority – First/Senior<br><br>• Collateral value = $2,120,986 est.<br><br>Total claim amount = $6,300,000 est. ($2,120,986 secured claim and $4,179,014 unsecured deficiency | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | During the pendency of this case, approximately $369,000 in adequate protection payments was made to claimant, which amount will be applied as a credit against the secured claim, reducing the secured claim to $1,751,986.<br><br>Claim will be paid over a period of 60 months after the Effective Date. Interest shall be consistent with non-default loan terms.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>Additionally, claimant shall retain its lien in the Laredo litigation against Temple with the same extent, validity and priority as claimant was entitled to on the Petition Date. To the extent that claimant receives distributions on account of such collateral, the unsecured deficiency portion of the claim will be reduced accordingly.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |

| | | | | |
|---|---|---|---|---|
| | claim) | | | |
| 15.1 | Secured claim of:<br><br>Name = Temple-Inland, Inc.<br><br>• Collateral description = Substantially all assets of Debtor excluding real property, vehicles and equity in Mexican subsidiary<br><br>Priority – Junior to Wells Fargo Bank<br><br>• Collateral value available for claim = $0<br><br>Total claim amount = $913,000 ($0 secured claim and $913,000 unsecured deficiency claim) | N | Impaired; Deemed to have rejected the Plan; Not are entitled to vote on the Plan. | The Debtor asserts that there is insufficient value in the Debtor's collateral to provide a security interest to TIN, whose alleged security interest is junior to the asserted security interests of Wells Fargo Bank and Bank of America. Based on the foregoing, Temple will receive no distribution on account of Claim 15.1, with the treatment for such claim to be included in Class 16. In the event that a determination is made at Plan confirmation that Temple is entitled to a secured claim, the Debtor proposes to pay the secured portion of such claim over a period of five (5) years at market interest, as may be determined at Plan confirmation, but which the Debtor estimates to be 6% per annum.<br><br>At a June 16, 2010 hearing, Temple expressly elected to treat its claim in accordance with 11 U.S.C. Section 1111(b). In the event that Temple is entitled to a secured claim in an amount greater than of inconsequential value, its claim will be treated solely as a Class 15.1 claim. If Temple's secured claim is determined to be of inconsequential value, Temple's claim will be treated as a Class 16 claim, including, inter alia, its voting rights as such.<br><br>Additionally, Debtor asserts that this claim is disputed and subject to offset. |

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 45 of 171

|  |  |  |  |  |
|--|--|--|--|--|

### b.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The Debtor does not believe that there are any claims against the Debtor which may fall into such a class.

### c.    Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).  The following chart identifies the Plan's treatment of the classes containing all of the Debtor's non-priority general unsecured claims (See Exhibit "C" to this Disclosure Statement for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--|--|--|--|
| 16 | All allowed general unsecured claims, estimated To be $1,800,000 of vendor debt plus approx. $5,300,000 in unsecured deficiency claims (including Temple's claim), for total unsecured claims of approx. $7,100,000 | Impaired; allowed claims in this class are entitled to vote on the Plan. | On the Effective Date, claimants will receive, in the aggregate, $100,000 from the "new value" contribution.          Thereafter, commencing in month 13 and continuing through month 60, claimants will receive on a quarterly basis, in the aggregate, 50% of available cash on hand at the end of the quarter after all expenses and a $750,000 operational cash reserve.  Based on the Debtor's projections, the Debtor estimates that it will be able to pay 100% of allowed Class 16 claims during such repayment period. |

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 46 of 171

|  |  |  |  However, Class 16 shall be guarantied a minimum distribution of $75,000 per quarter during such repayment period. Based on the foregoing, Class 16 is guarantied to receive not less than $1,300,000 during the Plan repayment period, although the Debtor estimates that all claims will be satisfied in full during such time.

There shall be no prepayment penalties for the Debtor's early payment of any amounts owed to class 16 claim holders pursuant to the treatment of class 16 claims.

The foregoing treatment shall be in full and complete satisfaction of such Class 16 claims. |
|  |  |  |  |

### d. Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 17 | All equity holders in the Debtor. | Impaired; deemed to have rejected the Plan | On the Plan Effective Date, all class 17 interests will be deemed cancelled, terminated, extinguished and of no further force and effect and will no longer constitute an equity interest in the Debtor without the need for either the Debtor or the class 17 interest holders to take any further action. Interest holders will not receive any distribution or retain any property under the Plan on account of their equity interests in the Debtor.

Instead, 100% interest in the |

47

| | | | Reorganized Debtor shall be issued to the Contributor. |
|---|---|---|---|

**D.    Effect of Confirmation of the Plan.**

    **1.    Vesting of Assets in the Reorganized Debtor.**

On the Effective Date, all Assets of the Debtor and its estate shall vest as in the Reorganized Debtor.

    **2.    Authority to Effectuate the Plan.**

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without further approval or order from the Bankruptcy Court.    The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to carry out the Plan and to effectuate the distributions provided for under the Plan, subject to the provisions of the Plan.

    **3.    Dissolution of the Creditors' Committee and Formation of Post-Confirmation Committee**

On the Effective Date, the Creditors' Committee will be deemed dissolved and its members will be released and discharged from all further duties and obligations arising from or related to the Chapter 11 Case.

On the Effective Date, a Post-Confirmation Committee, comprised of present members of the Committee of Unsecured Creditors willing to serve, and any additional general unsecured creditors unanimously approved for inclusion on the Post-Confirmation Committee by its members, will be formed. Such Post-Confirmation Committee will be authorized to (a) monitor the Reorganized Debtor's operations after the Effective Date; (2) analyze claims and prosecute claims objections; and prosecute any Avoidance Actions that the Reorganized Debtor has not commenced within 15 days'

48

notice of the Post-Confirmation Committee's intention to prosecute such Avoidance Actions on behalf of the estate.

As is the case with the Creditors' Committee, the Post-Confirmation Committee shall serve without compensation.

The Reorganized Debtor shall provide quarterly income statements and balance sheets to the Post-Confirmation Committee and Wells Fargo Bank to monitor the Reorganized Debtor's operations during the Plan period.

**E.    Implementation and Means of Execution of the Plan.**

> **1.    Management of the Reorganized Debtor.**

The Debtor currently anticipates that Armand Cimino, Stephanie Cimino and Vince Cimino will be employed by the Reorganized Debtor as management to carry out its business operations and will continue to receive compensation commensurate with current levels.

Armand Cimino is responsible for managing and overseeing the Debtor's Texas and Mexico operations. In 1996, Armand Cimino moved to Mexico and established production and the post harvest processes. Additionally, he developed the quality control systems, food safety procedures, accounting, maintenance, packing, and purchasing. He is responsible for managing relationships with growers, scheduling harvesting and ensuring quality control. In 2005-2006, Armand facilitated the acquisition and construction of the Laredo operation. Armand coordinates the operations between the Debtor and its subsidiary in Mexico. In 2008, the Debtor was the largest fresh broccoli shipper in Mexico and it was the largest shipper of Asian cut broccoli crowns in North America. As of April 19, 2010, Armand Cimino receives compensation of $4,702.71 bi-monthly.

Stephanie Cimino is a part of the core team in Texas and Mexico. Ms. Cimino manages and operates the Debtor's operations in Texas and coordinates operations in Mexico, along with Armand

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 49 of 171

Cimino. She focuses on the daily operation, from a management and administrative side, to assist the Debtor in operating efficiently. As of April 19, 2010, Stephanie Cimino receives compensation of $4,702.71 bi-monthly.

Vince Cimino heads the Salinas, California office, which is responsible for all sales, marketing and administrative functions for the Debtor. He is also the Debtor's Chief Financial Officer (CFO). In addition to his duties as CFO, Vince Cimino is responsible for establishing and managing relationships with key customers and carrying out administrative functions related to the day-to-day operations. As of April 19, 2010, Vince Cimino receives compensation of $9,405.45 bi-monthly.

The Debtor does not anticipate any other persons to be involved in the Debtor's management. Notwithstanding the foregoing, demands of the Debtor may change and the Debtor may need to make appropriate adjustments as necessary, provided that such changes do not impair the Reorganized Debtor's ability to perform under the Plan, absent further order of this Court.

### 2. Funding of the Plan.

Initially, the Plan will be funded with a $350,000 "new value" contribution. As set forth in an analysis prepared by Crowe, a copy of which is attached hereto as Exhibit "F", the value of the equity interest in the Debtor is zero ($0). As a result, the Debtor submits that the "new vale" contribution of $350,000 is substantial, and greatly in excess of the value of equity being obtained in the Reorganized Debtor. Thereafter, plan payments will be funded from the Debtor's continued operations, as set forth in the projections appended hereto.

### 3. The Rights of Action.

The Reorganized Debtor shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue, any and all claims and causes of action of the estate which were not commenced prior to the Effective Date, other than Avoidance Actions and claims objections

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 50 of 171

prosecuted by the Post-Confirmation Committee. The Bankruptcy Court shall retain jurisdiction over all such actions.

The Reorganized Debtor may, but shall not be required to, set-off against any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, any action the Reorganized Debtor may have against the Holder of the Claim, but neither the failure to do so nor the allowance of any Claim shall constitute a waiver or release by the Reorganized Debtor of any such action, set-off or recoupment which the Reorganized Debtor may have against such Holder.

Except as expressly provided in the Plan, nothing in this Disclosure Statement, the Plan, the Plan Confirmation Order or any other order or document shall constitute or be deemed to constitute a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor or any other party in interest had prior to the Effective Date. On the Effective Date, all such claims, causes of action, rights and defenses held by the Debtor shall be deemed transferred and conveyed to the Reorganized Debtor as successor in interest.

### 4. Corporate Action.

Each of the matters provided for under the Plan involving any corporate action to be taken or required by the Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by management of the Debtor.

## VII.

## RISK FACTORS REGARDING THE PLAN

There is no meaningful risk to the Debtor's ability to satisfy the first aspect of Plan feasibility because the Debtor will have enough cash on hand to pay all the claims and expenses which are

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 51 of 171

entitled to be paid on the Plan Effective Date or shortly thereafter because the "new value" contribution will be funded prior to the Plan confirmation hearing.

The primary risk to future Plan payments - the ultimate financial success of the Reorganized Debtor - will be the Reorganized Debtor's ability to sustain a profitable business and the possibility that the Reorganized Debtor will be unable to continue to operate and pay its debts as they come due without an infusion of new equity or financing. Given the Debtor's historical operating performance, including while in Chapter 11, and the strength of the Reorganized Debtor's projections, the Debtor is confident that it will be able to continue to operate its business and pay its debts as they come due, including all Plan payments. Moreover, in order to ensure that minimum monthly payments ($25,000 per month) are made to Class 16 creditors, the principals have agreed that, in the event that the Debtor has insufficient cash flow in any given month to fund such minimum payments, the principals of the Debtor will reduce their compensation, as necessary, to make sure that the monthly $25,000 payment can be made pursuant to the Plan.

In addition to the foregoing, in the event creditors pursue claims against the general partners of the Debtor, thereby detracting their efforts from the Reorganized Debtor's post-confirmation operations, a risk exists that performance of the Reorganized Debtor will suffer.

## VIII.

## CLAIMS RESOLUTION AND DISTRIBUTIONS

**A.      Objections to Claims.**

The Debtor or the Reorganized Debtor, as the case may be, and/or the Post-Confirmation Committee, shall review all claims filed or deemed filed and may object to or seek subordination of any claim filed or scheduled in this bankruptcy case (unless the Court has already entered an order allowing a claim).

Case: 09-60291      Doc# 143      Filed: 06/21/10      Entered: 06/21/10 11:19:28      Page 52 of 171

**B.     Late Claims Void.**

Unless otherwise expressly ordered by the Bankruptcy Court or otherwise provided by the Plan, any Claim filed after the Claims Bar Date shall be void and of no force or effect, and shall receive no distributions under the Plan.

**C.     Estimation of Claims.**

The Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code Section 502(c) regardless of whether the Debtor, the Creditors' Committee or any other party in interest, previously objected to such Claim, or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction over the Debtor's estate and this Chapter 11 Case to estimate any Claim at any time prior to the entry of a Final Decree closing this Chapter 11 Case.  In the event that the Bankruptcy Court estimates any Claim, that estimated amount will constitute either the Allowed amount of such Claim (for Plan voting, Plan distribution or both) or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount is not binding for Plan distribution purposes, the Reorganized Debtor or any other party in interest may elect to pursue any supplemental ruling of the Bankruptcy Court, including any supplemental objection to the Claim, in connection with Plan distribution purposes.

**D.     Allowed and Disputed Claims.**

A Claim shall be deemed Allowed if either (i) such Claim is listed in the Debtor's Schedules (as most recently amended) as liquidated, undisputed and non-contingent, and no objection has been filed to such Claim, or (ii) the Holder of such Claim has filed a proof of such Claim on or before the applicable Claims Bar Date; provided, however, that no objection to such Claim has been filed, no motion has been filed to estimate or subordinate such Claim, and no proceeding is pending disputing the Claim or amount thereof.  A Claim which is subject to a proceeding, an objection or a motion for

Case: 09-60291     Doc# 143     Filed: 06/21/10     Entered: 06/21/10 11:19:28     Page 53 of 171

estimation or subordination which has not been Allowed or Disallowed by a Final Order shall be deemed Disputed until resolved by Final Order. All Claims that are not Allowed or Disputed are deemed Disallowed. No Claim shall be deemed Allowed by virtue of the Plan and/or confirmation of the Plan.

**E.      Provisions Regarding Distributions.**

**1.      Disbursing Agent.**

The Reorganized Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan to all classes except Class 16 (the "Disbursing Agent"). The Disbursing Agent shall serve without bond and without compensation for distribution services rendered in connection with the Plan. Distributions to Class 16 shall be made through the Debtor's accountant or another third party disbursing agent to be designated by the Debtor or the Post-Confirmation Committee, by date of Plan confirmation, and, whether such distributions are made by the Debtor's accountant or a third party, payment of the fees and expenses of such accountant or third party disbursing agent will be paid by the Reorganized Debtor from operating funds, subject to Debtor's or Reorganized Debtor's review and approval of proposed compensation to such disbursing agent.

**F.      Post-Confirmation Committee Objections to Claims.**

As with Avoidance Actions, the Post-Conformation Committee may retain professionals to prosecute claims objections on an hourly or contingency basis. Reasonable professional fees and expenses incurred in the pursuit of claims objections will be paid by the Reorganized Debtor from operating funds, upon settlement or disallowance of the claims objected to, and will only be paid in the event that allowance of such claims, and payment in full of the face such claims, would otherwise exceed such professional fees and expenses.

54

2.    **Distributions to be Made Pursuant to the Plan**

a.    **Timing of Distributions**

Distributions to be made by the Disbursing Agent on account of any claim shall be made as set forth in the Plan, or as promptly thereafter as practicable.

b.    **Method of Distribution**

The Disbursing Agent shall make all distributions by check drawn on a domestic bank or by wire transfer, at the sole election of the Disbursing Agent.  The Disbursing Agent shall make such distributions to the address shown on the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or to a different address as set forth in a proof of claim duly filed with the Court.

c.    **Unclaimed Property**

Payments made pursuant to the terms of the Plan that are unclaimed as of three months following the date on which such distributions are made, whether because such payments have been returned as undeliverable without a proper forwarding address, will be referred to herein as "Unclaimed Property".  During the three months following the date any distribution is made pursuant to the Plan (the "Claiming Period"), Unclaimed Property shall be distributed to the holders of allowed claims entitled thereto upon presentment to the Disbursing Agent of satisfactory proof of entitlement.  Checks issued by the Disbursing Agent to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the allowed claim to whom such check was originally issued prior to the expiration of the Claiming Period.  On the first day after the expiration of the Claiming Period: (i) holders of allowed claims previously entitled to such Unclaimed Property (including, but not limited to, the holder of any such claim who has failed to make a timely request for reissuance of a voided check) shall no longer be entitled to any payment on account of its allowed claim; (ii) such claims shall be deemed disallowed for all purposes; and (iii) the then remaining cash constituting Unclaimed Property with respect to such distribution shall be available for use for any legitimate purpose with respect to the implementation and administration of the Plan.

#### d. Compliance with Governmental Regulations

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### 3. No Distributions on Disputed or Disallowed Claims.

If any Claim is a Disputed Claim, no distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim, unless a portion of the Claim which is Disputed is not Disputed, in which case that portion of the Claim which is not Disputed shall be treated as an Allowed Claim for distribution purposes. Once a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive a distribution in the manner described below. No distributions under the Plan shall be made on account of Claims that have been Disallowed.

## F. Set-Offs.

The Reorganized Debtor, as successor to the Debtor, or the Post-Confirmation Committee, as a representative of the estate hereunder, may, pursuant to Bankruptcy Code Section 553 or applicable non-bankruptcy law, set-off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim or thereafter), the claims, rights and causes of action of any nature that the Debtor may hold against the Holder of such Allowed Claim. The Holder of a Claim may, pursuant to Bankruptcy Code Section 553 or applicable non-bankruptcy law, set off any Allowed Claim such Holder possesses against any claim, rights or causes of action of any nature that the Reorganized Debtor, as successor to the Debtor, may hold against such Holder. Neither the failure to effect such a set-off nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Reorganized

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 56 of 171

Debtor or such Holders of any such Claims, rights and causes of action that such parties may possess under Bankruptcy Code Section 553.

## IX.

## INJUNCTION AND EXCULPATION

**A.      Discharge.**

On the Plan Effective Date, the Debtor will receive a discharge under the Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code because there has not been a liquidation of all or substantially all of the property of the Debtor's estate and because the Reorganized Debtor will be continuing with the Debtor's current business operations.

**B.      Injunction.**

Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims or Interests are permanently enjoined, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtor, its estate, or the Reorganized Debtor; (2) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, its estate, or the Reorganized Debtor; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, its estate, or the Reorganized Debtor and/or against the Property or interests in Property of any of the foregoing; and (4) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtor or against the Property of the Debtor, its estate, or the Reorganized Debtor with respect to any such Claim or Interest (hereinafter, collectively the "Estate-Related Claims").

Notwithstanding anything set forth herein, on and after the Effective Date, the Reorganized Debtor and/or the Post-Confirmation Committee shall have the right to move this Court for an imposition of an injunction, subject to appropriate evidence and basis, as may be appropriate to enjoin actions of third parties against the Reorganized Debtor or its management or personnel which

Case: 09-60291     Doc# 143     Filed: 06/21/10     Entered: 06/21/10 11:19:28     Page 57 of 171

may adversely affect the administration or operation of the Reorganized Debtor after the Effective Date.

## C.    Exculpation and Limitation of Liability.

None of the Debtor, the Reorganized Debtor, nor any of their respective present or former members, officers, directors, employees, advisors, or attorneys or other professionals, shall have or incur any liability to the Debtor's bankruptcy estate for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, including, without limitation, administration of the Chapter 11 Case, any sale of assets of the Debtor, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their fraud, gross negligence or willful misconduct, and in all respects such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in the Chapter 11 Case and under the Plan.

## X.

## OTHER PLAN EFFECTUATION MATTERS

## A.    Executory Contracts and Unexpired Leases.

### 1.    Assumption of Executory Contracts and Unexpired Leases

The Debtor intends to assume the following leases and executory contracts, and will pay the amounts set forth below which the Debtor believes are the appropriate "cure" amounts necessary for such assumptions.

58

| Party To Lease or Executory Contract | "Cure" Amount |
| --- | --- |
| GECC (equipment lease – generator, compressor, forklift) | $6,377.07 |
| NMHG Financial Services, Inc. (forklift equipment) | $1,959.43 |
| Javco G.P. (Salinas real property lease) | $8,206.03 |

Notwithstanding the foregoing, the Debtor reserves the right to amend the foregoing schedule of assumptions and seek the rejection of any or all of the foregoing leases and executory contracts in connection with Plan confirmation. Additionally, unless objected to by the party to the proposed lease or executory contract to be assumed above, the foregoing :"cure" amounts shall be deemed to be the appropriate "cure" amounts required to be paid in connection with such assumption.

### 2. Rejection of Executory Contracts and Unexpired Leases.

Any pre-petition executory contract or unexpired lease which has not expired by its own terms on or prior to the Effective Date, or which has not been assumed and assigned or rejected with the approval of the Bankruptcy Court, or which is not set forth above to be assumed in connection with Plan confirmation as of the Effective Date, shall be deemed rejected by the Debtor on the Effective Date or as otherwise agreed upon by the parties. The entry of the Plan Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to Bankruptcy Code Sections 365(a) and 1123, effective as of the Effective Date of the Plan.

### 3. Rejection Damage Claims Bar Date and Resolution.

Claims, if any, arising out of the rejection of executory contracts or unexpired leases rejected as of the Effective Date pursuant to the Plan must be filed and served on counsel to the Reorganized Debtor pursuant to the procedures specified in the Plan Confirmation Order no later than thirty (30)

days after the Effective Date (the "<u>Final Rejection Claims Bar Date</u>").  Any Claim not filed within such times will be forever barred from assertion against the Debtor, the Reorganized Debtor, its estate, its successor or its properties.  Unless otherwise ordered by the Bankruptcy Court prior to the Confirmation Date, or such later date as shall be ordered by the Bankruptcy Court prior to the Confirmation Date, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Class 16 Claims under the Plan.

**B.      Retention of Jurisdiction.**

The Plan provides for a broad retention of jurisdiction by the Bankruptcy Court including, without limitation, the following: (i) interpretation, implementation and enforcement of the Plan, and any contracts, instruments, releases, transactions and other agreements or documents created in connection therewith; (ii) determination of any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtor or any other party in interest after the Effective Date (to the extent such venue is selected by the moving party); (iii) to hear and determine any objections to Claims or motions for estimation or subordination thereof; (iv) to hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code Sections 346, 505 and 1146; (v) to hear and determine any matters that may arise in connection with the sales of the Debtor's assets or any order of the Bankruptcy Court with respect thereto; and (vi) to hear and determine any actions or controversies by or against the Debtor, the Reorganized Debtor, or the Creditors' Committee.

**C.      Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan, unless the modification relates only

to the extension of the Effective Date, which modification shall not require a new disclosure statement and/or re-voting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.**     **Revocation or Withdrawal.**

The Plan may be revoked or withdrawn by the Debtor prior to the Confirmation Date, in which case the Plan shall be deemed null and void. In such event, nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any claims by the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any other entity in any further proceedings involving the Debtor.

**E.**     **Section 1146 Exception.**

Pursuant to Bankruptcy Code Section 1146(c), the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

**F.**     **Severability.**

The provisions of the Plan shall not be severable unless such severance is agreed to by the Debtor and such severance would constitute a permissible modification of the Plan pursuant to Bankruptcy Code Section 1127.

**G.**     **Governing Law.**

Except to the extent that other federal law is applicable, or to the extent that an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of California.

Case: 09-60291     Doc# 143     Filed: 06/21/10     Entered: 06/21/10 11:19:28     Page 61 of
171

**H.     Closing of Case.**

The Reorganized Debtor shall, promptly upon the administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to obtain a Final Decree closing the Chapter 11 Case.

**I.     Continuing Viability of Other Orders/Agreements.**

Except to the extent expressly modified by the Plan, (i) all Final Orders previously entered by the Bankruptcy Court and (ii) any agreements between creditors or between the Debtor and its creditors shall continue in full force and effect.

**XI.**

**CONFIRMATION OF THE PLAN**

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan.

**A.     Confirmation Hearing**

Bankruptcy Code Section 1121(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan.  By order of the Bankruptcy Court, the Plan confirmation hearing has been scheduled for July 29, 2010 at 8:30 a.m. (prevailing Pacific Time) in the United States Bankruptcy Court for the Northern District of California, Courtroom 3035, 280 South First Street, San Jose, California.  The Plan confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Plan confirmation hearing or any adjournment thereof.

**B.     Requirements for Confirmation of the Plan.**

At the Plan confirmation hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of Bankruptcy Code Section 1129 are met.  Among the requirements for confirmation are that the Plan: (a) is accepted by all impaired Classes of Claims and Interests or, if rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and

Case: 09-60291     Doc# 143     Filed: 06/21/10     Entered: 06/21/10 11:19:28     Page 62 of
171

equitable" as to such Class; (b) is feasible; and (c) is in the "best interests" of Holders of Claims and Interests impaired under the Plan.

### 1. Fair and Equitable Test.

The Debtor will seek to confirm the Plan notwithstanding the nonacceptance or deemed nonacceptance of the Plan by any impaired Class of Claims. To obtain such confirmation, the Debtor must demonstrate to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such dissenting impaired Class. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other Classes whose legal rights are substantially similar to those of the dissenting class, and if no Class receives more than it is entitled to receive for its Claims or Interests. The Debtor believes that the Plan satisfies this requirement.

The Bankruptcy Code establishes different "fair and equitable" tests for Secured Claims, Unsecured Claims and Interests, as follows:

Secured Claims: Either the Plan must provide: (i) for the Holders of such Claims to retain the liens securing such Claims, whether the Property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the Allowed amount of such Claims, and each Holder of a Claim receives deferred cash payments totaling at least the Allowed amount of such Claim, of a value, as of the Effective Date of the Plan, of at least the value of such Holder's interest in the estate's interest in such Property; (ii) for the sale of any Property that is subject to the liens securing such Claims, free and clear of such liens, with such liens to attach to the proceeds of such sale; or (iii) for the realization by such Holders of the indubitable equivalent of such Claims.

Unsecured Claims: Either (i) each Holder of an impaired unsecured Claim receives or retains under the Plan Property of a value equal to the amount of its Allowed Claim, or

63

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 63 of 171

(ii) the Holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any Property under the Plan.

Interests: Either (i) each Interest Holder will receive or retain under the Plan Property of a value equal to the greater of (y) the fixed liquidation preference or redemption price, if any, of such stock or (z) the value of the stock, or (ii) the Holders of Interests that are junior to the Interests will not receive any Property under the Plan.

THE DEBTOR BELIEVES THAT THE PLAN MAY BE CONFIRMED ON A NONCONSENSUAL BASIS (PROVIDED AT LEAST ONE IMPAIRED CLASS OF CLAIMS VOTES TO ACCEPT THE PLAN). ACCORDINGLY, THE DEBTOR WILL DEMONSTRATE AT THE PLAN CONFIRMATION HEARING THAT THE PLAN SATISFIES THE REQUIREMENTS OF BANKRUPTCY CODE SECTION 1129(b) AS TO ANY NON-ACCEPTING CLASS.

### 2. Feasibility.

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtor.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Plan Effective Date to pay all the claims and expenses which are entitled to be paid on such date. The $350,000 new value contribution will be deposited in LNBRB's trust account not later than seven (7) days before the Plan confirmation hearing. As a result, this element will be resolved by the time of the Plan confirmation hearing.

The second aspect considers whether the Reorganized Debtor will have enough cash over the life of the Plan to make the required Plan payments. Attached as Exhibit "B" to this Disclosure Statement are cash flow projections prepared on a monthly basis for the five-year period following

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 64 of 171

the Effective Date, which demonstrate the ability of the Reorganized Debtor to make all of the Plan payments which are required to be made over time. The Debtor believes that the projections are realistic and based on historical information adjusted for current market conditions.

### 3. "Best Interests" Test.

The Bankruptcy Code requires that with respect to each impaired Class of Claims and Interests that has not accepted the Plan, Holders of Claims or Interests in each such Class receive or retain under the Plan Property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would have received or retained if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor believes that Holders of Claims will receive substantially more under the Plan as they would receive in a Chapter 7 liquidation and that this test is therefore satisfied.

In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation of the Debtor. The Debtor maintains that this requirement is clearly met.

The Impaired classes under the Plan consist of 3-5, 8, and 10-16.

65

<u>Classes 3-5, 8, and 10-15.1 (Secured Claims)</u>

Pursuant to the Plan, all secured claimants shall retain their liens on their collateral. The Plan further provides that secured claims will be paid in full with interest. On the other hand, in a Chapter 7 liquidation, assets would be sold on a liquidation basis, rather than going concern value utilized by the Debtor in the Plan. Moreover, in connection with a sale, costs of sale, estimated to be approximately 8%, would be deducted from the sale proceeds, thereby reducing sale proceeds. By paying the secured claims pursuant to the Plan, the Debtor does not allocate liquidation value or costs of sale to the collateral. Based on the foregoing, the Debtor submits that all secured creditors will not receive less under the Plan than they would receive in the event of a liquidation in Chapter 7.

<u>Class 16 (General Unsecured Creditors)</u>

The Debtor believes that it is clear that in a Chapter 7 liquidation of the Debtor, holders of class 16 allowed claims would receive substantially less, if anything at all, than the distribution they would receive under Class 16. In a Chapter 7 liquidation of the Debtor, the Debtor's business will cease to operate and assets will be sold. Attached hereto as Exhibit "C" is a copy of a liquidation analysis prepared by Crowe, as well as a liquidation analysis prepared by Scouler & Co. shortly prior to the Petition Date. The liquidation analysis provides that, after payment of secured claims, Chapter 7 administrative claims, Chapter 11 administrative claims and priority tax claims, there will be no funds available for payment to general unsecured creditors of the estate.

Additionally, based on the fact that the Debtors a general partnership, 11 U.S.C. § 723(a) provides that, in a Chapter 7 liquidation, a trustee may be able to purse deficiency claims against the Debtor's general partners. The Debtor's general partners are represented by independent counsel. The Debtor has reviewed, and is familiar with, the financial position of the general partners. Based

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 66 of
171

on such investigation, the Debtor believes that, in the event that claims are pursued against the general partners in a liquidation pursuant to 11 U.S.C. § 723, the possible recovery from such general partners will be substantially less than the $1.3 million minimum expected to be disbursed to unsecured creditors pursuant to the Plan. In fact, based on the Debtor's investigation, the general partners' financial position is such that recoveries pursuant to Section 723, if any, will be substantially less than the $350,000 "new value" contribution being proposed under the Plan. The general partners intend to obtain personal financing, based on future operations of the Debtor, in order to fund the "new value" contribution under the Plan. In the event of liquidation, this amount will not be available.

In contrast, under the Plan, it is anticipated that Class 16 general unsecured claims will receive 100% distribution on account of their general unsecured claims over a period of five (5) years from the Effective Date. Even if the Reorganized Debtor's performance is below projections, the Plan guaranties a minimum distribution to general unsecured creditors of $1,300,000 ($100,000 on the Effective date plus $25,000 per month for 48 months), which is a far better result for unsecured creditors than liquidation under Chapter 7.

Class 17 (Interests)

In a chapter 7 liquidation of the Debtor, holders of class 17 interests would receive no distribution. Under the Plan, holders of class 17 interests also will not receive any distribution. Holders of class 17 interests will therefore receive *not less* under the Plan than they would receive in a chapter 7 liquidation of the Debtor.

The Debtor has therefore satisfied the "best interests of creditors test" with respect to any class of Claims or Interests who vote against the Plan. The Debtor concludes that the Plan provides fair and equitable treatment of all classes of creditors and the greatest feasible recovery to all creditors.

# XII.

## FINANCIAL INFORMATION

The Debtor has filed Statement of Financial Affairs and Schedules of Assets and Liabilities with the Bankruptcy Court as required by the Bankruptcy Code, some of which documents have been amended as described above. As a debtor-in-possession, the Debtor has filed monthly operating reports required by the United States Trustee's operating guidelines. This financial information may be examined in the Bankruptcy Court Clerk's Office.

In addition to historical financial financials on file with the Court, the Debtor prepared projections in connection with the Plan. Following is a discussion of the methodology employed by the Debtor and Crowe in connection with formulating the projections:

Crowe worked closely with Debtor's management to assist in the development of a five-year forecast of cash flows from operations for the Debtor to be included in the Plan. This forecast was based upon the Debtor's historical operations, pro-forma adjustments resulting from the reorganization of the Debtor, and input drawn from management's decades of experience in operating the business of the Debtor. Thoughtful and deliberate consideration was given to insuring that the forecast represents the Debtor's management's best estimate as to what the forward-looking operations of the Debtor would be and the impact of those operations on the financial condition of the reorganized Debtor.

As indicated on the face of the forecast, the notes and assumptions accompanying them are integral to understanding the forecast itself. This disclosure is intended to supply additional detailed background regarding the development of the forecast not already delineated in the notes and assumptions to the forecast.

68

**Sales**

Management expended considerable time, effort and thought to insure that the forward-looking sales volume and market prices incorporated into the Debtor's forecast fairly represented expectations. As stated in the notes to the forecast, this effort included, but was not limited to, analyzing historical market prices (both the Debtor's and USDA market prices), past sales volume levels, anticipated product mix changes towards higher margin items (i.e. bagged broccoli florets) and continued development of contract pricing with customers to normalize some of the fluctuations experienced in the open market.. To assist management in assessing the reasonability of expectations as to sales, Crowe developed "goal-seeking" forecasts whereby management could analyze different market scenarios by manipulating the two most influential factors on the Debtor's total sales and overall bottom line: market price and volume. Utilizing the goal-seeking tool and the Debtor's historic experience with market price and volume, management developed forward-looking sales consistent with past experience and future expectations. As indicated in the notes to the forecast, Debtor's management intends to continually improve margins by selling more profitable items.

It is important to note that the Debtor deals in a commodity market. Actual prediction of market conditions is nearly impossible due to numerous outside influences including weather, customer demand, supply and economic conditions. With this in mind, the Debtor's historical experience with volume and market price coupled with management's expertise in this market serve as a basis for which to project sales. The forecast incorporates an extremely conservative 2.5% annual increase in market price and 1.5% annual increase in sales volume. It should be noted that this increase is very conservative as compared to management's representation that, at times over the past eight years, the Debtor has experienced annual increases in revenue up to 28%. In

2007 and 2008, heavy rains greatly disrupted broccoli growth in Mexico. Even in these years, with adverse market conditions, the Debtor realized sales volume that is more than 10% higher than the volume for year one of the forecast. Further, during the five year period 2005 through 2009, the Debtor averaged total annual revenue of $18 million. These historical amounts are 6% higher than the $17 million total revenue in year one of the forecast. Management prepared analyses that record the Debtor's historical sales volume and market prices. These analyses were utilized by management in developing realistic forward-looking sales volume and market price amounts. Also incorporated in the forecast are monthly fluctuations as to volume and market price, another realistic component of the forecast that is consistent with the Debtor's historical performance. These fluctuations more fairly represent the volatility in the broccoli commodity market and show that the Debtor experiences peaks and valleys as to sales performance. As disclosed in the notes to the forecast, forecasted sales are management's best estimates and actual results could vary significantly from those predicted, primarily in part to the aforementioned market conditions. The Debtor will continue to build on its success with developing contract pricing with its customers, which will, in essence, normalize some of the fluctuations experienced in the open market.

### Costs of Goods Sold ("COGS")

The methodologies for calculating the various components of COGS are outlined in the notes to the forecasts. The methodologies are consistent with the practices and rates currently in place with the Debtor. As previously noted, management anticipates that gross margin (gross profit as a percentage of sales) will continue to improve year-after-year as the product mix is improved to include more profitable products as well as the continued development of contract pricing with customers. For the most part, COGS on the forecast are driven by sales volume and increase or decrease on a monthly basis correspondingly.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 70 of 171

**Operating Expenses**

The Debtor operates with two distinct cost centers: the corporate offices located in Salinas, California and the cooling and distribution facility located in Laredo, Texas. The Debtor's wholly-owned foreign subsidiary in Mexico operates as a stand-alone operation. Since the Petition Date, the nature of the Debtor's transactions with the subsidiary for the most part include the purchase, cooling, handling and shipping of fully grown produce for importation into the United States. These transactions are accounted for using inter-company accounts. The Reorganized Debtor will continue such an arrangement with the subsidiary. Aside from the aforementioned produce purchases and related shipping costs (which for the purposes of the forecast are treated as COGS expenses like any other vendor – i.e. fully paid in the month incurred), there are no additional payments to the subsidiary reflected in the forecast.

As a starting point, Crowe utilized the Debtor's most recently available, finalized monthly income statement, which happened to be the one for the month ending January 31, 2010. This income statement reflected the Debtor's current, recurring monthly expenses. The entries for Salinas and Laredo became the baseline for forward-looking expenses. Using this baseline, management examined the individual line items and proposed pro-forma adjustments to adjust the monthly amounts for January 2010 upwards or downwards to smooth out the amounts and more accurately reflect the typical monthly expenses incurred by the Debtor. Additional pro-forma adjustments were then made to the baseline amounts to incorporate the changes management anticipates making upon reorganization (note that certain of these changes have already been implemented by the Debtor as cost-saving measures). Among others, these types of changes include payroll reductions, rent reduction, and reduction in expenses for automobiles. Certain pro-forma adjustments are also made in months 1, 2 and 3 of the forecast as additional anticipated

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 71 of
171

operational changes subsequent to the reorganization are made. For the most part, these types of pro-forma adjustments assumed to be made subsequent to the Debtor's reorganization are delineated in the notes to the forecast.

In order to present fair forecasts of operating expenses, they are assumed to grow 2% annually (with the exception of bad debt expense, which is calculated as a percentage of total sales). Again, this is expressed in the notes to the forecast.

**Administrative Expenses**

Administrative expenses represent the Debtor's post-confirmation legal and accounting costs. They are assumed paid as incurred.

**Other Expenses**

Depreciation is shown for purposes of calculating net income or loss. It does not impact cash flow.

Interest expense line items are based upon current interest charged on debt or amounts assumed to be renegotiated upon reorganization. Interest expense is shown as a reduction in cash.

**Forecasted Accruals**

The forecasted accruals section of the forecast display how various components of the Debtor's balance sheet are impacted by the Debtor's sales and expenses. The specific mechanics as to how these line items are adjusted are set forth on the face of the forecast and in the accompanying notes. It should be noted that the beginning balances as of Month 1 are provided by management and represent the adjusted balances of these line items nearest the month end that the Debtor's plan was filed, in this case, March 31, 2010. Note that management may have made certain minor adjustments to these balances in order to more accurately reflect what they may be upon confirmation.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 72 of
171

**Forecasted Sources and Uses of Cash**

This section of the forecast illustrates how the various components of sales, COGS, operating expenses, and accrual impact the Debtor's cash flow. The notes to the forecast provide specificity as to the methodologies utilized for the various components and each component's impact on cash flows.

By way of further explanation regarding "Cumulative Cash Available for Debt Service," it is important to understand that the Reorganized Debtor had to reach a certain operational level before additional funds were available to service unsecured, pre-petition claims (aside from the initial $100,000 payment and quarterly $75,000 minimum payment). As described in the Sales section above, the broccoli commodity market is subject to significant fluctuation as to market price and volume demand. In order for the Reorganized Debtor to have the financial wherewithal to endure adverse market conditions, management estimated that the reorganized Debtor would require an operational cash reserve of $750,000. This estimate is based upon three consecutive months of market price at or below cost. In the forecast, whenever the Debtor is in a quarterly cash position where total cash exceeds the $750,000 cash reserve for operations, 50% of the cash in excess of the reserve is assumed paid to the unsecured creditors. The 50% is calculated from the quarterly balance of "Cumulative Cash Available for Debt Service" starting in year 2.

As also discussed in the Sales section above, there are month-to-month fluctuations in market price and volume that can potentially impact the Debtor's bottom line. However, management believes and has demonstrated in its historical analyses that when the month-to-month sales volume and market prices are averaged over time, the average amounts are profitable. The $750,000 operational cash reserve has been included in the forecast to allow the Debtor to endure through months where market price drops to the point that the Debtor is operating at or below the

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 73 of 171

break-even point.  In management's experience, these lean months do not last consecutively for more than two or three months at a time.

**XII.**

**ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

If the Plan is not confirmed and consummated, the alternatives include: (a) development of an alternative plan of reorganization; or (b) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

**A.      Liquidation Under Chapter 7.**

If no plan is confirmed, the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed to liquidate any remaining Assets of the Debtor for distribution to Creditors.  As stated, the Debtor believes that conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code would result in diminished distributions to Creditors, due to the increased costs of administration in Chapter 7 proceedings, and substantial delay in the distribution to Creditors relative to the Plan.

**B.      Alternative Chapter 11 Plan.**

If the Plan is not confirmed, the Debtor or any of the parties in interest could attempt to formulate a different Chapter 11 plan. However, the Debtor does not believe there is a feasible, more favorable alternative to the Plan.

**XIV.**

**CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

The confirmation and execution of the Plan may have tax consequences to Holders of Claims and Interests.  The Debtor does not offer an opinion as to any federal, state, local, or other

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 74 of 171

tax consequences to Holders of Claims and Interests as a result of the confirmation of the Plan. All Holders of Claims and Interests are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of the Plan. THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS LEGAL OR TAX ADVICE TO ANY CREDITOR.

## XV.

## CONCLUSION AND RECOMMENDATION

The Debtor believes that the Plan is in the best interests of all Holders of Claims and urges all Holders of Claims to vote to accept the Plan and to evidence such acceptance by returning their ballots to Debtor's counsel so that they will actually be received on or before 5:00 p.m., prevailing Pacific Time, on July 16, 2010.

Respectfully Submitted:

Dated: June 17, 2010

CIMINO BROKERAGE COMPANY dba
CIMINO BROTHERS PRODUCE

By: _/s/ Vincent Cimino_____
VINCENT CIMINO
Its General Partner and Responsible Individual

Dated: June 17, 2010

LEVENE, NEALE, BENDER, RANKIN
& BRILL L.L.P.

By: _/s/ David B. Golubchik_____
DAVID B. GOLUBCHIK
Attorneys for Debtor
CIMINO BROKERAGE COMPANY dba
CIMINO BROTHERS PRODUCE

75

# EXHIBIT A

DAVID B. GOLUBCHIK (SBN 185520)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, RANKIN
    & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

Attorneys for Debtor
and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| In re<br><br>**CIMINO BROKERAGE COMPANY dba**<br>**CIMINO BROTHERS PRODUCE**,<br><br>     Debtor and<br>     Debtor in Possession. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 5:09-bk-60291<br><br>Chapter 11<br><br><br><br><br><br><br><u>Plan Confirmation Hearing:</u><br>Date:   July 29, 2010<br>Time:  8:30 a.m.<br>Place: Courtroom "3035"<br>        280 South First St.<br>        San Jose, CA 95113 |

**PLAN OF REORGANIZATION DATED AS OF JUNE 16, 2010**

1

# I.

## INTRODUCTION

This Plan of Reorganization Dated as of June 16, 2010 ("Plan") is being furnished by Cimino Brokerage Company dba Cimino Brothers Produce, Chapter 11 Debtor and Debtor in Possession in the above-captioned Chapter 11 Case (the "Debtor").

Reference is made to the Disclosure Statement accompanying this Plan for a discussion of the Debtor's history, business, results of operations, historical financial information, properties, a summary and analysis of this Plan, and certain related matters. The Debtor is the proponent of this Plan within the meaning of Bankruptcy Code Section 1129.

ALL CREDITORS OF THE DEBTOR ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN BANKRUPTCY CODE SECTION 1127, BANKRUPTCY RULE 3019 AND IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN AT ANY TIME PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Capitalized terms herein shall have the meanings set forth in Section II.A., below.

## II.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

**A.      Defined Terms.**

As used in this Plan, the following terms have the meanings specified below, which meanings are equally applicable to both the singular and plural forms of the terms defined:

Administrative Bar Date:  The Bar Date for Administrative Claims specified in Section III.B. of this Plan.

Case: 09-60291      Doc# 143      Filed: 06/21/10      Entered: 06/21/10 11:19:28      Page 78 of 171

Administrative Claim: Any Claim for: (a) any cost or expense of administration (including, without limitation, the fees and expenses of Professionals) of the Chapter 11 case asserted or arising under Bankruptcy Code Sections 503, 507(a)(2) or 1114(e)(2) including, but not limited to, (i) any actual and necessary post-Petition Date cost or expense of preserving the Debtor's estate or operating the business of the Debtor, (ii) any payment to be made under this Plan to cure a default on an assumed executory contract or unexpired lease, (iii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iv) compensation and reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under Bankruptcy Code Sections 328, 330(a) or 331, and (v) any fees or charges assessed against the Debtor's estate under Section 1930 of the title 28 of the United States Code

Allowance: Entry of a Final Order wholly or partly allowing a Claim or Interest.

Allowed: With respect to any Claim: (a) a Claim that is not a Disputed Claim and either (i) such Claim has been scheduled by the Debtor in its Schedules as most recently amended as undisputed, non-contingent and liquidated; and/or (ii) a proof of claim has been filed by the applicable Bar Date or has otherwise been deemed timely filed under applicable law; or (b) has been Allowed by a Final Order. Nothing in this definition or this Plan limits the rights of the Debtor or the Reorganized Debtor to object to or seek subordination or estimation of an Allowed Claim within the time periods specified under applicable law or an order of the Bankruptcy Court. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom (a) all payments made on or after the Petition Date on account of such Claim, and (b) an amount equal to the amount of any claim which the Debtor may hold against the Holder thereof, to the extent such claim may be set off pursuant to Bankruptcy Code Section 553.

3

Allowed Amount: Where a Claim or Interest is Allowed, the amount in which such Claim or Interest has been Allowed, as determined under this Plan, the Bankruptcy Code and the Bankruptcy Rules.

Allowed Claim: A Claim that is Allowed.

Allowed Interest: An Interest that is Allowed.

Assets: Any and all real and personal Property of the Debtor of any kind or nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual Property rights, claims, Rights of Action and any other general intangibles, and all proceeds and products of the foregoing, including, without limitation, all Property of the Debtor's estate pursuant to Bankruptcy Code Section 541.

Avoidance Actions: Any and all claims and causes of action which the Debtor, a trustee, debtor-in-possession, the estate, the Creditor's Committee or other appropriate party in interest may assert under Bankruptcy Code Sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a), including the Debtor's right of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted. The Avoidance Actions include but are not limited to the Preference Actions.

Ballot: The ballot accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote on this Plan may indicate their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

4

**Bankruptcy Code**:  Title 11 of the United States Code, as amended, as applicable to the Chapter 11 Case.

**Bankruptcy Court**:  The United States Bankruptcy Court for the Northern District of California (San Jose Division).

**Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Case and any Local Rules of the Bankruptcy Court.

**Bar Date**:  The Unsecured Claims Bar Date, the Administrative Bar Date, and the Rejection Claim Bar Date, as applicable.

**Business Day**:  Any day which is not a Saturday, Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006, or a day on which banking institutions in the State of California are authorized or obligated by law, executive order or governmental decree to be closed.

**Cash**:  Cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof.

**Chapter 11 Case**:  The case under Chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court.

**Claim**:  Any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, including, without limitation, any claim against any of the Debtor as defined in Bankruptcy Code Section 101(5).

**Class**:  A category of Holders of Claims or Interests as set forth in this Plan.

5

Confirmation Date: The date upon which the Plan Confirmation Order is entered by the Bankruptcy Court in its docket, within the meaning of Bankruptcy Rules 5003 and 902l.

Creditor: Any Entity that is the Holder of any Claim against the Debtor.

Creditors' Committee: The Official Committee of Creditors Holding Unsecured Claims appointed in the Chapter 11 Case pursuant to Bankruptcy Code Section 1102.

Debtor or Debtor-in-Possession: Cimino Brokerage Company dba Cimino Brothers Produce, the debtor in the Chapter 11 Case.

Disallowed: Any Claim or Interest, or portion thereof, which: (a) has been withdrawn, in whole or in part; or (b) is scheduled by the Debtor in its Schedules as most recently amended as contingent, disputed or unliquidated and the Holder of such Claim or Interest has not filed a proof of Claim or Interest by the applicable Bar Date; or (c) has been Disallowed, in whole or in part, by Final Order of a court of competent jurisdiction. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance or withdrawal.

Disallowed Claim: A Claim, or any portion thereof, that is Disallowed.

Disclosure Statement: The disclosure statement for this Plan approved by the Bankruptcy Court.

Disputed: Any Claim or Interest as to which the Debtor, the Creditors' Committee, the Reorganized Debtor, or any other party in interest has, within the time permitted under applicable law, interposed an objection or request for estimation or subordination or is otherwise disputed by the Debtor, the Creditors' Committee, the Reorganized Debtor, or any other party in interest with standing in accordance with applicable law, which objection, pending litigation, request for estimation or subordination or dispute has not been withdrawn or determined by a Final Order.

Effective Date: The date that this Plan becomes effective, which date will be the first business day of the first full calendar month which is at least fourteen (14) days following the date

6

of entry of the Plan Confirmation Order, assuming there has been no order entered staying the effectiveness of the Plan Confirmation Order. If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Plan Confirmation Order.

Entity: An entity as defined in Bankruptcy Code Section 101(15), including, but not limited to, an individual, corporation, partnership or governmental unit.

File: Duly filing a document, notice, claim, pleading or other paper with the Bankruptcy Court, including service of such document, notice, claim, pleading or other paper as prescribed by this Plan and/or the Bankruptcy Rules.

Final Decree: The decree contemplated under Bankruptcy Rule 3022.

Final Order: An order, ruling, or judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which: (a) the time to appeal or petition for review, rehearing, certiorari, reargument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending; or (b) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted.

Holder: An Entity holding an Interest or Claim.

Impaired: A Claim or Class of Claims that is impaired within the meaning of Bankruptcy Code Section 1124.

Interest: Any equity interest in the Debtor.

Lien: Any charge against or interest in Property to secure payment or performance of a claim, debt or obligation.

7

Petition Date: November 24, 2009.

Plan: This Plan of Reorganization Dated as of April 23, 2010 proposed by the Debtor, including all exhibits, appendices, schedules and annexes, if any, attached hereto, as submitted by the Debtor, as such Plan may be altered, amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Plan Confirmation Order and the terms and conditions of this Plan.

Plan Confirmation Order: The order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code Section 1129.

Priority Claims: Those Claims afforded priority under Bankruptcy Code Sections 507(a) and (b), excluding Administrative Claims and Priority Tax Claims.

Priority Tax Claims: Those Claims afforded priority under Bankruptcy Code Section 507(a)(8).

Professional: An Entity: (a) employed in the Chapter 11 Case prior to the Effective Date pursuant to a Final Order in accordance with Bankruptcy Code Sections 327, 328 and/or 1103; or (b) employed by the Reorganized Debtor after the Effective Date.

Professional Fees: Fees and expenses incurred by a Professional.

Property: All Assets or property of the Debtor's estate of any nature whatsoever, real or personal, tangible or intangible, including, but not limited to, contract rights, accounts and Rights of Action, previously or now owned by the Debtor, or acquired by the Debtor's estate, as defined in Bankruptcy Code Section 541.

Reorganized Debtor: The Debtor on and after the Effective Date.

Rights of Action: All actions, causes of action, suits, rights of action, counterclaims, cross-claims, rights of setoff, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or

8

judgments arising under any theory of law or equity, including, without limitation, the Bankruptcy Code, all claims against Holders of Claims and/or Interests, parties having dealings, relationships or transactions with or related to the Debtor, any party named or identified in the Schedules or any pleadings filed in the Chapter 11 Case, held by or in favor of the Debtor or its estate whether or not commenced as of the Effective Date. The Rights of Action also include, but are not limited to, the Avoidance Actions.

Schedules: The Debtor's schedules of assets and liabilities, statements of financial affairs, and such other schedules filed with the Bankruptcy Court by the Debtor in accordance with Bankruptcy Code Section 521, the Official Bankruptcy Forms, and the Bankruptcy Rules, as amended from time to time.

Secured Claim: Any Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on Property in which the Debtor has an interest and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Bankruptcy Code Section 553; provided, however, with respect to both (a) and (b), only to the extent of such Debtor's interest in the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be.

Unsecured Claim: Any Claim that is classified in Class 16, but only to the extent such Claim is not a Secured Claim.

Unsecured Claims Bar Date: March 16, 2010 Bar Date pertaining to non-governmental unsecured claims established by the Bankruptcy Court.

U.S. Trustee: The United States Trustee for the Northern District of California.

Other Definitions: Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code shall have the

9

meaning assigned to that term in the Bankruptcy Code. Unless otherwise specified, all section, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

**B.     Rules of Interpretation, Computation of Time and Governing Law.**

For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in this Plan to a contract, instrument, release, Indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (e) the rules of construction set forth in Bankruptcy Code Section 102 shall apply; and (f) any term used in capitalized form in this Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or

Case: 09-60291     Doc# 143     Filed: 06/21/10     Entered: 06/21/10 11:19:28     Page 86 of 171

document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

To the extent of any inconsistency between the terms of the Plan Confirmation Order and the terms of this Plan or any other document or agreement submitted, prepared or approved in connection with this Plan, the Plan Confirmation Order shall prevail. To the extent of any inconsistency between the terms of this Plan and any other document or agreement submitted, prepared or approved in connection with this Plan, this Plan shall prevail.

### III.

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.    General Overview.**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to the priorities of payment provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has <u>not</u> placed the following claims in a class.

**1.    <u>Administrative Expenses</u>**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Plan Effective Date unless a particular

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 87 of
171

claimant agrees to a different treatment. The following chart lists <u>all</u> of the Debtor's § 507(a)(2) administrative claims and their treatment under the Plan.

| NAME | AMOUNT OWED | TREATMENT |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Plan Effective Date. |
| Office of the United States Trustee ("OUST") | $0 | Paid in full on the Plan Effective Date |
| Levene, Neale, Bender, Rankin & Brill L.L.P. ("LNBRB"), bankruptcy counsel to the Debtor | $25,000 (est.) (net of pre-petition retainer) | Paid in full on the later of the Plan Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Crowe Horwath LLP, accountants to the Debtor | $235,000 (est.) | Paid in full on the later of the Plan Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Manasian & Rougeau, LLP, bankruptcy counsel to the Creditors' Committee | $40,000 (est.) | Paid in full on the later of the Plan Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Post-Petition Non-Professional Fee Administrative Expenses | $0 | Paid in full out of the Debtor's funds in the ordinary course of the Debtor's business following the entry of an order of the Court if a dispute exists between the Debtor and the administrative claim holder. |
| **TOTAL** | **$300,000 (est.)** | **Paid in the manner described above.** |

<u>Court Approval of Fees Required</u>:

The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses except fees owing to the Clerk of the Bankruptcy Court and fees owing to the OUST, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees

12

and expenses allowed by the Court will be required to be paid under the Plan. The administrative claim amounts set forth above simply represent the Debtor's best estimates as to the amount of allowed administrative claims in this case. The actual administrative claims may be higher or lower. Much of whether the actual administrative claims described above for professionals will be dependent upon whether the Debtor is required to engage in substantial litigation regarding the confirmation of the Plan and/or objecting to claims. By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. Similarly, professionals who have been employed in this Case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Court order as such fees and expenses are just estimates provided at the time of the preparation of this Disclosure Statement.

To the extent allowed administrative claims are allowed prior to the Effective Date, such allowed administrative claims may be paid by the Debtor out of the Debtor's funds. To the extent allowed administrative claims are allowed after the Effective Date, such allowed administrative claims will be paid by the "new value" contribution and, if necessary, Reorganized Debtor out of its operating funds.

### 2. Priority Tax Claims

Priority tax claims include certain income, employment and other taxes described by 11 U.S.C. § 507(a)(8) not secured by a lien in the Debtor's assets. The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in regular installment payments in cash (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such claim; (ii) over a period ending not later than five (5) years after the Petition Date; and (iii) in a manner not less favorable than the most favored nonpriority unsecured

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 89 of 171

claim provided for under the Plan. The following table lists all of Debtor's § 507(a)(8) priority tax claims and its treatment under this Plan:

| CLAIMANT | TREATMENT |
|---|---|
| City of Laredo Tax Dept. - $13,718.36<br><br>Internal Revenue Service - $270.00<br><br>Internal Revenue Service - $7,749.94<br><br>Internal Revenue Service - $7,750.20<br><br>TexWor Cashier - $41.89<br><br>United ISD Tax Office - $25,732.38<br><br>Webb County Tax Assessor - $16,612.47 | Priority tax claims will be paid in full, with interest thereon at the rate specified in 26 U.S.C. § 6621 on the Effective Date (est. 8%), over a period of 48 months after the Effective Date.<br><br>Payment Interval – monthly<br>Interest rate – 8%<br>Pmt amount/interval –  $1,800 |

**C..     Classified Claims and Interests**

    **1.     <u>Classes of Secured Claims</u>**

    Secured claims are claims secured by liens against property of the estate.   The following chart sets forth the description and treatment of each of the Debtor's secured claims:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of:<br><br>• Name = Bank of America<br><br>• Collateral description = Single family residence located at 10615 Mountain Cr., Laredo, Texas 78045 (first priority) | N | No; allowed claims in this class are not entitled to vote on the Plan. | Debtor anticipates that the residence will be sold within 60 days of the Effective Date, at which time secured debt will be paid in full.<br><br>Pending sale of property, payments will continue pursuant to loan documents<br><br>Pmt amount = $2,450 per month<br><br>The foregoing treatment |

14

| | | | | |
|---|---|---|---|---|
| | • Collateral value = $415,000<br><br>• Total claim amount = $235,000 est. | | | shall be in full and complete satisfaction of such secured claim. |
| 2 | Secured claim of:<br><br>• Name = Chase Home Finance<br><br>• Collateral description = Single family residence located at 10615 Mountain Cr., Laredo, Texas 78045 (second priority)<br><br>• Collateral value = $415,000<br><br>• Total claim amount = $30,000 est. | N | No; allowed claims in this class are not entitled to vote on the Plan. | Debtor anticipates that the residence will be sold within 60 days of the Effective Date, at which time secured debt will be paid in full.<br><br>Pending sale of property, payments will continue pursuant to loan documents<br><br>Pmt amount = $350 per month<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 3 | Secured claim of:<br><br>Name = Bank of America<br><br>• Collateral description = Cooling warehouse <u>and cooling equipment</u> located in Laredo, Texas (first priority, but junior to property | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Pursuant to agreement with secured creditor, the principal amount of the debt will be reduced by $5,583.49 which consists of three months principal payments. Additionally, Debtor shall use best efforts to sell the icing equipment (per agreement with secured creditor, Debtor will have 90 days to do so without prejudice to any parties should a sale not occur within such timeframe), the proceeds of which will be turned over to |

15

| | | | | |
|---|---|---|---|---|
| | taxes with respect to real property<br><br>• Collateral value = $2,200,000 est. (includes real property and cooling equipment)<br><br>• Total claim amount = $1,061,066 est. | | | secured creditor and applied to outstanding balance in secured creditor' discretion. The balance of the claim shall be a term note, bearing interest at the rate of 7.5% per annum, until paid.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 4 | Secured claim of:<br><br>Name = South Texas Business Fund<br><br>• Collateral description = Cooling warehouse <u>and cooling equipment</u> located in Laredo, Texas (second priority)<br><br>• Collateral value = $2,200,000 est.<br><br>• Total claim amount = $680,000 est.<br><br>South Texas Business Fund (Laredo cooler equipment and building – 2nd priority) | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over the balance of the loan term with payments of approx. $8,000 per month.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |

16

| 5 | Secured claim of:<br><br>Name = Bank of the West<br><br>• Collateral description = sweeper and scissorlift equipment<br><br>• Collateral value = $18,000 est.<br><br>• Total claim amount = $19,500 est. ($18,000 secured claim and $1,500 general unsecured claim) | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of nine (9) months after the Effective Date, with payments of approx. $850 per month for the first eight (8) months and a final payment of approx. $10,650 in month 9.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 6 | Secured claim of:<br><br>Name = Bank of the West<br><br>• Collateral description = forklifts<br><br>• Collateral value = unknown, but less than asserted claim<br><br>Total claim amount = $90,000 est. | N | No; allowed claims in this class are not entitled to vote on the Plan. | On the Effective Date, collateral will be surrendered to claimant in full and complete satisfaction of its secured claim herein. |
| 7 | Secured claim of:<br><br>Name = Bank of the West | $89,000 est. | No; allowed claims in this class are not entitled to vote on the | On the Effective Date, collateral will be surrendered to claimant in full and complete satisfaction of its secured claim herein. |

17

| | | | | |
|---|---|---|---|---|
| | • Collateral description = ice injector equipment<br><br>• Collateral value = unknown, but less than asserted claim<br><br>Total claim amount = $89,000 est. | | Plan. | |
| 8 | Secured claim of:<br><br>Name = Cisco Systems Capital Corp.<br><br>• Collateral description = VOIP Telephone Equipment<br><br>• Collateral value = $10,000 est.<br><br>• Total claim amount = $100,000 est. ($10,000 secured claim and $90,000 general unsecured claim) | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of two (2) months after the Effective Date, with payment of approx. $6,700 in month one and balance of approx. $3,300 in month 2.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 9 | Secured claim of:<br><br>Name = Chase Auto Finance<br><br>• Collateral description = 2006 Ford Mustang | N | No; allowed claims in this class are not entitled to vote on the Plan. | The Debtor is in the process of selling this asset in excess of the amount of the secured debt. The proceeds of the sale shall be used to pay the balance of the secured claim in full.<br><br>Pending satisfaction of secured claim, claimant will retain lien |

18

| | | | | |
|---|---|---|---|---|
| | • Collateral value = $35,000 est.<br><br>Total claim amount = $16,000 est. | | | on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 10 | Secured claim of:<br><br>Name = Ford Motor Credit<br><br>• Collateral description = 2006 Ford F-150 Truck<br><br>• Collateral value = $10,000 est.<br><br>Total claim amount = $2,400 est. | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of three (3) months, with payments of approx. $800 per month.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 11 | Secured claim of:<br><br>Name = Ford Motor Credit<br><br>• Collateral description = 2008 Ford Expedition<br><br>• Collateral value = $25,000 est.<br><br>Total claim amount = $17,000 est. | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of 16 months, with payments of approx. $1,100 per month.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 12 | Secured claim of: | N | Impaired; allowed | Claim will be paid over a period of 22 months, with |

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 95 of 171

| | | | | |
|---|---|---|---|---|
| | Name = Ford Motor Credit<br><br>• Collateral description = 2008 Ford Explorer – located in Salinas<br><br>• Collateral value = $20,000 est.<br><br>Total claim amount = $16,000 est. | | claims in this class are entitled to vote on the Plan. | payments of approx. $750 per month.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 13 | Secured claim of:<br><br>Name = Ford Motor Credit<br><br>• Collateral description = 2008 Ford Explorer – located in Laredo<br><br>• Collateral value = $20,000 est.<br><br>Total claim amount = $26,000 est. ($20,000 secured claim and $6,000 unsecured deficiency claim) | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | Claim will be paid over a period of 58 months, with payments of approx. $500 per month.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 14 | Secured claim of:<br><br>Name = GMAC<br><br>• Collateral | N | Impaired; allowed claims in this class are entitled to | Claim will be paid over a period of one (1) month, with payment of approx. $1,300.<br><br>Pending satisfaction of secured |

20

| | | | | |
|---|---|---|---|---|
| | description = 2007 GMC Yukon<br><br>• Collateral value = $20,000 est.<br><br>Total claim amount = $1,300 est. | | vote on the Plan. | claim, claimant will retain lien on property.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured claim. |
| 15 | Secured claim of:<br><br>Name = Wells Fargo Bank<br><br>• Collateral description = Substantially all assets of Debtor (including, without limitation, cash, accounts receivable, inventory, fixtures, furnishings and equipment, and intellectual property) excluding real property, vehicles and equity in Mexican subsidiary<br><br>Priority – First/Senior<br><br>• Collateral value = $2,120,986 est.<br><br>Total claim | N | Impaired; allowed claims in this class are entitled to vote on the Plan. | During the pendency of this case, approximately $369,000 in adequate protection payments was made to claimant, which amount will be applied as a credit against the secured claim, reducing the secured claim to $1,751,986.<br><br>Claim will be paid over a period of 60 months after the Effective Date. Interest shall be consistent with non-default loan terms.<br><br>Pending satisfaction of secured claim, claimant will retain lien on property.<br><br>Additionally, claimant shall retain its lien in the Laredo litigation against Temple with the same extent, validity and priority as claimant was entitled to on the Petition Date. To the extent that claimant receives distributions on account of such collateral, the unsecured deficiency portion of the claim will be reduced accordingly.<br><br>The foregoing treatment shall be in full and complete satisfaction of such secured |

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 97 of 171

| | | | | |
|---|---|---|---|---|
| | amount = $6,300,000 est. ($2,120,986 secured claim and $4,179,014 unsecured deficiency claim) | | | claim. |
| 15.1 | Secured claim of:<br><br>Name = Temple-Inland, Inc.<br><br>• Collateral description = Substantially all assets of Debtor excluding real property, vehicles and equity in Mexican subsidiary<br><br>Priority – Junior to Wells Fargo Bank<br><br>• Collateral value available for claim = $0<br><br>Total claim amount = $913,000 ($0 secured claim and $913,000 unsecured deficiency claim) | N | Impaired; Deemed to have rejected the Plan; Not are entitled to vote on the Plan. | The Debtor asserts that there is insufficient value in the Debtor's collateral to provide a security interest to TIN, whose alleged security interest is junior to the asserted security interests of Wells Fargo Bank and Bank of America. Based on the foregoing, Temple will receive no distribution on account of Claim 15.1, with the treatment for such claim to be included in Class 16. In the event that a determination is made at Plan confirmation that Temple is entitled to a secured claim, the Debtor proposes to pay the secured portion of such claim over a period of five (5) years at market interest, as may be determined at Plan confirmation, but which the Debtor estimates to be 6% per annum.<br><br>At a June 16, 2010 hearing, Temple expressly elected to treat its claim in accordance with 11 U.S.C. Section 1111(b). In the event that Temple is entitled to a secured claim in an amount greater than of inconsequential value, its claim will be treated solely as a Class 15.1 claim. If Temple's secured claim is determined to be of |

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 98 of 171

| | | | | inconsequential value, Temple's claim will be treated as a Class 16 claim, including, inter alia, its voting rights as such.

Additionally, Debtor asserts that this claim is disputed and subject to offset. |
| --- | --- | --- | --- | --- |

### 2. <u>Classes of Priority Unsecured Claims</u>

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim. The Debtor does not believe that there are any claims against the Debtor which may fall into such a class.

### 3.. <u>Classes of General Unsecured Claims</u>

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). The following chart identifies the Plan's treatment of the classes containing <u>all</u> of the Debtor's non-priority general unsecured claims:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
| --- | --- | --- | --- |
| 16 | All allowed general unsecured claims, estimated To be $1,800,000 of vendor debt plus approx. $5,300,000 in unsecured | Impaired; allowed claims in this class are entitled to vote on the Plan. | On the Effective Date, claimants will receive, in the aggregate, $100,000 from the "new value" contribution. Thereafter, commencing in month 13 and continuing through month 60, claimants will receive on a |

23

| | deficiency claims (including Temple's claim), for total unsecured claims of approx. $7,100,000 | | quarterly basis, in the aggregate, 50% of available cash on hand at the end of the quarter after all expenses and a $750,000 operational cash reserve. Based on the Debtor's projections, the Debtor estimates that it will be able to pay 100% of allowed Class 16 claims during such repayment period. However, Class 16 shall be guarantied a minimum distribution of $75,000 per quarter during such repayment period. Based on the foregoing, Class 16 is guaranteed to receive not less than $1,300,000 during the Plan repayment period, although the Debtor estimates that all claims will be satisfied in full during such time.

There shall be no prepayment penalties for the Debtor's early payment of any amounts owed to class 16 claim holders pursuant to the treatment of class 16 claims.

The foregoing treatment shall be in full and complete satisfaction of such Class 16 claims. |
|---|---|---|---|

4. <u>**Class of Interest Holders**</u>

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 17 | All equity holders in the Debtor. | Impaired; deemed to have rejected the Plan | On the Plan Effective Date, all class 17 interests will be deemed cancelled, terminated, extinguished and of no further force and effect and will no longer constitute an equity interest in the Debtor without |

24

| | | | | the need for either the Debtor or the class 17 interest holders to take any further action. Interest holders will not receive any distribution or retain any property under the Plan on account of their equity interests in the Debtor.<br><br>Instead, 100% interest in the Reorganized Debtor shall be issued to the Contributor. |
|---|---|---|---|---|

**D.     Effect of Confirmation of the Plan.**

**1.     Vesting of Assets in the Reorganized Debtor.**

On the Effective Date, all Assets of the Debtor and its estate shall vest as in the Reorganized Debtor.

**2.     Authority to Effectuate the Plan.**

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without further approval or order from the Bankruptcy Court. The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to carry out the Plan and to effectuate the distributions provided for under the Plan, subject to the provisions of the Plan.

**3.     Dissolution of the Creditors' Committee and Formation of Post-Confirmation Committee**

On the Effective Date, the Creditors' Committee will be deemed dissolved and its members will be released and discharged from all further duties and obligations arising from or related to the Chapter 11 Case.

On the Effective Date, a Post-Confirmation Committee, comprised of present members of the Committee of Unsecured Creditors willing to serve, and any additional general unsecured creditors

25

unanimously approved for inclusion on the Post-Confirmation Committee by its members, will be formed. Such Post-Confirmation Committee will be authorized to (a) monitor the Reorganized Debtor's operations after the Effective Date; (2) analyze claims and prosecute claims objections; and prosecute any Avoidance Actions that the Reorganized Debtor has not commenced within 15 days' notice of the Post-Confirmation Committee's intention to prosecute such Avoidance Actions on behalf of the estate.

As is the case with the Creditors' Committee, the Post-Confirmation Committee shall serve without compensation.

The Reorganized Debtor shall provide quarterly income statements and balance sheets to the Post-Confirmation Committee and Wells Fargo Bank to monitor the Reorganized Debtor's operations during the Plan period.

**E.** **Implementation and Means of Execution of the Plan.**

**1.** **Management of the Reorganized Debtor.**

The Debtor currently anticipates that Armand Cimino, Stephanie Cimino and Vince Cimino will be employed by the Reorganized Debtor as management to carry out its business operations and will continue to receive compensation commensurate with current levels.

Armand Cimino is responsible for managing and overseeing the Debtor's Texas and Mexico operations. In 1996, Armand Cimino moved to Mexico and established production and the post harvest processes. Additionally, he developed the quality control systems, food safety procedures, accounting, maintenance, packing, and purchasing. He is responsible for managing relationships with growers, scheduling harvesting and ensuring quality control. In 2005-2006, Armand facilitated the acquisition and construction of the Laredo operation. Armand coordinates the operations between the Debtor and its subsidiary in Mexico. In 2008, the Debtor was the largest fresh broccoli

shipper in Mexico and it was the largest shipper of Asian cut broccoli crowns in North America. As of April 19, 2010, Armand Cimino receives compensation of $4,702.71 bi-monthly.

Stephanie Cimino is a part of the core team in Texas and Mexico. Ms. Cimino manages and operates the Debtor's operations in Texas and coordinates operations in Mexico, along with Armand Cimino. She focuses on the daily operation, from a management and administrative side, to assist the Debtor in operating efficiently. As of April 19, 2010, Stephanie Cimino receives compensation of $4,702.71 bi-monthly.

Vince Cimino heads the Salinas, California office, which is responsible for all sales, marketing and administrative functions for the Debtor. He is also the Debtor's Chief Financial Officer (CFO). In addition to his duties as CFO, Vince Cimino is responsible for establishing and managing relationships with key customers and carrying out administrative functions related to the day-to-day operations. As of April 19, 2010, Vince Cimino receives compensation of $9,405.45 bi-monthly.

The Debtor does not anticipate any other persons to be involved in the Debtor's management. Notwithstanding the foregoing, demands of the Debtor may change and the Debtor may need to make appropriate adjustments as necessary, provided that such changes do not impair the Reorganized Debtor's ability to perform under the Plan, absent further order of this Court.

2.      **Funding of the Plan.**

Initially, the Plan will be funded with a $350,000 "new value" contribution. As set forth in an analysis prepared by Crowe, a copy of which is attached to the Disclosure Statement as Exhibit "F", the value of the equity interest in the Debtor is zero ($0). As a result, the Debtor submits that the "new vale" contribution of $350,000 is substantial, and greatly in excess of the value of equity being obtained in the Reorganized Debtor. Thereafter, plan payments will be funded from the Debtor's continued operations, as set forth in the projections appended to the Disclosure Statement.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 103 of 171

### 3. The Rights of Action.

The Reorganized Debtor shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue, any and all claims and causes of action of the estate which were not commenced prior to the Effective Date, other than Avoidance Actions and claims objections prosecuted by the Post-Confirmation Committee. The Bankruptcy Court shall retain jurisdiction over all such actions.

The Reorganized Debtor may, but shall not be required to, set-off against any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, any action the Reorganized Debtor may have against the Holder of the Claim, but neither the failure to do so nor the allowance of any Claim shall constitute a waiver or release by the Reorganized Debtor of any such action, set-off or recoupment which the Reorganized Debtor may have against such Holder.

Except as expressly provided in the Plan, nothing in this Disclosure Statement, the Plan, the Plan Confirmation Order or any other order or document shall constitute or be deemed to constitute a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor or any other party in interest had prior to the Effective Date. On the Effective Date, all such claims, causes of action, rights and defenses held by the Debtor shall be deemed transferred and conveyed to the Reorganized Debtor as successor in interest.

### 4. Corporate Action.

Each of the matters provided for under the Plan involving any corporate action to be taken or required by the Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by management of the Debtor.

28

## IV.

## CLAIMS RESOLUTION AND DISTRIBUTIONS

**A.**    **Objections to Claims.**

The Debtor or the Reorganized Debtor, as the case may be, and/or the Post-Confirmation Committee, shall review all claims filed or deemed filed and may object to or seek subordination of any claim filed or scheduled in this bankruptcy case (unless the Court has already entered an order allowing a claim).

**B.**    **Late Claims Void.**

Unless otherwise expressly ordered by the Bankruptcy Court or otherwise provided by the Plan, any Claim filed after the Claims Bar Date shall be void and of no force or effect, and shall receive no distributions under the Plan.

**C.**    **Estimation of Claims.**

The Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code Section 502(c) regardless of whether the Debtor, the Creditors' Committee or any other party in interest, previously objected to such Claim, or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction over the Debtor's estate and this Chapter 11 Case to estimate any Claim at any time prior to the entry of a Final Decree closing this Chapter 11 Case. In the event that the Bankruptcy Court estimates any Claim, that estimated amount will constitute either the Allowed amount of such Claim (for Plan voting, Plan distribution or both) or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount is not binding for Plan distribution purposes, the Reorganized Debtor or any other party in interest may elect to pursue any supplemental ruling of the Bankruptcy Court, including any supplemental objection to the Claim, in connection with Plan distribution purposes.

Case: 09-60291     Doc# 143     Filed: 06/21/10     Entered: 06/21/10 11:19:28     Page 105 of 171

**D.      Allowed and Disputed Claims.**

A Claim shall be deemed Allowed if either (i) such Claim is listed in the Debtor's Schedules (as most recently amended) as liquidated, undisputed and non-contingent, and no objection has been filed to such Claim, or (ii) the Holder of such Claim has filed a proof of such Claim on or before the applicable Claims Bar Date; provided, however, that no objection to such Claim has been filed, no motion has been filed to estimate or subordinate such Claim, and no proceeding is pending disputing the Claim or amount thereof.  A Claim which is subject to a proceeding, an objection or a motion for estimation or subordination which has not been Allowed or Disallowed by a Final Order shall be deemed Disputed until resolved by Final Order.  All Claims that are not Allowed or Disputed are deemed Disallowed.  No Claim shall be deemed Allowed by virtue of the Plan and/or confirmation of the Plan.

**E.      Provisions Regarding Distributions.**

**1.      Disbursing Agent.**

The Reorganized Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan to all classes except Class 16 (the "Disbursing Agent"). The Disbursing Agent shall serve without bond and without compensation for distribution services rendered in connection with the Plan.  Distributions to Class 16 shall be made through the Debtor's accountant or another third party disbursing agent to be designated by the Debtor or the Post-Confirmation Committee, by date of Plan confirmation, and, whether such distributions are made by the Debtor's accountant or a third party, payment of the fees and expenses of such accountant or third party disbursing agent will be paid by the Reorganized Debtor from operating funds, subject to Debtor's or Reorganized Debtor's review and approval of proposed compensation to such disbursing agent.

**F.      Post-Confirmation Committee Objections to Claims.**

As with Avoidance Actions, the Post-Conformation Committee may retain professionals to prosecute claims objections on an hourly or contingency basis.  Reasonable professional fees and

Case: 09-60291     Doc# 143     Filed: 06/21/10     Entered: 06/21/10 11:19:28     Page 106 of 171

expenses incurred in the pursuit of claims objections will be paid by the Reorganized Debtor from operating funds, upon settlement or disallowance of the claims objected to, and will only be paid in the event that allowance of such claims, and payment in full of the face such claims, would otherwise exceed such professional fees and expenses.

### 2. Distributions to be Made Pursuant to the Plan

#### a. Timing of Distributions

Distributions to be made by the Disbursing Agent on account of any claim shall be made as set forth in the Plan, or as promptly thereafter as practicable.

#### b. Method of Distribution

The Disbursing Agent shall make all distributions by check drawn on a domestic bank or by wire transfer, at the sole election of the Disbursing Agent. The Disbursing Agent shall make such distributions to the address shown on the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or to a different address as set forth in a proof of claim duly filed with the Court.

#### c. Unclaimed Property

Payments made pursuant to the terms of the Plan that are unclaimed as of three months following the date on which such distributions are made, whether because such payments have been returned as undeliverable without a proper forwarding address, will be referred to herein as "Unclaimed Property". During the three months following the date any distribution is made pursuant to the Plan (the "Claiming Period"), Unclaimed Property shall be distributed to the holders of allowed claims entitled thereto upon presentment to the Disbursing Agent of satisfactory proof of entitlement. Checks issued by the Disbursing Agent to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the allowed claim to whom such check was originally issued prior to the expiration of the Claiming Period. On the first day after the expiration of the Claiming Period: (i) holders of allowed claims previously entitled to such Unclaimed Property (including, but not limited to, the holder of any such claim who has failed to

31

make a timely request for reissuance of a voided check) shall no longer be entitled to any payment on account of its allowed claim; (ii) such claims shall be deemed disallowed for all purposes; and (iii) the then remaining cash constituting Unclaimed Property with respect to such distribution shall be available for use for any legitimate purpose with respect to the implementation and administration of the Plan.

### d.    Compliance with Governmental Regulations

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### 3.    No Distributions on Disputed or Disallowed Claims.

If any Claim is a Disputed Claim, no distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim, unless a portion of the Claim which is Disputed is not Disputed, in which case that portion of the Claim which is not Disputed shall be treated as an Allowed Claim for distribution purposes.  Once a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive a distribution in the manner described below.  No distributions under the Plan shall be made on account of Claims that have been Disallowed.

### F.    Set-Offs.

The Reorganized Debtor, as successor to the Debtor, or the Post-Confirmation Committee, as a representative of the estate hereunder, may, pursuant to Bankruptcy Code Section 553 or applicable non-bankruptcy law, set-off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim or thereafter), the claims, rights and causes of action of any nature that the Debtor may hold against the Holder of such Allowed Claim.  The Holder of a Claim may, pursuant to Bankruptcy Code Section

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 108 of 171

553 or applicable non-bankruptcy law, set off any Allowed Claim such Holder possesses against any claim, rights or causes of action of any nature that the Reorganized Debtor, as successor to the Debtor, may hold against such Holder. Neither the failure to effect such a set-off nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Reorganized Debtor or such Holders of any such Claims, rights and causes of action that such parties may possess under Bankruptcy Code Section 553.

# V

## INJUNCTION AND EXCULPATION

**A.    Discharge.**

On the Plan Effective Date, the Debtor will receive a discharge under the Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code because there has not been a liquidation of all or substantially all of the property of the Debtor's estate and because the Reorganized Debtor will be continuing with the Debtor's current business operations.

**B.    Injunction.**

Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims or Interests are permanently enjoined, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtor, its estate, or the Reorganized Debtor; (2) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, its estate, or the Reorganized Debtor; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, its estate, or the Reorganized Debtor and/or against the Property or interests in Property of any of the foregoing; and (4) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtor or against the

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 109 of 171

Property of the Debtor, its estate, or the Reorganized Debtor with respect to any such Claim or Interest (hereinafter, collectively the "Estate-Related Claims").

Notwithstanding anything set forth herein, on and after the Effective Date, the Reorganized Debtor and/or the Post-Confirmation Committee shall have the right to move this Court for an imposition of an injunction, subject to appropriate evidence and basis, as may be appropriate to enjoin actions of third parties against the Reorganized Debtor or its management or personnel which may adversely affect the administration or operation of the Reorganized Debtor after the Effective Date.

## C.    Exculpation and Limitation of Liability.

None of the Debtor, the Reorganized Debtor, nor any of their respective present or former members, officers, directors, employees, advisors, or attorneys or other professionals, shall have or incur any liability to the Debtor's bankruptcy estate for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, including, without limitation, administration of the Chapter 11 Case, any sale of assets of the Debtor, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their fraud, gross negligence or willful misconduct, and in all respects such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in the Chapter 11 Case and under the Plan.

///

///

///

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 110 of 171

# VI.

## OTHER PLAN EFFECTUATION MATTERS

**A.    Executory Contracts and Unexpired Leases.**

    **1.    Assumption of Executory Contracts and Unexpired Leases**

    The Debtor intends to assume the following leases and executory contracts, and will pay the amounts set forth below which the Debtor believes are the appropriate "cure" amounts necessary for such assumptions.

| Party To Lease or Executory Contract | "Cure" Amount |
|---|---|
| GECC (equipment lease – generator, compressor, forklift) | $6,377.07 |
| NMHG Financial Services, Inc. (forklift equipment) | $1,959.43 |
| Javco G.P. (Salinas real property lease) | $8,206.03 |

    Notwithstanding the foregoing, the Debtor reserves the right to amend the foregoing schedule of assumptions and seek the rejection of any or all of the foregoing leases and executory contracts in connection with Plan confirmation.  Additionally, unless objected to by the party to the proposed lease or executory contract to be assumed above, the foregoing :"cure" amounts shall be deemed to be the appropriate "cure" amounts required to be paid in connection with such assumption.

    **2.    Rejection of Executory Contracts and Unexpired Leases.**

    Any pre-petition executory contract or unexpired lease which has not expired by its own terms on or prior to the Effective Date, or which has not been assumed and assigned or rejected with the approval of the Bankruptcy Court, or which is not set forth above to be assumed in connection with Plan confirmation as of the Effective Date, shall be deemed rejected by the Debtor on the

35

Effective Date or as otherwise agreed upon by the parties. The entry of the Plan Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to Bankruptcy Code Sections 365(a) and 1123, effective as of the Effective Date of the Plan.

      **3.**      **Rejection Damage Claims Bar Date and Resolution.**

Claims, if any, arising out of the rejection of executory contracts or unexpired leases rejected as of the Effective Date pursuant to the Plan must be filed and served on counsel to the Reorganized Debtor pursuant to the procedures specified in the Plan Confirmation Order no later than thirty (30) days after the Effective Date (the "Final Rejection Claims Bar Date"). Any Claim not filed within such times will be forever barred from assertion against the Debtor, the Reorganized Debtor, its estate, its successor or its properties. Unless otherwise ordered by the Bankruptcy Court prior to the Confirmation Date, or such later date as shall be ordered by the Bankruptcy Court prior to the Confirmation Date, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Class 16 Claims under the Plan.

**B.**      **Retention of Jurisdiction.**

The Plan provides for a broad retention of jurisdiction by the Bankruptcy Court including, without limitation, the following: (i) interpretation, implementation and enforcement of the Plan, and any contracts, instruments, releases, transactions and other agreements or documents created in connection therewith; (ii) determination of any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtor or any other party in interest after the Effective Date (to the extent such venue is selected by the moving party); (iii) to hear and determine any objections to Claims or motions for estimation or subordination thereof; (iv) to hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code Sections 346, 505 and 1146; (v) to hear and determine any matters that may arise in connection with the sales of

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 112 of 171

the Debtor's assets or any order of the Bankruptcy Court with respect thereto; and (vi) to hear and determine any actions or controversies by or against the Debtor, the Reorganized Debtor, or the Creditors' Committee.

**C.    Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan, unless the modification relates only to the extension of the Effective Date, which modification shall not require a new disclosure statement and/or re-voting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Revocation or Withdrawal.**

The Plan may be revoked or withdrawn by the Debtor prior to the Confirmation Date, in which case the Plan shall be deemed null and void.  In such event, nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any claims by the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any other entity in any further proceedings involving the Debtor.

**E.    Section 1146 Exception.**

Pursuant to Bankruptcy Code Section 1146(c), the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

**F.    Severability.**

The provisions of the Plan shall not be severable unless such severance is agreed to by the Debtor and such severance would constitute a permissible modification of the Plan pursuant to Bankruptcy Code Section 1127.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 113
of 171

**G.     Governing Law.**

Except to the extent that other federal law is applicable, or to the extent that an exhibit to the Disclosure Statement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of California.

**H.     Closing of Case.**

The Reorganized Debtor shall, promptly upon the administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to obtain a Final Decree closing the Chapter 11 Case.

**I.     Continuing Viability of Other Orders/Agreements.**

Except to the extent expressly modified by the Plan, (i) all Final Orders previously entered by the Bankruptcy Court and (ii) any agreements between creditors or between the Debtor and its creditors shall continue in full force and effect.

**VII.**

**MISCELLANEOUS PROVISIONS**

**A.     Waiver of Final Order.**

Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtor.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

**B.     Business Days.**

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

38

**C.     No Attorneys' Fees.**

No attorneys' fees will be paid by the Debtor with respect to any Claim or Interest except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

**D.     No Injunctive Relief.**

No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

**E.     Operations Between the Confirmation Date and the Effective Date.**

The Debtor shall continue to operate as a debtor-in-possession, subject to the supervision of the Bankruptcy Court, during the period from the Confirmation Date through and until the Effective Date.

**F.     Approval of Agreements.**

The solicitation of votes on this Plan shall be deemed a solicitation of the Holders of Allowed Claims and Interests for the approval of all other agreements and transactions contemplated by this Plan. Entry of the Plan Confirmation Order shall constitute approval of such agreement and transactions and the Plan Confirmation Order shall so provide.

**G.     No Admissions or Waivers.**

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission or waiver by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

Case: 09-60291     Doc# 143     Filed: 06/21/10     Entered: 06/21/10 11:19:28     Page 115 of 171

**H.      Section Headings.**

The section headings contained in this Plan are for reference purposes only and shall not affect the meaning or interpretation of this Plan.

**I.      Continuing Viability of Other Orders/Agreements.**

Except to the extent expressly modified by this Plan, (i) all Final Orders previously entered by the Bankruptcy Court and (ii) any agreements between Creditors or between the Debtor and its Creditors shall continue in full force and effect.

**VIII.**

**CONCLUSION AND RECOMMENDATION**

The Debtor believes that the Plan is in the best interests of all Holders of Claims and urges all Holders of Claims to vote to accept the Plan and to evidence such acceptance by returning their ballots to Debtor's counsel so that they will actually be received on or before 5:00 p.m., prevailing Pacific Time, on July 16, 2010.

Respectfully Submitted:

Dated: June 16, 2010           CIMINO BROKERAGE COMPANY dba
                               CIMINO BROTHERS PRODUCE


                               By: _/s/ Vincent Cimino_____
                                   VINCENT CIMINO
                                   Its General Partner and Responsible Individual


Dated: June 16, 2010           LEVENE, NEALE, BENDER, RANKIN
                               & BRILL L.L.P.

                               By: _/s/ David B. Golubchik_____
                                   DAVID B. GOLUBCHIK
                                   Attorneys for Debtor
                                   CIMINO BROKERAGE COMPANY dba
                                   CIMINO BROTHERS PRODUCE

40

# EXHIBIT B

# Cimino Brothers Produce, Debtor
## Forecasted Cash Flows from Operations
### For the Five Fiscal Years Ending August, 31 2015

*Forecasted Statements of Operations*

| | REF | Forecasted Sep-10 | Forecasted Oct-10 | Forecasted Nov-10 | Forecasted Dec-10 | Forecasted Jan-11 | Forecasted Feb-11 | Forecasted Mar-11 | Forecasted Apr-11 | Forecasted May-11 | Forecasted Jun-11 | Forecasted Jul-11 | Forecasted Aug-11 | Forecasted FY 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | | | | | | | |
| Number of Cartons Sold | 4 | 75,000 | 75,000 | 100,000 | 125,000 | 125,000 | 185,000 | 175,000 | 88,000 | 107,500 | 94,600 | 80,000 | 75,000 | 1,305,100 |
| Market Price per Carton - FOB | 5 | 11.15 | 11.60 | 9.67 | 10.37 | 11.13 | 9.16 | 8.28 | 12.47 | 10.52 | 10.17 | 9.72 | 9.63 | 10.32 |
| Net Commodity Sales | 6 | 836,300 | 870,000 | 967,000 | 1,296,300 | 1,391,300 | 1,694,600 | 1,449,000 | 1,097,400 | 1,130,900 | 962,100 | 777,600 | 722,300 | 13,194,800 |
| Freight Sales | 7 | 120,800 | 120,800 | 161,000 | 201,300 | 201,300 | 297,900 | 281,800 | 141,700 | 173,100 | 152,300 | 128,800 | 120,800 | 2,101,600 |
| **Total Sales** | | 957,100 | 990,800 | 1,128,000 | 1,497,600 | 1,592,600 | 1,992,500 | 1,730,800 | 1,239,100 | 1,304,000 | 1,114,400 | 906,400 | 843,100 | 15,296,400 |
| **Costs of Goods Sold** | | | | | | | | | | | | | | |
| Cartons - Interco Mexico | 8 | 99,000 | 99,000 | 132,000 | 165,000 | 165,000 | 244,200 | 231,000 | 116,200 | 141,900 | 124,900 | 105,600 | 99,000 | 1,722,800 |
| Cooling Fee - Cimino Mexico | | 82,500 | 82,500 | 110,000 | 137,500 | 137,500 | 203,500 | 192,500 | 96,800 | 118,300 | 104,100 | 88,000 | 82,500 | 1,435,700 |
| Handling Fee - Cimino Mexico | | 37,500 | 37,500 | 50,000 | 62,500 | 62,500 | 92,500 | 87,500 | 44,000 | 53,800 | 47,300 | 40,000 | 37,500 | 652,600 |
| Product | | 287,300 | 287,300 | 383,000 | 478,800 | 478,800 | 708,600 | 670,300 | 337,000 | 411,700 | 362,300 | 306,400 | 287,300 | 4,998,800 |
| Commodities Purchased | | 506,300 | 506,300 | 675,000 | 843,800 | 843,800 | 1,248,800 | 1,181,300 | 594,000 | 725,700 | 638,600 | 540,000 | 506,300 | 8,809,900 |
| Freight | 9 | 108,700 | 108,700 | 144,900 | 181,200 | 181,200 | 268,100 | 253,600 | 127,500 | 155,800 | 137,100 | 115,900 | 108,700 | 1,891,400 |
| Freight Mexico | 9 | 69,000 | 69,000 | 92,000 | 115,000 | 115,000 | 170,200 | 161,000 | 81,000 | 98,900 | 87,000 | 73,600 | 69,000 | 1,200,700 |
| Customs And Duties | 8 | 6,000 | 6,000 | 8,000 | 10,000 | 10,000 | 14,800 | 14,000 | 7,000 | 8,600 | 7,600 | 6,400 | 6,000 | 104,400 |
| Bags - Cooler | 10 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| **Total Costs of Goods Sold** | | 693,000 | 699,000 | 922,900 | 1,153,000 | 1,153,000 | 1,704,900 | 1,612,900 | 812,500 | 992,000 | 873,300 | 738,900 | 699,000 | 12,042,400 |
| **Gross Profit** | 11 | 264,100 | 297,800 | 205,100 | 344,600 | 439,600 | 287,600 | 117,900 | 426,600 | 312,000 | 241,100 | 167,500 | 150,100 | 3,254,000 |
| Gross Margin | | 27.6% | 30.1% | 18.2% | 23.0% | 27.6% | 14.4% | 6.8% | 34.4% | 23.9% | 21.6% | 18.5% | 17.8% | 21.3% |
| Gross Profit per Carton | | 3.52 | 3.97 | 2.05 | 2.76 | 3.52 | 1.55 | 0.67 | 4.85 | 2.90 | 2.55 | 2.09 | 2.00 | 2.70 |
| **Operating Expenses - Salinas** | 12 | | | | | | | | | | | | | |
| Alarm | | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 |
| Automobile | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Bank Charges | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Bad Debt Expense | 13 | 4,800 | 5,000 | 5,600 | 7,500 | 8,000 | 10,000 | 8,700 | 6,200 | 6,500 | 5,600 | 4,500 | 4,200 | 76,600 |
| Dues & Subscriptions | | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 21,000 |
| Insurance - Health | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Insurance - Liability | | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 27,600 |
| Insurance - Workers' Compensation | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Janitorial Service | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Licenses & Fees | | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 |
| Miscellaneous | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Office Rent | 14 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Office Supplies | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Postage | | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| Professional Fees (Non-Bankruptcy) | | 82,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 797,000 |
| Salaries & Wages | 15 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48,000 |
| Taxes - Payroll | | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48,000 |
| Telephone & Internet | 16 | 6,800 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 50,800 |
| Travel & Promotion | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Utilities | | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9,600 |
| **Total Operating Expenses - Salinas** | | 117,400 | 97,800 | 98,400 | 100,300 | 103,800 | 105,800 | 104,500 | 102,000 | 102,300 | 101,400 | 100,300 | 100,000 | 1,234,000 |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 118 of 171

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

| REF | | Forecasted Sep-10 | Forecasted Oct-10 | Forecasted Nov-10 | Forecasted Dec-10 | Forecasted Jan-11 | Forecasted Feb-11 | Forecasted Mar-11 | Forecasted Apr-11 | Forecasted May-11 | Forecasted Jun-11 | Forecasted Jul-11 | Forecasted Aug-11 | Forecasted FY1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17 | **Operating Expenses - Laredo** | | | | | | | | | | | | | |
| | Alarm | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| | Automobile | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| 18 | Cooler Supplies | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| | Dues & Subscriptions | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| 19 | Equipment Rental | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| 20 | Inspections | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 22,800 |
| | Insurance - Health | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| | Insurance - Liability | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| 22 | Insurance - Workers' Compensation | 2,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| | Janitorial | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 2,040 |
| | Licenses & Fees | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9,600 |
| | Loan Fees | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| | Miscellaneous | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | Office Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| | Postage | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| 21 | Repairs & Maintenance | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48,000 |
| 22→ | Repairs & Maintenance - House | 200 | 200 | | | | | | | | | | | 400 |
| | Salaries & Wages | 26,700 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 224,700 |
| | Taxes - Payroll | 3,500 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 22,750 |
| 23→ | Taxes - Personal Property | 1,000 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,500 |
| 24 | Taxes - Real Property | 1,000 | 1,000 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 10,000 |
| 16 | Telephone & Internet | 1,500 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,500 |
| | Travel & Promotion | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| 25 | Utilities | 10,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 92,500 |
| 26 | Utilities - House | 400 | 400 | | | | | | | | | | | 800 |
| 27 | **Total Operating Expenses - Laredo** | 62,920 | 47,970 | 47,170 | 47,170 | 47,170 | 47,170 | 47,170 | 47,170 | 47,170 | 47,170 | 47,170 | 47,170 | 582,590 |
| | **EBITDA** | 83,780 | 152,030 | 59,530 | 197,130 | 288,630 | 134,630 | (33,770) | 277,430 | 162,530 | 92,530 | 20,030 | 2,930 | 1,437,410 |
| | **Administrative Expenses** | | | | | | | | | | | | | |
| 28 | DIP Legal Fees | 20,000 | 15,000 | 10,000 | 5,000 | | | | | | | | | 50,000 |
| 29→ | Laredo Litigation Fees | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| | DIP Accounting Fees | 25,000 | 20,000 | 15,000 | 10,000 | | | | | | | | | 70,000 |
| 30 | OUST Fees | 10,000 | | | | | | | | | | | | 10,000 |
| | **Total Administrative Expenses** | 65,000 | 45,000 | 35,000 | 25,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 250,000 |
| | **Other Expenses** | | | | | | | | | | | | | |
| 31 | Depreciation - Salinas | 9,400 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 86,400 |
| 32→ | Depreciation - Laredo | 25,800 | 25,800 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 171,600 |
| | Interest Expense - Salinas | 200 | 100 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 800 |
| | Interest Expense - Laredo | 13,500 | 8,000 | 7,600 | 7,500 | 7,400 | 7,300 | 7,200 | 7,100 | 7,000 | 6,900 | 6,800 | 6,700 | 93,000 |
| | Interest Expense - WFB | 11,910 | 11,720 | 11,530 | 11,340 | 11,150 | 10,960 | 10,770 | 10,580 | 10,380 | 10,190 | 10,000 | 9,810 | 130,340 |
| | Interest Expense - priority claims | 490 | 480 | 470 | 460 | 450 | 440 | 430 | 420 | 420 | 410 | 400 | 390 | 5,260 |
| | **Total Other Expenses** | 61,300 | 53,100 | 38,650 | 38,350 | 38,050 | 37,750 | 37,450 | 37,150 | 36,850 | 36,550 | 36,250 | 35,950 | 487,400 |
| | **Net Income (Loss)** | (42,520) | 53,930 | (14,120) | 133,780 | 240,580 | 86,880 | (81,220) | 230,280 | 115,680 | 45,980 | (26,220) | (43,020) | 700,010 |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

# Cimino Brothers Produce, Debtor
## Forecasted Cash Flows from Operations
### For the Five Fiscal Years Ending August, 31 2015

*Forecasted Accruals*

| Item | REF | Forecasted Sep-10 | Forecasted Oct-10 | Forecasted Nov-10 | Forecasted Dec-10 | Forecasted Jan-11 | Forecasted Feb-11 | Forecasted Mar-11 | Forecasted Apr-11 | Forecasted May-11 | Forecasted Jun-11 | Forecasted Jul-11 | Forecasted Aug-11 | Forecasted FY 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BOM - A/R | 33 | 1,006,100 | 1,158,320 | 1,182,220 | 1,326,160 | 1,723,200 | 1,892,120 | 2,311,020 | 2,129,300 | 1,585,260 | 1,551,820 | 1,375,200 | 1,129,280 | 1,006,100 |
| Sales | | 957,100 | 990,800 | 1,128,000 | 1,497,600 | 1,592,600 | 1,992,500 | 1,730,800 | 1,239,100 | 1,304,000 | 1,114,400 | 906,400 | 843,100 | 15,296,400 |
| Collections | | (804,880) | (966,900) | (984,060) | (1,100,560) | (1,423,680) | (1,573,600) | (1,912,520) | (1,783,140) | (1,337,440) | (1,291,020) | (1,152,320) | (948,000) | (15,278,120) |
| **EOM - A/R** | | **1,158,320** | **1,182,220** | **1,326,160** | **1,723,200** | **1,892,120** | **2,311,020** | **2,129,300** | **1,585,260** | **1,551,820** | **1,375,200** | **1,129,280** | **1,024,380** | **1,024,380** |
| BOM - Due from Cimino Mexico | 34 | 892,000 | 888,000 | 884,000 | 880,000 | 876,000 | 872,000 | 868,000 | 864,000 | 860,000 | 856,000 | 852,000 | 848,000 | 892,000 |
| Collections from Cimino Mexico | | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (48,000) |
| Payments | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **EOM - Due from Cimino Mexico** | | **888,000** | **884,000** | **880,000** | **876,000** | **872,000** | **868,000** | **864,000** | **860,000** | **856,000** | **852,000** | **848,000** | **844,000** | **844,000** |
| BOM - Post Petition A/P | 8 | 558,500 | 693,000 | 693,000 | 922,900 | 1,153,000 | 1,153,000 | 1,153,000 | 1,612,900 | 812,500 | 873,300 | 738,900 | 738,900 | 558,500 |
| Costs of Goods Sold | | (693,000) | (693,000) | (922,900) | (1,153,000) | (1,153,000) | (1,153,000) | (1,612,900) | (812,500) | (873,300) | (738,900) | (738,900) | (693,000) | (11,237,400) |
| Payments | | 558,500 | 693,000 | 693,000 | 922,900 | 1,153,000 | 1,153,000 | 1,153,000 | 1,612,900 | 812,500 | 873,300 | 738,900 | 738,900 | 11,102,900 |
| **EOM - Post Petition A/P** | | **(693,000)** | **(693,000)** | **(922,900)** | **(1,153,000)** | **(1,153,000)** | **(1,153,000)** | **(1,612,900)** | **(812,500)** | **(873,300)** | **(738,900)** | **(738,900)** | **(693,000)** | **(693,000)** |
| BOM - WFB LOC | 32 | (6,370,000) | (2,024,400) | (1,995,600) | (1,966,600) | (1,937,400) | (1,908,000) | (1,878,400) | (1,848,600) | (1,818,600) | (1,788,400) | (1,758,000) | (1,727,400) | (6,370,000) |
| Debt Elimination | | 4,317,000 | - | - | - | - | - | - | - | - | - | - | - | 4,317,000 |
| Add Back Interest Portion | | (12,400) | (12,200) | (12,000) | (11,800) | (11,600) | (11,400) | (11,200) | (11,000) | (10,800) | (10,600) | (10,400) | (10,200) | (135,600) |
| **EOM - WFB LOC** | | **(2,024,400)** | **(1,995,600)** | **(1,966,600)** | **(1,937,400)** | **(1,908,000)** | **(1,878,400)** | **(1,848,600)** | **(1,818,600)** | **(1,788,400)** | **(1,758,000)** | **(1,727,400)** | **(1,696,600)** | **(1,696,600)** |
| BOM - Pre-Petition Unsecured Claims | 40 | (7,200,000) | (7,100,000) | (7,100,000) | (7,100,000) | (7,100,000) | (7,100,000) | (7,100,000) | (7,100,000) | (7,100,000) | (7,100,000) | (7,100,000) | (7,100,000) | (7,200,000) |
| Payments | | 100,000 | - | - | - | - | - | - | - | - | - | - | - | 100,000 |
| **EOM - Pre-Petition Unsecured Claims** | | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** | **(7,100,000)** |
| BOM - Pre-Petition Priority Tax Claims | 41 | (73,100) | (71,790) | (70,470) | (69,140) | (67,800) | (66,450) | (65,090) | (63,720) | (62,340) | (60,960) | (59,570) | (58,170) | (73,100) |
| Payments | | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 21,600 |
| Add Back Interest Portion | | (490) | (480) | (470) | (460) | (450) | (440) | (430) | (420) | (420) | (410) | (400) | (390) | (5,260) |
| **EOM - Pre-Petition Priority Tax Claims** | | **(71,790)** | **(70,470)** | **(69,140)** | **(67,800)** | **(66,450)** | **(65,090)** | **(63,720)** | **(62,340)** | **(60,960)** | **(59,570)** | **(58,170)** | **(56,760)** | **(56,760)** |
| BOM - Secured Notes Payable - Salinas | | (173,500) | (161,750) | (70,100) | (54,500) | (52,200) | (49,900) | (47,600) | (45,300) | (43,000) | (40,700) | (38,400) | (36,100) | (173,500) |
| 2006 Ford F150 | | 800 | 800 | 800 | - | - | - | - | - | - | - | - | - | |
| 2006 Ford Mustang | 35 | 800 | - | - | - | - | - | - | - | - | - | - | - | |
| Cisco Phone System | 16 | 6,700 | - | - | - | - | - | - | - | - | - | - | - | |
| 2007 GM Yukon | | 1,300 | - | - | - | - | - | - | - | - | - | - | - | |
| 2008 Ford Expedition | | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | |
| 2008 Ford Explorer | | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | |
| 2008 Ford Explorer | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | |
| Payments | | 11,950 | 3,150 | 3,150 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | |
| Debt Elimination | | - | 88,600 | 12,500 | - | - | - | - | - | - | - | - | - | |
| Add Back Interest Portion | | (200) | (100) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | |
| **EOM - Secured Notes Payable - Salinas** | | **(161,750)** | **(70,100)** | **(54,500)** | **(52,200)** | **(49,900)** | **(47,600)** | **(45,300)** | **(43,000)** | **(40,700)** | **(38,400)** | **(36,100)** | **(33,800)** | **(33,800)** |
| BOM - Secured Notes Payable - Laredo | | (2,170,600) | (1,308,030) | (1,300,680) | (1,023,730) | (1,018,680) | (1,013,530) | (1,008,280) | (1,002,930) | (997,480) | (982,130) | (977,330) | (972,430) | (2,170,600) |
| Scissorlift & Sweeper | | 4,550 | - | - | - | - | - | - | - | - | - | - | - | |
| Forklifts | 19 | 2,450 | 2,450 | - | - | - | - | - | - | 10,650 | - | - | - | |
| Laredo House - 1st | 36 | 350 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | |
| Laredo House - 2nd | | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | |
| Laredo Warehouse - B of A | 37 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | |
| Laredo Warehouse - SBA | 37 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Laredo Ice Maker/Injector | 19 | 3,650 | - | - | - | - | - | - | - | - | - | - | - | |
| Payments | | 23,550 | 15,350 | 12,550 | 12,550 | 12,550 | 12,550 | 12,550 | 12,550 | 22,350 | 11,700 | 11,700 | 11,700 | |
| Debt Elimination | 37 | 852,520 | - | 272,000 | - | - | - | - | - | - | - | - | - | |
| Add Back Interest Portion | | (13,500) | (8,000) | (7,600) | (7,500) | (7,400) | (7,300) | (7,200) | (7,100) | (7,000) | (6,900) | (6,800) | (6,700) | |
| **EOM - Secured Notes Payable - Laredo** | | **(1,308,030)** | **(1,300,680)** | **(1,023,730)** | **(1,018,680)** | **(1,013,530)** | **(1,008,280)** | **(1,002,930)** | **(997,480)** | **(982,130)** | **(977,330)** | **(972,430)** | **(967,430)** | **(967,430)** |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

# Cimino Brothers Produce, Debtor
## Forecasted Cash Flows from Operations
### For the Five Fiscal Years Ending August, 31 2015

| | REF | Forecasted Sep-10 | Forecasted Oct-10 | Forecasted Nov-10 | Forecasted Dec-10 | Forecasted Jan-11 | Forecasted Feb-11 | Forecasted Mar-11 | Forecasted Apr-11 | Forecasted May-11 | Forecasted Jun-11 | Forecasted Jul-11 | Forecasted Aug-11 | Forecasted FY 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BOM - Note Payable - Vince Cimino** | 38 | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | |
| Payments | | - | - | - | - | - | - | - | - | - | - | - | - | |
| Debt Elimination | | | | | | | | | | | | | | |
| **EOM - Note Payable - Vince Cimino** | | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | |
| **BOM - DIP Legal Fees Payable** | 28 | (75,000) | - | 10,000 | 20,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | |
| DIP Legal Fees Incurred | | (20,000) | (15,000) | (10,000) | (5,000) | | | | | | | | | |
| DIP Legal Retainer Applied | | 20,000 | 15,000 | 10,000 | 5,000 | | | | | | | | | |
| DIP Legal Fees Paid | | 75,000 | 10,000 | 10,000 | 5,000 | | | | | | | | | |
| **EOM - DIP Legal Fees Payable** | | - | 10,000 | 20,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | |
| **BOM - DIP Accounting Fees Payable** | 29 | (175,000) | (25,000) | (20,000) | (15,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | |
| DIP Accounting Fees Incurred | | (25,000) | (15,000) | (15,000) | (10,000) | | | | | | | | | |
| DIP Accounting Fees Paid | | 175,000 | 25,000 | 20,000 | 15,000 | | | | | | | | | |
| **EMO - DIP Accounting Fees Payable** | | (25,000) | (20,000) | (15,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | |
| *Forecasted Sources and Uses of Cash* | | | | | | | | | | | | | | |
| **BOM - Cash** | 40 | 276,300 | 231,510 | 257,340 | 349,330 | 283,820 | 329,830 | 533,760 | 526,010 | 483,380 | 750,000 | 750,000 | 750,000 | |
| **Cash from Operations** | | | | | | | | | | | | | | |
| Collections on A/R | 33 | 804,880 | 966,900 | 984,060 | 1,100,560 | 1,423,680 | 1,573,600 | 1,912,520 | 1,783,140 | 1,337,440 | 1,291,020 | 1,152,320 | 948,000 | |
| **Total Cash from Operations** | | 804,880 | 966,900 | 984,060 | 1,100,560 | 1,423,680 | 1,573,600 | 1,912,520 | 1,783,140 | 1,337,440 | 1,291,020 | 1,152,320 | 948,000 | |
| **Cash Used in Operations** | | | | | | | | | | | | | | |
| Payment of Operating Expenses - Salinas | 12 | (117,400) | (97,800) | (98,400) | (100,300) | (103,800) | (105,800) | (104,500) | (102,000) | (102,300) | (101,400) | (100,300) | (100,000) | |
| Payment of Operating Expenses - Laredo | 17 | (62,920) | (47,970) | (47,170) | (47,170) | (47,170) | (47,170) | (47,170) | (47,170) | (47,170) | (47,170) | (47,170) | (47,170) | |
| Payment of A/P | 8 | (558,500) | (693,000) | (693,000) | (922,900) | (1,153,000) | (1,153,000) | (1,704,900) | (1,612,900) | (812,500) | (992,000) | (873,300) | (738,900) | |
| **Total Cash Used in Operations** | | (738,820) | (838,770) | (838,570) | (1,070,370) | (1,303,970) | (1,305,970) | (1,856,570) | (1,762,070) | (961,970) | (1,140,570) | (1,020,770) | (886,070) | |
| **Cash Available from Operations** | | 342,360 | 359,640 | 402,830 | 379,520 | 403,530 | 597,460 | 589,710 | 547,080 | 858,850 | 900,450 | 881,550 | 811,930 | |
| **Other Sources of Cash** | | | | | | | | | | | | | | |
| Collections from Cimino Mexico | 34 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| Net Proceeds from Sale of Laredo House | 36 | 350,000 | | 30,000 | | | | | | | | | | |
| Net Proceeds from Sale of Company Vehicles | 35 | | | | | | | | | | | | | |
| Capital Contribution from Partners | 40 | | | 18,000 | | | | | | | | | | |
| **Total Other Sources of Cash** | | 354,000 | 4,000 | 52,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| **Other Uses of Cash** | | | | | | | | | | | | | | |
| Payments on N/P - Salinas | 32 | (11,950) | (3,150) | (3,150) | (2,350) | (2,350) | (2,350) | (2,350) | (2,350) | (2,350) | (2,350) | (2,350) | (2,350) | |
| Payments on N/P - Laredo | | (23,550) | (15,350) | (12,550) | (12,550) | (12,550) | (12,550) | (12,550) | (12,550) | (22,350) | (11,700) | (11,700) | (11,700) | |
| Payments to WFB | | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | |
| Payments to Priority Tax Creditors | 41 | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | |
| Expenditures for Phone and Network System | 16 | | (7,000) | (7,000) | (7,000) | | | | | | | | | |
| DIP Legal Fees Paid | 28 | (75,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | |
| Laredo Litigation Fees Paid | 29 | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | | | | | | | | |
| DIP Accounting Fees Paid | | (175,000) | (25,000) | (20,000) | (15,000) | | | | | | | | | |
| OUST Fees Paid | 30 | (10,000) | | | | | | | | | | | | |
| Income Taxes Paid | 39 | | | | | | | | | | (26,250) | | | |
| Lease assumption cure payments | | (16,550) | | | | | | | | | | | | |
| Secured creditor catch-up payments | | | | | | | | | | | | | | |
| Payments on Pre-Petition Unsecured Claims | | (100,000) | | | | | | | | | | | | |
| **Total Other Uses of Cash** | 40 | (464,850) | (106,300) | (105,500) | (99,700) | (77,700) | (67,700) | (67,700) | (67,700) | (77,500) | (93,100) | (66,850) | (66,850) | |
| **EOM Cash** | | 231,510 | 257,340 | 349,330 | 283,820 | 329,830 | 533,760 | 526,010 | 483,380 | 785,350 | 811,350 | 818,700 | 749,080 | |
| Cash Reserve for Operations | | (231,510) | (257,340) | (349,330) | (283,820) | (329,830) | (533,760) | (526,010) | (483,380) | (750,000) | (750,000) | (750,000) | (750,000) | |
| Cash Available for Debt Service | | - | - | - | - | - | - | - | - | 35,350 | 61,350 | 68,700 | (920) | |
| **Cumulative Cash Available for Debt Service** | 40 | - | - | - | - | - | - | - | - | 35,350 | 96,700 | 165,400 | 164,480 | |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

### Forecasted Statements of Operations

| | REF | Forecasted Sep-11 | Forecasted Oct-11 | Forecasted Nov-11 | Forecasted Dec-11 | Forecasted Jan-12 | Forecasted Feb-12 | Forecasted Mar-12 | Forecasted Apr-12 | Forecasted May-12 | Forecasted Jun-12 | Forecasted Jul-12 | Forecasted Aug-12 | Forecasted FY 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | | | | | | | |
| Number of Cartons Sold | 4 | 76,100 | 101,500 | 142,100 | 162,400 | 177,600 | 187,800 | 177,600 | 89,300 | 109,100 | 96,200 | 81,200 | 76,100 | 1,476,800 |
| Market Price per Carton - FOB | 5 | 11.43 | 11.89 | 9.91 | 10.63 | 11.41 | 9.39 | 8.49 | 12.78 | 10.78 | 10.42 | 9.96 | 9.87 | 10.58 |
| Net Commodity Sales | 6 | 869,700 | 1,206,800 | 1,408,500 | 1,726,200 | 2,026,100 | 1,763,300 | 1,507,300 | 1,141,400 | 1,176,400 | 1,000,700 | 809,000 | 751,200 | 15,386,600 |
| Freight Sales | 7 | 122,500 | 163,400 | 228,800 | 261,500 | 285,900 | 302,400 | 285,500 | 143,800 | 175,700 | 154,600 | 130,700 | 122,500 | 2,377,700 |
| **Total Sales** | | 992,200 | 1,370,200 | 1,637,300 | 1,987,700 | 2,312,000 | 2,065,700 | 1,793,200 | 1,285,200 | 1,352,100 | 1,155,300 | 939,700 | 873,700 | 17,764,300 |
| **Costs of Goods Sold** | | | | | | | | | | | | | | |
| Cartons - Interco Mexico | 8 | 100,500 | 134,000 | 187,600 | 214,400 | 234,400 | 247,900 | 234,400 | 117,900 | 144,000 | 126,700 | 107,200 | 100,500 | 1,949,500 |
| Cooling Fee - Cimino Mexico | | 83,700 | 111,700 | 156,300 | 178,600 | 195,400 | 206,600 | 195,400 | 98,200 | 120,000 | 105,600 | 89,300 | 83,700 | 1,624,500 |
| Handling Fee - Cimino Mexico | | 38,100 | 50,800 | 71,100 | 81,200 | 88,800 | 93,900 | 88,800 | 44,700 | 54,600 | 48,000 | 40,600 | 38,100 | 738,700 |
| Product | | 291,500 | 388,700 | 544,200 | 622,000 | 680,200 | 719,300 | 680,200 | 342,000 | 417,900 | 367,700 | 311,000 | 291,500 | 5,656,200 |
| Commodities Purchased | 9 | 513,800 | 685,200 | 959,200 | 1,096,200 | 1,198,800 | 1,267,700 | 1,198,800 | 602,800 | 736,500 | 648,000 | 548,100 | 513,800 | 9,968,900 |
| Freight | | 110,300 | 147,100 | 205,900 | 235,400 | 257,300 | 272,200 | 257,300 | 129,400 | 158,100 | 139,100 | 117,600 | 110,300 | 2,140,000 |
| Freight Mexico | 8 | 70,000 | 93,400 | 130,700 | 149,400 | 163,400 | 172,800 | 163,400 | 82,200 | 100,400 | 88,300 | 74,700 | 70,000 | 1,358,700 |
| Customs And Duties | 8 | 6,100 | 8,100 | 11,400 | 13,000 | 14,200 | 15,000 | 14,200 | 7,100 | 8,700 | 7,700 | 6,500 | 6,100 | 118,100 |
| Bags - Cooler | 10 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| **Total Costs of Goods Sold** | | 703,200 | 936,800 | 1,310,200 | 1,497,000 | 1,636,700 | 1,730,700 | 1,636,700 | 824,500 | 1,006,700 | 886,100 | 749,900 | 703,200 | 13,621,700 |
| **Gross Profit** | 11 | 289,000 | 433,400 | 327,100 | 490,700 | 675,300 | 335,000 | 156,500 | 460,700 | 345,400 | 269,200 | 189,800 | 170,500 | 4,142,600 |
| Gross Margin | | 29.1% | 31.6% | 20.0% | 24.7% | 29.2% | 16.2% | 8.7% | 35.8% | 25.5% | 23.3% | 20.2% | 19.5% | 23.3% |
| Gross Profit per Carton | | 3.80 | 4.27 | 2.30 | 3.02 | 3.80 | 1.78 | 0.88 | 5.16 | 3.17 | 2.80 | 2.34 | 2.24 | 2.96 |
| **Operating Expenses - Salinas** | 12 | | | | | | | | | | | | | |
| Alarm | | 410 | 410 | 410 | 410 | 410 | 410 | 410 | 410 | 410 | 410 | 410 | 410 | 4,920 |
| Automobile | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Bank Charges | | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 12,240 |
| Bad Debt Expense | 13 | 5,000 | 6,900 | 8,200 | 9,900 | 11,600 | 10,300 | 9,000 | 6,400 | 6,800 | 5,800 | 4,700 | 4,400 | 89,000 |
| Dues & Subscriptions | | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 21,480 |
| Insurance - Health | | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 61,200 |
| Insurance - Liability | | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 28,200 |
| Insurance - Workers' Compensation | | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 6,120 |
| Janitorial Service | | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 6,120 |
| Licenses & Fees | | 610 | 610 | 610 | 610 | 610 | 610 | 610 | 610 | 610 | 610 | 610 | 610 | 7,320 |
| Miscellaneous | | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 6,120 |
| Office Rent | 14 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 5,100 | 61,200 |
| Office Supplies | | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 6,120 |
| Postage | | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 3,720 |
| Professional Fees (Non-Bankruptcy) | | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 36,720 |
| Salaries & Wages | 15 | 66,300 | 66,300 | 66,300 | 66,300 | 66,300 | 66,300 | 66,300 | 66,300 | 66,300 | 66,300 | 66,300 | 66,300 | 795,600 |
| Taxes - Payroll | | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 48,960 |
| Telephone & Internet | 16 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 48,960 |
| Travel & Promotion | | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 6,120 |
| Utilities | | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 9,840 |
| **Total Operating Expenses - Salinas** | | 102,730 | 104,630 | 105,930 | 107,630 | 109,330 | 108,030 | 106,730 | 104,130 | 104,530 | 103,530 | 102,430 | 102,130 | 1,261,760 |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

| | REF | Forecasted Sep-11 | Forecasted Oct-11 | Forecasted Nov-11 | Forecasted Dec-11 | Forecasted Jan-12 | Forecasted Feb-12 | Forecasted Mar-12 | Forecasted Apr-12 | Forecasted May-12 | Forecasted Jun-12 | Forecasted Jul-12 | Forecasted Aug-12 | Forecasted FY 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Expenses - Laredo** | 17 | | | | | | | | | | | | | |
| Alarm | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Automobile | | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 3,720 |
| Cooler Supplies | 18 | 1,530 | 1,530 | 1,530 | 1,530 | 1,530 | 1,530 | 1,530 | 1,530 | 1,530 | 1,530 | 1,530 | 1,530 | 18,360 |
| Dues & Subscriptions | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Equipment Rental | 19 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 36,720 |
| Inspections | 20 | 1,940 | 1,940 | 1,940 | 1,940 | 1,940 | 1,940 | 1,940 | 1,940 | 1,940 | 1,940 | 1,940 | 1,940 | 23,280 |
| Insurance - Health | | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 3,720 |
| Insurance - Liability | | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 30,600 |
| Insurance - Workers' Compensation | 22 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 12,240 |
| Janitorial | | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 2,040 |
| Licenses & Fees | | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 9,840 |
| Loan Fees | | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 8,520 |
| Miscellaneous | | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 6,120 |
| Office Supplies | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Postage | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Repairs & Maintenance | 21 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 4,080 | 48,960 |
| Repairs & Maintenance - House | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Salaries & Wages | 22 | 18,360 | 18,360 | 18,360 | 18,360 | 18,360 | 18,360 | 18,360 | 18,360 | 18,360 | 18,360 | 18,360 | 18,360 | 220,320 |
| Taxes - Payroll | 23 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 1,790 | 21,480 |
| Taxes - Personal Property | | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 6,120 |
| Taxes - Real Property | 24 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 820 | 9,840 |
| Telephone & Internet | 16 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 12,240 |
| Travel & Promotion | | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 510 | 6,120 |
| Utilities | 25 | 7,650 | 7,650 | 7,650 | 7,650 | 7,650 | 7,650 | 7,650 | 7,650 | 7,650 | 7,650 | 7,650 | 7,650 | 91,800 |
| Utilities - House | 26 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Expenses - Laredo** | 27 | 48,120 | 48,120 | 48,120 | 48,120 | 48,120 | 48,120 | 48,120 | 48,120 | 48,120 | 48,120 | 48,120 | 48,120 | 577,440 |
| **EBITDA** | | 138,150 | 280,650 | 173,050 | 334,950 | 517,850 | 178,850 | 1,650 | 308,450 | 192,750 | 117,550 | 39,250 | 20,250 | 2,303,400 |
| **Administrative Expenses** | | | | | | | | | | | | | | |
| DIP Legal Fees | 28 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | - | - | - | - | 80,000 |
| Laredo Litigation Fees | 29 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DIP Accounting Fees | 30 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| OUST Fees | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Administrative Expenses** | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | - | - | - | - | 80,000 |
| **Other Expenses** | | | | | | | | | | | | | | |
| Depreciation - Salinas | 31 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Depreciation - Laredo | 32 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 144,000 |
| Interest Expense - Salinas | | 50 | 50 | 50 | 50 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 360 |
| Interest Expense - Laredo | | 6,600 | 6,500 | 6,400 | 6,300 | 6,200 | 6,100 | 6,000 | 5,900 | 5,800 | 5,700 | 5,600 | 5,500 | 72,600 |
| Interest Expense - WFB | | 10,000 | 9,800 | 9,600 | 9,400 | 9,200 | 9,000 | 8,800 | 8,600 | 8,400 | 8,200 | 8,000 | 7,800 | 106,800 |
| Interest Expense - priority claims | | 380 | 370 | 360 | 350 | 340 | 330 | 320 | 310 | 300 | 290 | 280 | 270 | 3,900 |
| **Total Other Expenses** | | 35,650 | 35,350 | 35,050 | 34,750 | 34,420 | 34,120 | 33,820 | 33,520 | 33,220 | 32,920 | 32,620 | 32,320 | 407,760 |
| **Net Income (Loss)** | | 92,500 | 235,300 | 128,000 | 290,200 | 473,430 | 134,730 | (42,170) | 264,930 | 159,530 | 84,630 | 6,630 | (12,070) | 1,815,640 |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

# Cimino Brothers Produce, Debtor
## Forecasted Cash Flows from Operations
### For the Five Fiscal Years Ending August, 31 2015

*Forecasted Accruals*

| | REF | Forecasted Sep-11 | Forecasted Oct-11 | Forecasted Nov-11 | Forecasted Dec-11 | Forecasted Jan-12 | Forecasted Feb-12 | Forecasted Mar-12 | Forecasted Apr-12 | Forecasted May-12 | Forecasted Jun-12 | Forecasted Jul-12 | Forecasted Aug-12 | Forecasted FY 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BOM - A/R** | 33 | 1,024,380 | 1,160,820 | 1,568,640 | 1,911,340 | 2,315,160 | 2,709,540 | 2,528,100 | 2,206,340 | 1,643,840 | 1,609,140 | 1,425,720 | 1,170,760 | 1,024,380 |
| Sales | | 992,200 | 1,370,200 | 1,637,300 | 1,987,700 | 2,312,200 | 2,065,700 | 1,793,200 | 1,285,200 | 1,352,100 | 1,155,300 | 939,700 | 873,000 | 17,763,800 |
| Collections | | (855,760) | (962,380) | (1,294,600) | (1,583,880) | (1,917,620) | (2,247,140) | (2,114,960) | (1,847,700) | (1,386,800) | (1,338,720) | (1,194,660) | (982,820) | (17,727,040) |
| **EOM - A/R** | | 1,160,820 | 1,568,640 | 1,911,340 | 2,315,160 | 2,709,540 | 2,528,100 | 2,206,340 | 1,643,840 | 1,609,140 | 1,425,720 | 1,170,760 | 1,061,640 | 1,061,640 |
| **BOM - Due from Cimino Mexico** | 34 | 844,000 | 840,000 | 836,000 | 832,000 | 828,000 | 824,000 | 820,000 | 816,000 | 812,000 | 808,000 | 804,000 | 800,000 | 844,000 |
| Collections from Cimino Mexico | | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (48,000) |
| **EOM - Due from Cimino Mexico** | | 840,000 | 836,000 | 832,000 | 828,000 | 824,000 | 820,000 | 816,000 | 812,000 | 808,000 | 804,000 | 800,000 | 796,000 | 796,000 |
| **BOM - Post Petition A/P** | 8 | (693,000) | (703,200) | (936,800) | (1,310,200) | (1,497,000) | (1,636,700) | (1,730,700) | (1,636,700) | (824,500) | (1,006,700) | (886,100) | (749,900) | (693,000) |
| Payments | | (703,200) | (936,800) | (1,310,200) | (1,497,000) | (1,636,700) | (1,730,700) | (1,636,700) | (824,500) | (1,006,700) | (886,100) | (749,900) | (703,000) | |
| Debt Elimination | | | | | | | | | | | | | | |
| Add Back Interest Portion | | | | | | | | | | | | | | |
| **EOM - Post Petition A/P** | | (703,200) | (936,800) | (1,310,200) | (1,497,000) | (1,636,700) | (1,730,700) | (1,636,700) | (824,500) | (1,006,700) | (886,100) | (749,900) | (703,000) | (703,000) |
| **BOM - WFB LOC** | 32 | (1,696,600) | (1,665,600) | (1,634,400) | (1,603,000) | (1,571,400) | (1,539,600) | (1,507,600) | (1,475,400) | (1,443,000) | (1,410,400) | (1,377,600) | (1,344,600) | (1,696,600) |
| Payments | | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | |
| Debt Elimination | | | | | | | | | | | | | | |
| Add Back Interest Portion | | (10,000) | (9,800) | (9,600) | (9,400) | (9,200) | (9,000) | (8,800) | (8,600) | (8,400) | (8,200) | (8,000) | (7,800) | |
| **EOM - WFB LOC** | | (1,665,600) | (1,634,400) | (1,603,000) | (1,571,400) | (1,539,600) | (1,507,600) | (1,475,400) | (1,443,000) | (1,410,400) | (1,377,600) | (1,344,600) | (1,311,400) | (1,311,400) |
| **BOM - Pre-Petition Unsecured Claims** | 40 | (7,100,000) | (7,100,000) | (7,100,000) | (7,025,000) | (7,025,000) | (6,820,000) | (6,820,000) | (6,820,000) | (6,820,000) | (6,439,200) | (6,439,200) | (6,439,200) | (7,100,000) |
| Payments | | | | (75,000) | | (204,800) | | | | (381,000) | | | (452,200) | |
| **EOM - Pre-Petition Unsecured Claims** | | (7,100,000) | (7,100,000) | (7,025,000) | (7,025,000) | (6,820,000) | (6,820,000) | (6,820,000) | (6,820,000) | (6,439,200) | (6,439,200) | (6,439,200) | (5,987,000) | (5,987,000) |
| **BOM - Pre-Petition Priority Tax Claims** | 41 | (56,760) | (55,340) | (53,910) | (52,470) | (51,020) | (49,560) | (48,090) | (46,610) | (45,120) | (43,620) | (42,110) | (40,590) | (56,760) |
| Payments | | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | |
| Add Back Interest Portion | | (380) | (370) | (360) | (350) | (340) | (330) | (320) | (310) | (300) | (290) | (280) | (270) | |
| **EOM - Pre-Petition Priority Tax Claims** | | (55,340) | (53,910) | (52,470) | (51,020) | (49,560) | (48,090) | (46,610) | (45,120) | (43,620) | (42,110) | (40,590) | (39,060) | (39,060) |
| **BOM - Secured Notes Payable - Salinas** | | (33,800) | (31,500) | (29,200) | (26,900) | (24,600) | (23,370) | (22,140) | (20,910) | (19,680) | (18,450) | (17,220) | (16,740) | (16,740) |
| 2006 Ford F150 | | | | | | | | | | | | | | |
| 2006 Ford Mustang | 35 | | | | | | | | | | | | | |
| Cisco Phone System | 16 | | | | | | | | | | | | | |
| 2007 GM Yukon | | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | | | | | | | | |
| 2008 Ford Expedition | | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | |
| 2008 Ford Explorer | 37 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | |
| 2008 Ford Explorer | 19 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | |
| Payments | | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | |
| Debt Elimination | | | | | | | | | | | | | | |
| Add Back Interest Portion | | (50) | (50) | (50) | (50) | (50) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | |
| **EOM - Secured Notes Payable - Salinas** | | (31,500) | (29,200) | (26,900) | (24,600) | (23,370) | (22,140) | (20,910) | (19,680) | (18,450) | (17,220) | (16,740) | (16,260) | (16,260) |
| **BOM - Secured Notes Payable - Laredo** | | (967,430) | (962,330) | (957,130) | (951,830) | (946,430) | (940,930) | (935,330) | (929,630) | (923,830) | (917,930) | (911,930) | (905,830) | (905,830) |
| Scissorlift & Sweeper | | | | | | | | | | | | | | |
| Forklifts | 19 | | | | | | | | | | | | | |
| Laredo House - 1st | 36 | | | | | | | | | | | | | |
| Laredo House - 2nd | | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | | | | | | | | |
| Laredo Warehouse - B of A | 37 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | |
| Laredo Warehouse - SBA | | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | |
| Laredo Ice Maker/Injector | 19 | | | | | | | | | | | | | |
| Payments | | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | |
| Debt Elimination | | | | | | | | | | | | | | |
| Add Back Interest Portion | 37 | (6,600) | (6,500) | (6,400) | (6,300) | (6,200) | (6,100) | (6,000) | (5,900) | (5,800) | (5,700) | (5,600) | (5,500) | |
| **EOM - Secured Notes Payable - Laredo** | | (962,330) | (957,130) | (951,830) | (946,430) | (940,930) | (935,330) | (929,630) | (923,830) | (917,930) | (911,930) | (905,830) | (899,630) | (899,630) |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

# Cimino Brothers Produce, Debtor
## Forecasted Cash Flows from Operations
### For the Five Fiscal Years Ending August, 31 2015

| Line Item | REF | Forecasted Sep-11 | Forecasted Oct-11 | Forecasted Nov-11 | Forecasted Dec-11 | Forecasted Jan-12 | Forecasted Feb-12 | Forecasted Mar-12 | Forecasted Apr-12 | Forecasted May-12 | Forecasted Jun-12 | Forecasted Jul-12 | Forecasted Aug-12 | Forecasted FY 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BOM - Note Payable - Vince Cimino | 38 | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | |
| Payments | | - | - | - | - | - | - | - | - | - | - | - | - | |
| Debt Elimination | | - | - | - | - | - | - | - | - | - | - | - | - | |
| EOM - Note Payable - Vince Cimino | | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | |
| BOM - DIP Legal Fees Payable | 28 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | |
| DIP Legal Fees Incurred | | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Legal Retainer Applied | | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Legal Fees Paid | | - | - | - | - | - | - | - | - | - | - | - | - | |
| EOM - DIP Legal Fees Payable | | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | |
| BOM - DIP Accounting Fees Payable | 29 | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Accounting Fees Incurred | | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Accounting Fees Paid | | - | - | - | - | - | - | - | - | - | - | - | - | |
| EMO - DIP Accounting Fees Payable | | - | - | - | - | - | - | - | - | - | - | - | - | |

### Forecasted Sources and Uses of Cash

| Line Item | REF | Forecasted Sep-11 | Forecasted Oct-11 | Forecasted Nov-11 | Forecasted Dec-11 | Forecasted Jan-12 | Forecasted Feb-12 | Forecasted Mar-12 | Forecasted Apr-12 | Forecasted May-12 | Forecasted Jun-12 | Forecasted Jul-12 | Forecasted Aug-12 | Forecasted FY 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BOM - Cash | 40 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | |
| **Cash from Operations** | | | | | | | | | | | | | | |
| Collections on A/R | 33 | 855,760 | 962,380 | 1,294,600 | 1,583,880 | 1,917,620 | 2,247,140 | 2,114,960 | 1,847,700 | 1,386,800 | 1,338,720 | 1,194,660 | 982,820 | |
| Total Cash from Operations | | 855,760 | 962,380 | 1,294,600 | 1,583,880 | 1,917,620 | 2,247,140 | 2,114,960 | 1,847,700 | 1,386,800 | 1,338,720 | 1,194,660 | 982,820 | |
| **Cash Used in Operations** | | | | | | | | | | | | | | |
| Payment of Operating Expenses - Salinas | 12 | (102,730) | (104,630) | (105,930) | (107,630) | (109,330) | (108,030) | (106,730) | (104,130) | (104,530) | (103,530) | (102,430) | (102,130) | |
| Payment of Operating Expenses - Laredo | 17 | (48,120) | (48,120) | (48,120) | (48,120) | (48,120) | (48,120) | (48,120) | (48,120) | (48,120) | (48,120) | (48,120) | (48,120) | |
| Payment of A/P | 8 | (693,000) | (703,200) | (936,800) | (1,310,200) | (1,497,000) | (1,636,700) | (1,730,700) | (1,636,700) | (824,500) | (1,006,700) | (886,100) | (749,900) | |
| Total Cash Used in Operations | | (843,850) | (855,950) | (1,090,850) | (1,465,950) | (1,654,450) | (1,792,850) | (1,885,550) | (1,788,950) | (977,150) | (1,158,350) | (1,036,650) | (900,150) | |
| Cash Available from Operations | | 761,910 | 856,430 | 953,750 | 867,930 | 1,013,170 | 1,204,290 | 979,410 | 808,750 | 1,159,650 | 930,370 | 908,010 | 832,670 | |
| **Other Sources of Cash** | | | | | | | | | | | | | | |
| Collections from Cimino Mexico | 34 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| Net Proceeds from Sale of Laredo House | 36 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Net Proceeds from Sale of Company Vehicles | 35 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Capital Contribution from Partners | 40 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Total Other Sources of Cash | | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| **Other Uses of Cash** | | | | | | | | | | | | | | |
| Payments on N/P - Salinas | | (2,350) | (2,350) | (2,350) | (2,350) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (500) | (500) | |
| Payments on N/P - Laredo | 32 | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | |
| Payments to WFB | 41 | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | |
| Payments to Priority Tax Creditors | 16 | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | |
| Expenditures for Phone and Network System | 28 | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Legal Fees Paid | 29 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Laredo Litigation Fees Paid | | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | - | - | - | - | |
| DIP Accounting Fees Paid | 30 | - | - | - | - | - | - | - | - | - | - | - | - | |
| OUST Fees Paid | 39 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Income Taxes Paid | | (70,000) | - | - | - | - | - | - | - | - | (70,000) | - | - | |
| Lease assumption cure payments | | - | - | - | - | - | - | - | - | - | - | - | - | |
| Secured creditor catch-up payments | | - | - | - | - | - | - | - | - | - | - | - | - | |
| Payments on Pre-Petition Unsecured Claims | 40 | - | - | (75,000) | - | - | (204,800) | - | - | (381,000) | - | - | (452,200) | |
| Total Other Uses of Cash | | (136,850) | (66,850) | (141,850) | (66,850) | (65,750) | (270,550) | (65,750) | (65,750) | (436,750) | (125,750) | (55,000) | (507,200) | |
| EOM Cash | 40 | 629,060 | 793,580 | 815,900 | 805,080 | 951,420 | 937,740 | 917,660 | 747,000 | 726,900 | 808,620 | 857,010 | 329,470 | |
| Cash Reserve for Operations | 40 | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | |
| Cash Available for Debt Service | | (120,940) | 43,580 | 65,900 | 55,080 | 201,420 | 187,740 | 167,660 | (3,000) | (23,100) | 58,620 | 107,010 | (420,530) | |
| Cumulative Cash Available for Debt Service | 40 | 43,540 | 87,120 | 153,020 | 208,100 | 409,520 | 597,260 | 764,920 | 761,920 | 738,820 | 797,440 | 904,450 | 483,920 | |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

*Forecasted Statements of Operations*

| | REF | Forecasted Sep-12 | Forecasted Oct-12 | Forecasted Nov-12 | Forecasted Dec-12 | Forecasted Jan-13 | Forecasted Feb-13 | Forecasted Mar-13 | Forecasted Apr-13 | Forecasted May-13 | Forecasted Jun-13 | Forecasted Jul-13 | Forecasted Aug-13 | Forecasted FY 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | | | | | | | |
| Number of Cartons Sold | 4 | 77,200 | 103,000 | 144,200 | 164,800 | 180,300 | 190,600 | 180,300 | 90,600 | 110,700 | 97,400 | 82,400 | 77,200 | 1,498,700 |
| Market Price per Carton - FOB | 5 | 11.71 | 12.19 | 10.16 | 10.89 | 11.69 | 9.62 | 8.70 | 13.10 | 11.05 | 10.68 | 10.21 | 10.12 | 10.85 |
| Net Commodity Sales | 6 | 904,400 | 1,255,300 | 1,465,000 | 1,795,500 | 2,108,300 | 1,834,300 | 1,568,500 | 1,187,000 | 1,223,500 | 1,040,700 | 841,500 | 781,100 | 16,005,100 |
| Freight Sales | 7 | 124,300 | 165,800 | 232,200 | 265,300 | 290,300 | 306,900 | 290,300 | 145,900 | 178,200 | 156,800 | 132,700 | 124,300 | 2,413,000 |
| **Total Sales** | | **1,028,700** | **1,421,100** | **1,697,200** | **2,060,800** | **2,398,600** | **2,141,200** | **1,858,800** | **1,332,900** | **1,401,700** | **1,197,500** | **974,200** | **905,400** | **18,418,100** |
| **Costs of Goods Sold** | | | | | | | | | | | | | | |
| Cartons - Interco Mexico | 8 | 101,900 | 136,000 | 190,300 | 217,500 | 238,000 | 251,600 | 238,000 | 119,600 | 146,100 | 128,600 | 108,800 | 101,900 | 1,978,300 |
| Cooling Fee - Cimino Mexico | | 84,900 | 113,300 | 158,600 | 181,300 | 198,300 | 209,700 | 198,300 | 99,700 | 121,800 | 107,100 | 90,600 | 84,900 | 1,648,500 |
| Handling Fee - Cimino Mexico | | 38,600 | 51,500 | 72,100 | 82,400 | 90,200 | 95,300 | 90,200 | 45,300 | 55,400 | 48,700 | 41,200 | 38,600 | 749,500 |
| Product | | 295,700 | 394,500 | 552,300 | 631,200 | 690,500 | 730,000 | 690,500 | 347,000 | 424,000 | 373,000 | 315,600 | 295,700 | 5,740,000 |
| Commodities Purchased | 9 | 521,100 | 695,300 | 973,300 | 1,112,400 | 1,217,000 | 1,286,600 | 1,217,000 | 611,600 | 747,300 | 657,400 | 556,200 | 521,100 | 10,116,300 |
| Freight | 9 | 111,900 | 149,200 | 209,000 | 238,800 | 261,300 | 276,200 | 261,300 | 131,300 | 160,400 | 141,100 | 119,400 | 111,900 | 2,171,800 |
| Freight Mexico | 8 | 71,000 | 94,800 | 132,700 | 151,600 | 165,900 | 175,400 | 165,900 | 83,400 | 101,800 | 89,600 | 75,800 | 71,000 | 1,378,900 |
| Customs And Duties | | 6,200 | 8,200 | 11,500 | 13,200 | 14,400 | 15,200 | 14,400 | 7,200 | 8,900 | 7,800 | 6,600 | 6,200 | 119,800 |
| Bags - Cooler | 10 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| **Total Costs of Goods Sold** | | **713,200** | **950,500** | **1,329,500** | **1,519,000** | **1,661,600** | **1,756,400** | **1,661,600** | **835,500** | **1,021,400** | **898,900** | **761,000** | **713,200** | **13,822,800** |
| **Gross Profit** | 11 | **315,500** | **470,600** | **367,700** | **541,800** | **737,000** | **384,800** | **197,200** | **496,400** | **380,300** | **298,600** | **213,200** | **192,200** | **4,595,300** |
| Gross Margin | | 30.7% | 33.1% | 21.7% | 26.3% | 30.7% | 18.0% | 10.6% | 37.2% | 27.1% | 24.9% | 21.9% | 21.2% | 24.9% |
| Gross Profit per Carton | | 4.09 | 4.57 | 2.55 | 3.29 | 4.09 | 2.02 | 1.09 | 5.48 | 3.44 | 3.07 | 2.59 | 2.49 | 3.23 |
| **Operating Expenses - Salinas** | 12 | | | | | | | | | | | | | |
| Alarm | | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 5,040 |
| Automobile | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Bank Charges | | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 12,480 |
| Bad Debt Expense | 13 | 5,100 | 7,100 | 8,500 | 10,300 | 12,000 | 10,700 | 9,300 | 6,700 | 7,000 | 6,000 | 4,900 | 4,500 | 92,100 |
| Dues & Subscriptions | | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 21,960 |
| Insurance - Health | | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 62,400 |
| Insurance - Liability | | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 28,800 |
| Insurance - Workers' Compensation | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| Janitorial Service | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| Licenses & Fees | | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 7,440 |
| Miscellaneous | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| Office Rent | 14 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 62,400 |
| Office Supplies | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| Postage | | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 3,840 |
| Professional Fees (Non-Bankruptcy) | | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 37,440 |
| Salaries & Wages | 15 | 67,630 | 67,630 | 67,630 | 67,630 | 67,630 | 67,630 | 67,630 | 67,630 | 67,630 | 67,630 | 67,630 | 67,630 | 811,560 |
| Taxes - Payroll | 15 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 49,920 |
| Telephone & Internet | 16 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 49,920 |
| Travel & Promotion | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| Utilities | | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 10,080 |
| **Total Operating Expenses - Salinas** | | **104,790** | **106,790** | **108,190** | **109,990** | **111,690** | **110,390** | **108,990** | **106,390** | **106,690** | **105,690** | **104,590** | **104,190** | **1,288,380** |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 126 of 171

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

| | REF | Forecasted Sep-12 | Forecasted Oct-12 | Forecasted Nov-12 | Forecasted Dec-12 | Forecasted Jan-13 | Forecasted Feb-13 | Forecasted Mar-13 | Forecasted Apr-13 | Forecasted May-13 | Forecasted Jun-13 | Forecasted Jul-13 | Forecasted Aug-13 | Forecasted FY 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Expenses - Laredo** | 17 | | | | | | | | | | | | | |
| Alarm | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Automobile | | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 3,840 |
| Cooler Supplies | 18 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 18,720 |
| Dues & Subscriptions | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Equipment Rental | 19 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 37,440 |
| Inspections | 20 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 23,760 |
| Insurance - Health | | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 3,840 |
| Insurance - Liability | | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 31,200 |
| Insurance - Workers' Compensation | 22 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 12,480 |
| Janitorial | | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 2,040 |
| Licenses & Fees | | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 10,080 |
| Loan Fees | | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 8,640 |
| Miscellaneous | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| Office Supplies | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Postage | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Repairs & Maintenance | | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 4,160 | 49,920 |
| Repairs & Maintenance - House | 21 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Salaries & Wages | 22 | 18,730 | 18,730 | 18,730 | 18,730 | 18,730 | 18,730 | 18,730 | 18,730 | 18,730 | 18,730 | 18,730 | 18,730 | 224,760 |
| Taxes - Payroll | 23 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 1,830 | 21,960 |
| Taxes - Personal Property | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| Taxes - Real Property | 24 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 10,080 |
| Telephone & Internet | 16 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 12,480 |
| Travel & Promotion | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| Utilities | 25 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 93,600 |
| Utilities - House | 26 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Expenses - Laredo** | 27 | 49,080 | 49,080 | 49,080 | 49,080 | 49,080 | 49,080 | 49,080 | 49,080 | 49,080 | 49,080 | 49,080 | 49,080 | 588,960 |
| | | | | | | | | | | | | | | |
| **EBITDA** | | 161,630 | 314,730 | 210,430 | 382,730 | 576,230 | 225,330 | 39,130 | 340,930 | 224,530 | 143,830 | 59,530 | 38,930 | 2,717,960 |
| | | | | | | | | | | | | | | |
| **Administrative Expenses** | | | | | | | | | | | | | | |
| DIP Legal Fees | 28 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Laredo Litigation Fees | 29 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DIP Accounting Fees | 30 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| OUST Fees | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Administrative Expenses** | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | | |
| **Other Expenses** | | | | | | | | | | | | | | |
| Depreciation - Salinas | 31 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Depreciation - Laredo | | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 144,000 |
| Interest Expense - Salinas | 32 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| Interest Expense - Laredo | | 5,400 | 5,300 | 5,200 | 5,100 | 5,000 | 4,900 | 4,800 | 4,700 | 4,600 | 4,500 | 4,400 | 4,300 | 58,200 |
| Interest Expense - WFB | | 7,600 | 7,400 | 7,200 | 7,000 | 6,800 | 6,600 | 6,400 | 6,200 | 6,000 | 5,800 | 5,600 | 5,400 | 78,000 |
| Interest Expense - priority claims | | 260 | 250 | 240 | 230 | 220 | 210 | 200 | 190 | 180 | 170 | 150 | 140 | 2,640 |
| **Total Other Expenses** | | 32,020 | 31,720 | 31,420 | 31,120 | 30,820 | 30,520 | 30,220 | 29,920 | 29,620 | 29,320 | 29,020 | 28,720 | 364,440 |
| | | | | | | | | | | | | | | |
| **Net Income (Loss)** | | 129,610 | 283,010 | 179,010 | 351,610 | 545,410 | 194,810 | 8,910 | 311,010 | 194,910 | 114,510 | 30,510 | 10,210 | 2,353,520 |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 127 of 171

# Cimino Brothers Produce, Debtor
## Forecasted Cash Flows from Operations
### For the Five Fiscal Years Ending August, 31 2015

*Forecasted Accruals*

| | REF | Forecasted Sep-12 | Forecasted Oct-12 | Forecasted Nov-12 | Forecasted Dec-12 | Forecasted Jan-13 | Forecasted Feb-13 | Forecasted Mar-13 | Forecasted Apr-13 | Forecasted May-13 | Forecasted Jun-13 | Forecasted Jul-13 | Forecasted Aug-13 | Forecasted FY 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BOM - A/R | 33 | 1,061,640 | 1,203,440 | 1,626,840 | 1,981,420 | 2,400,240 | 2,810,760 | 2,620,920 | 2,287,040 | 1,704,660 | 1,668,280 | 1,477,840 | 1,213,700 | 1,061,640 |
| Sales | | 1,028,700 | 1,421,100 | 1,697,200 | 2,060,800 | 2,398,600 | 2,141,200 | 1,858,800 | 1,332,900 | 1,401,700 | 1,197,500 | 974,200 | 905,400 | 18,418,100 |
| Collections | | (886,900) | (997,700) | (1,342,620) | (1,641,980) | (1,988,080) | (2,331,040) | (2,192,680) | (1,915,280) | (1,438,080) | (1,387,940) | (1,238,340) | (1,018,860) | (18,379,500) |
| **EOM - A/R** | | **1,203,440** | **1,626,840** | **1,981,420** | **2,400,240** | **2,810,760** | **2,620,920** | **2,287,040** | **1,704,660** | **1,668,280** | **1,477,840** | **1,213,700** | **1,100,240** | **1,100,240** |
| BOM - Due from Cimino Mexico | 34 | 796,000 | 792,000 | 788,000 | 784,000 | 780,000 | 776,000 | 772,000 | 768,000 | 764,000 | 760,000 | 756,000 | 752,000 | 796,000 |
| Collections from Cimino Mexico | | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (48,000) |
| Payments | | | | | | | | | | | | | | |
| **EOM - Due from Cimino Mexico** | | **792,000** | **788,000** | **784,000** | **780,000** | **776,000** | **772,000** | **768,000** | **764,000** | **760,000** | **756,000** | **752,000** | **748,000** | **748,000** |
| BOM - Post Petition A/P | 8 | (713,200) | (713,200) | (950,500) | (1,329,500) | (1,519,000) | (1,661,600) | (1,756,400) | (1,661,600) | (836,500) | (1,021,400) | (898,900) | (761,000) | (713,200) |
| Costs of Goods Sold | | (713,200) | (950,500) | (1,329,500) | (1,519,000) | (1,661,600) | (1,756,400) | (1,661,600) | (836,500) | (1,021,400) | (898,900) | (761,000) | (713,000) | (13,822,600) |
| Payments | | 713,200 | 713,200 | 950,500 | 1,329,500 | 1,519,000 | 1,661,600 | 1,756,400 | 1,661,600 | 836,500 | 1,021,400 | 898,900 | 761,000 | 13,822,600 |
| **EOM - Post Petition A/P** | | **(713,200)** | **(950,500)** | **(1,329,500)** | **(1,519,000)** | **(1,661,600)** | **(1,756,400)** | **(1,661,600)** | **(836,500)** | **(1,021,400)** | **(898,900)** | **(761,000)** | **(713,000)** | **(713,000)** |
| BOM - WFB LOC | 32 | (1,311,400) | (1,278,000) | (1,244,000) | (1,210,600) | (1,176,600) | (1,142,400) | (1,108,000) | (1,073,400) | (1,038,600) | (1,003,600) | (968,400) | (933,000) | (1,311,400) |
| Payments | | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 492,000 |
| Debt Elimination | | | | | | | | | | | | | | |
| Add Back Interest Portion | | (7,500) | (7,400) | (7,200) | (7,200) | (6,800) | (6,500) | (6,200) | (6,200) | (6,000) | (5,800) | (5,500) | (5,400) | (77,700) |
| **EOM - WFB LOC** | | **(1,278,000)** | **(1,244,000)** | **(1,210,600)** | **(1,176,600)** | **(1,142,400)** | **(1,108,000)** | **(1,073,400)** | **(1,038,600)** | **(1,003,600)** | **(968,400)** | **(933,000)** | **(897,400)** | **(897,400)** |
| BOM - Pre-Petition Unsecured Claims | 40 | (5,587,000) | (5,587,000) | (5,987,000) | (5,807,600) | (5,807,600) | (5,807,600) | (5,446,100) | (5,446,100) | (5,446,100) | (4,898,700) | (4,898,700) | (4,898,700) | (5,587,000) |
| Payments | | | | 179,000 | | | 361,500 | | | 547,400 | | | 528,100 | 1,616,000 |
| **EOM - Pre-Petition Unsecured Claims** | | **(5,587,000)** | **(5,987,000)** | **(5,807,600)** | **(5,807,600)** | **(5,807,600)** | **(5,446,100)** | **(5,446,100)** | **(5,446,100)** | **(4,898,700)** | **(4,898,700)** | **(4,898,700)** | **(4,370,600)** | **(4,370,600)** |
| BOM - Pre-Petition Priority Tax Claims | 41 | (39,060) | (37,520) | (35,970) | (34,410) | (32,840) | (31,260) | (29,670) | (28,070) | (26,460) | (24,840) | (23,210) | (21,560) | (39,060) |
| Payments | | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 21,600 |
| Add Back Interest Portion | | (260) | (250) | (240) | (230) | (220) | (210) | (200) | (190) | (180) | (170) | (150) | (140) | (2,440) |
| **EOM - Pre-Petition Priority Tax Claims** | | **(37,520)** | **(35,970)** | **(34,410)** | **(32,840)** | **(31,260)** | **(29,670)** | **(28,070)** | **(26,460)** | **(24,840)** | **(23,210)** | **(21,560)** | **(19,900)** | **(19,900)** |
| BOM - Secured Notes Payable - Salinas | | (16,260) | (15,780) | (15,300) | (14,820) | (14,340) | (13,860) | (13,380) | (12,900) | (12,420) | (11,940) | (11,460) | (10,980) | (16,260) |
| 2006 Ford F150 | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2006 Ford Mustang | 35 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Cisco Phone System | 16 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2007 GM Yukon | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2008 Ford Expedition | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2008 Ford Explorer | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2008 Ford Explorer | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payments | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Debt Elimination | | | | | | | | | | | | | | |
| Add Back Interest Portion | | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (240) |
| **EOM - Secured Notes Payable - Salinas** | | **(15,780)** | **(15,300)** | **(14,820)** | **(14,340)** | **(13,860)** | **(13,380)** | **(12,900)** | **(12,420)** | **(11,940)** | **(11,460)** | **(10,980)** | **(10,500)** | **(10,500)** |
| BOM - Secured Notes Payable - Laredo | | (899,630) | (893,330) | (886,930) | (880,430) | (873,830) | (867,130) | (860,330) | (853,430) | (846,430) | (839,330) | (832,130) | (824,830) | (899,630) |
| Scissorlift & Sweeper | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Forklifts | 19 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 44,400 |
| Laredo House - 1st | 36 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Laredo House - 2nd | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Laredo Warehouse - B of A | 37 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 96,000 |
| Laredo Warehouse - SBA | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Laredo Ice Maker/Injector | 19 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payments | | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 140,400 |
| Debt Elimination | | | | | | | | | | | | | | |
| Add Back Interest Portion | | (5,400) | (5,300) | (5,200) | (5,100) | (5,000) | (4,900) | (4,800) | (4,700) | (4,600) | (4,500) | (4,400) | (4,300) | (58,200) |
| **EOM - Secured Notes Payable - Laredo** | 37 | **(893,330)** | **(886,930)** | **(880,430)** | **(873,830)** | **(867,130)** | **(860,330)** | **(853,430)** | **(846,430)** | **(839,330)** | **(832,130)** | **(824,830)** | **(817,430)** | **(817,430)** |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

| | REF | Forecasted Sep-12 | Forecasted Oct-12 | Forecasted Nov-12 | Forecasted Dec-12 | Forecasted Jan-13 | Forecasted Feb-13 | Forecasted Mar-13 | Forecasted Apr-13 | Forecasted May-13 | Forecasted Jun-13 | Forecasted Jul-13 | Forecasted Aug-13 | Forecasted FY 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BOM - Note Payable - Vince Cimino** | 38 | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | |
| Payments | | - | - | - | - | - | - | - | - | - | - | - | - | |
| Debt Elimination | | - | - | - | - | - | - | - | - | - | - | - | - | |
| **EOM - Note Payable - Vince Cimino** | | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | |
| **BOM - DIP Legal Fees Payable** | 28 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | |
| DIP Legal Fees Incurred | | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Legal Retainer Applied | | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Legal Fees Paid | | - | - | - | - | - | - | - | - | - | - | - | - | |
| **EOM - DIP Legal Fees Payable** | | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | |
| **BOM - DIP Accounting Fees Payable** | 29 | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Accounting Fees Incurred | | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Accounting Fees Paid | | - | - | - | - | - | - | - | - | - | - | - | - | |
| **EMO - DIP Accounting Fees Payable** | | - | - | - | - | - | - | - | - | - | - | - | - | |
| *Forecasted Sources and Uses of Cash* | | | | | | | | | | | | | | |
| **BOM - Cash** | 40 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | |
| **Cash from Operations** | | | | | | | | | | | | | | |
| Collections on A/R | 33 | 886,900 | 997,700 | 1,342,620 | 1,641,980 | 1,988,080 | 2,331,040 | 2,192,680 | 1,915,280 | 1,438,080 | 1,387,940 | 1,238,340 | 1,018,860 | |
| **Total Cash from Operations** | | 886,900 | 997,700 | 1,342,620 | 1,641,980 | 1,988,080 | 2,331,040 | 2,192,680 | 1,915,280 | 1,438,080 | 1,387,940 | 1,238,340 | 1,018,860 | |
| **Cash Used in Operations** | | | | | | | | | | | | | | |
| Payment of Operating Expenses - Salinas | 12 | (104,790) | (106,790) | (108,190) | (109,990) | (111,690) | (110,390) | (108,990) | (106,390) | (106,690) | (105,690) | (104,590) | (104,190) | |
| Payment of Operating Expenses - Laredo | 17 | (49,080) | (49,080) | (49,080) | (49,080) | (49,080) | (49,080) | (49,080) | (49,080) | (49,080) | (49,080) | (49,080) | (49,080) | |
| Payment of A/P | 8 | (703,200) | (713,200) | (950,500) | (1,329,500) | (1,519,000) | (1,661,600) | (1,756,000) | (1,661,600) | (836,500) | (1,021,400) | (898,900) | (761,000) | |
| **Total Cash Used in Operations** | | (857,070) | (869,070) | (1,107,770) | (1,488,570) | (1,679,770) | (1,821,070) | (1,914,070) | (1,817,070) | (992,270) | (1,176,170) | (1,052,570) | (914,270) | |
| **Cash Available from Operations** | | 779,830 | 878,630 | 984,850 | 903,410 | 1,058,310 | 1,259,970 | 1,028,210 | 848,210 | 1,195,810 | 961,770 | 935,770 | 854,590 | |
| **Other Sources of Cash** | | | | | | | | | | | | | | |
| Collections from Cimino Mexico | 34 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| Net Proceeds from Sale of Laredo House | 36 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Net Proceeds from Sale of Company Vehicles | 35 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Capital Contribution from Partners | 40 | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Total Other Sources of Cash** | 40 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| **Other Uses of Cash** | | | | | | | | | | | | | | |
| Payments on N/P - Salinas | | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | |
| Payments on N/P - Laredo | | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | |
| Payments to WFB | 32 | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | |
| Payments to Priority Tax Creditors | 41 | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | |
| Expenditures for Phone and Network System | 16 | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Legal Fees Paid | 28 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Laredo Litigation Fees Paid | 29 | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Accounting Fees Paid | | - | - | - | - | - | - | - | - | - | - | - | - | |
| OUST Fees Paid | 30 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Income Taxes Paid | 39 | (181,550) | - | - | - | - | - | - | - | - | (181,550) | - | - | |
| Lease assumption cure payments | | - | - | (179,400) | - | - | (361,500) | - | - | - | - | - | - | |
| Secured creditor catch-up payments | | - | - | - | - | - | - | - | - | (547,400) | - | - | - | |
| Payments on Pre-Petition Unsecured Claims | 40 | - | - | - | - | - | - | - | - | - | - | - | (528,100) | |
| **Total Other Uses of Cash** | 40 | (236,550) | (55,000) | (234,400) | (55,000) | (55,000) | (416,500) | (55,000) | (55,000) | (602,400) | (236,550) | (55,000) | (583,100) | |
| **EOM Cash** | 40 | 547,280 | 827,630 | 754,450 | 852,410 | 1,007,310 | 847,470 | 977,210 | 797,210 | 597,410 | 729,220 | 884,770 | 275,490 | |
| Cash Reserve for Operations | 40 | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | |
| **Cash Available for Debt Service** | | (202,720) | 77,630 | 4,450 | 102,410 | 257,310 | 97,470 | 227,210 | 47,210 | (152,590) | (20,780) | 134,770 | (474,510) | |
| **Cumulative Cash Available for Debt Service** | | 281,200 | 358,830 | 363,280 | 465,690 | 723,000 | 820,470 | 1,047,680 | 1,094,890 | 942,300 | 921,520 | 1,056,290 | 581,780 | |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

*Forecasted Statements of Operations*

| | REF | Forecasted Sep-13 | Forecasted Oct-13 | Forecasted Nov-13 | Forecasted Dec-13 | Forecasted Jan-14 | Forecasted Feb-14 | Forecasted Mar-14 | Forecasted Apr-14 | Forecasted May-14 | Forecasted Jun-14 | Forecasted Jul-14 | Forecasted Aug-14 | Forecasted FY 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | | | | | | | |
| Number of Cartons Sold | 4 | 78,400 | 104,500 | 146,400 | 167,300 | 183,000 | 193,500 | 183,000 | 92,000 | 112,400 | 98,900 | 83,600 | 78,400 | 1,521,400 |
| Market Price per Carton - FOB | 5 | 12.01 | 12.49 | 10.41 | 11.17 | 11.99 | 9.86 | 8.92 | 13.43 | 11.33 | 10.95 | 10.47 | 10.37 | 11.12 |
| Net Commodity Sales | 6 | 941,400 | 1,305,400 | 1,524,500 | 1,868,300 | 2,193,400 | 1,908,700 | 1,631,700 | 1,235,500 | 1,273,400 | 1,083,200 | 875,100 | 813,000 | 16,653,600 |
| Freight Sales | 7 | 126,200 | 168,200 | 235,700 | 269,400 | 294,600 | 311,500 | 294,600 | 148,100 | 181,000 | 159,200 | 134,600 | 126,200 | 2,449,300 |
| **Total Sales** | | 1,067,600 | 1,473,600 | 1,760,200 | 2,137,700 | 2,488,000 | 2,220,200 | 1,926,300 | 1,383,600 | 1,454,400 | 1,242,400 | 1,009,700 | 939,200 | 19,102,900 |
| **Costs of Goods Sold** | | | | | | | | | | | | | | |
| Cartons - Interco Mexico | 8 | 103,500 | 137,900 | 193,200 | 220,800 | 241,600 | 255,400 | 241,600 | 121,400 | 148,400 | 130,500 | 110,400 | 103,500 | 2,008,200 |
| Cooling Fee - Cimino Mexico | | 86,200 | 115,000 | 161,000 | 184,000 | 201,300 | 212,900 | 201,300 | 101,200 | 123,600 | 108,800 | 86,200 | 86,200 | 1,673,500 |
| Handling Fee - Cimino Mexico | | 39,200 | 52,300 | 73,200 | 83,700 | 91,500 | 96,800 | 91,500 | 46,000 | 56,200 | 49,500 | 41,800 | 39,200 | 760,900 |
| Product | | 300,300 | 400,200 | 560,700 | 640,800 | 700,900 | 741,100 | 700,900 | 352,400 | 430,500 | 378,800 | 320,200 | 300,300 | 5,827,100 |
| Commodities Purchased | 9 | 529,200 | 705,400 | 988,100 | 1,129,300 | 1,235,300 | 1,306,200 | 1,235,300 | 621,000 | 758,700 | 667,600 | 564,000 | 529,200 | 10,269,700 |
| Freight | | 113,600 | 151,400 | 212,100 | 242,500 | 265,100 | 280,400 | 265,100 | 133,300 | 162,900 | 143,300 | 121,100 | 113,600 | 2,204,400 |
| Freight Mexico | 8 | 72,100 | 96,100 | 134,700 | 153,900 | 168,400 | 178,000 | 168,400 | 84,600 | 103,400 | 91,000 | 76,900 | 72,100 | 1,399,600 |
| Customs And Duties | 8 | 6,300 | 8,400 | 11,700 | 13,400 | 14,600 | 15,500 | 14,600 | 7,400 | 9,000 | 7,900 | 6,700 | 6,300 | 121,800 |
| Bags - Cooler | 10 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| **Total Costs of Goods Sold** | | 724,200 | 964,300 | 1,349,600 | 1,542,100 | 1,686,400 | 1,783,100 | 1,686,400 | 849,300 | 1,037,000 | 912,800 | 772,100 | 724,200 | 14,031,500 |
| **Gross Profit** | 11 | 343,400 | 509,300 | 410,600 | 595,600 | 801,600 | 437,100 | 239,900 | 534,300 | 417,400 | 329,600 | 237,600 | 215,000 | 5,071,400 |
| Gross Margin | | 32.2% | 34.6% | 23.3% | 27.9% | 32.2% | 19.7% | 12.5% | 38.6% | 28.7% | 26.5% | 23.5% | 22.9% | 26.5% |
| Gross Profit per Carton | | 4.38 | 4.87 | 2.80 | 3.56 | 4.38 | 2.26 | 1.31 | 5.81 | 3.71 | 3.33 | 2.84 | 2.74 | 3.50 |
| **Operating Expenses - Salinas** | 12 | | | | | | | | | | | | | |
| Alarm | 13 | 430 | 430 | 430 | 430 | 430 | 430 | 430 | 430 | 430 | 430 | 430 | 430 | 5,160 |
| Automobile | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Bank Charges | | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 12,720 |
| Bad Debt Expense | 13 | 5,300 | 7,400 | 8,800 | 10,700 | 12,400 | 11,100 | 9,600 | 6,900 | 7,300 | 6,200 | 5,000 | 4,700 | 95,400 |
| Dues & Subscriptions | | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 22,440 |
| Insurance - Health | | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 63,600 |
| Insurance - Liability | | 2,450 | 2,450 | 2,450 | 2,450 | 2,450 | 2,450 | 2,450 | 2,450 | 2,450 | 2,450 | 2,450 | 2,450 | 29,400 |
| Insurance - Workers' Compensation | 14 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Janitorial Service | | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Licenses & Fees | | 630 | 630 | 630 | 630 | 630 | 630 | 630 | 630 | 630 | 630 | 630 | 630 | 7,560 |
| Miscellaneous | | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Office Rent | | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 5,300 | 63,600 |
| Office Supplies | | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Postage | | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 3,960 |
| Professional Fees (Non-Bankruptcy) | 15 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 38,160 |
| Salaries & Wages | 16 | 68,980 | 68,980 | 68,980 | 68,980 | 68,980 | 68,980 | 68,980 | 68,980 | 68,980 | 68,980 | 68,980 | 68,980 | 827,760 |
| Taxes - Payroll | | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 50,880 |
| Telephone & Internet | | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 50,880 |
| Travel & Promotion | | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Utilities | | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 10,320 |
| **Total Operating Expenses - Salinas** | | 106,970 | 109,070 | 110,470 | 112,370 | 114,070 | 112,770 | 111,270 | 108,570 | 108,970 | 107,870 | 106,670 | 106,370 | 1,315,440 |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 130 of 171

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

| | REF | Forecasted Sep-13 | Forecasted Oct-13 | Forecasted Nov-13 | Forecasted Dec-13 | Forecasted Jan-14 | Forecasted Feb-14 | Forecasted Mar-14 | Forecasted Apr-14 | Forecasted May-14 | Forecasted Jun-14 | Forecasted Jul-14 | Forecasted Aug-14 | Forecasted FY 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Expenses - Laredo** | 17 | | | | | | | | | | | | | |
| Alarm | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Automobile | | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 3,960 |
| Cooler Supplies | 18 | 1,590 | 1,590 | 1,590 | 1,590 | 1,590 | 1,590 | 1,590 | 1,590 | 1,590 | 1,590 | 1,590 | 1,590 | 19,080 |
| Dues & Subscriptions | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Equipment Rental | 19 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 3,180 | 38,160 |
| Inspections | 20 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 24,240 |
| Insurance - Health | | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 3,960 |
| Insurance - Liability | | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 31,800 |
| Insurance - Workers' Compensation | 22 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 12,720 |
| Janitorial | | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 2,040 |
| Licenses & Fees | | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 10,320 |
| Loan Fees | | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 8,760 |
| Miscellaneous | | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Office Supplies | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Postage | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Repairs & Maintenance | | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 50,880 |
| Repairs & Maintenance - House | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Salaries & Wages | 21 | 19,100 | 19,100 | 19,100 | 19,100 | 19,100 | 19,100 | 19,100 | 19,100 | 19,100 | 19,100 | 19,100 | 19,100 | 229,200 |
| Taxes - Payroll | 22→ | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 1,870 | 22,440 |
| Taxes - Personal Property | 23→ | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Taxes - Real Property | 24 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 10,320 |
| Telephone & Internet | 16 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 1,060 | 12,720 |
| Travel & Promotion | | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Utilities - WFB | 25 | 7,960 | 7,960 | 7,960 | 7,960 | 7,960 | 7,960 | 7,960 | 7,960 | 7,960 | 7,960 | 7,960 | 7,960 | 95,520 |
| Utilities - House | 26 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Expenses - Laredo** | 27 | 50,050 | 50,050 | 50,050 | 50,050 | 50,050 | 50,050 | 50,050 | 50,050 | 50,050 | 50,050 | 50,050 | 50,050 | 600,600 |
| | | | | | | | | | | | | | | |
| **EBITDA** | | 186,380 | 350,180 | 250,080 | 433,180 | 637,480 | 274,280 | 78,580 | 375,680 | 258,380 | 171,680 | 80,880 | 58,580 | 3,155,360 |
| | | | | | | | | | | | | | | |
| **Administrative Expenses** | | | | | | | | | | | | | | |
| DIP Legal Fees | 28 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Laredo Litigation Fees | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DIP Accounting Fees | 29 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| OUST Fees | 30 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Administrative Expenses** | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | | |
| **Other Expenses** | | | | | | | | | | | | | | |
| Depreciation - Salinas | 31 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Depreciation - Laredo | | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 144,000 |
| Interest Expense - Salinas | 32 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| Interest Expense - Laredo | | 4,200 | 4,100 | 4,000 | 3,900 | 3,800 | 3,700 | 3,600 | 3,500 | 3,400 | 3,300 | 3,200 | 3,100 | 43,800 |
| Interest Expense - WFB | | 5,200 | 5,000 | 4,800 | 4,600 | 4,400 | 4,200 | 4,000 | 3,800 | 3,600 | 3,400 | 3,200 | 3,000 | 49,200 |
| Interest Expense - priority claims | | 130 | 120 | 110 | 100 | 90 | 80 | 60 | 60 | 40 | 30 | 20 | 10 | 840 |
| **Total Other Expenses** | | 28,420 | 28,120 | 27,820 | 27,520 | 27,220 | 26,920 | 26,620 | 26,320 | 26,020 | 25,720 | 25,420 | 25,120 | 321,240 |
| | | | | | | | | | | | | | | |
| **Net Income (Loss)** | | 157,960 | 322,060 | 222,260 | 405,660 | 610,260 | 247,360 | 51,960 | 349,360 | 232,360 | 145,960 | 55,460 | 33,460 | 2,834,120 |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

*Forecasted Accruals*

| | REF | Forecasted Sep-13 | Forecasted Oct-13 | Forecasted Nov-13 | Forecasted Dec-13 | Forecasted Jan-14 | Forecasted Feb-14 | Forecasted Mar-14 | Forecasted Apr-14 | Forecasted May-14 | Forecasted Jun-14 | Forecasted Jul-14 | Forecasted Aug-14 | Forecasted FY 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BOM - A/R | 33 | 1,100,240 | 1,248,680 | 1,687,120 | 2,054,920 | 2,489,740 | 2,915,540 | 2,717,800 | 2,370,340 | 1,768,860 | 1,731,120 | 1,533,280 | 1,258,180 | 1,258,180 |
| Sales | | 1,067,600 | 1,473,600 | 1,760,200 | 2,137,700 | 2,488,000 | 2,220,200 | 1,926,300 | 1,383,600 | 1,454,400 | 1,242,400 | 1,009,700 | 939,200 | 939,200 |
| Collections | | (919,160) | (1,035,160) | (1,392,400) | (1,702,880) | (2,062,200) | (2,417,940) | (2,273,760) | (1,985,080) | (1,492,140) | (1,440,240) | (1,284,800) | (1,056,240) | (1,056,240) |
| EOM - A/R | | 1,248,680 | 1,687,120 | 2,054,920 | 2,489,740 | 2,915,540 | 2,717,800 | 2,370,340 | 1,768,860 | 1,731,120 | 1,533,280 | 1,258,180 | 1,141,140 | 1,141,140 |
| BOM - Due from Cimino Mexico | 34 | 748,000 | 744,000 | 740,000 | 736,000 | 732,000 | 728,000 | 724,000 | 720,000 | 716,000 | 712,000 | 708,000 | 704,000 | 704,000 |
| Collections from Cimino Mexico | | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) |
| Payments | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| EOM - Due from Cimino Mexico | | 744,000 | 740,000 | 736,000 | 732,000 | 728,000 | 724,000 | 720,000 | 716,000 | 712,000 | 708,000 | 704,000 | 700,000 | 700,000 |
| BOM - Post Petition A/P | 8 | (713,200) | (724,200) | (964,300) | (1,349,600) | (1,542,100) | (1,686,400) | (1,783,100) | (1,686,400) | (849,300) | (1,037,000) | (912,800) | (772,100) | (772,100) |
| Costs of Goods Sold | | (724,200) | (964,300) | (1,349,600) | (1,542,100) | (1,686,400) | (1,783,100) | (1,686,400) | (849,300) | (1,037,000) | (912,800) | (772,100) | (724,000) | (724,000) |
| Payments | | 713,200 | 724,200 | 964,300 | 1,349,600 | 1,542,100 | 1,686,400 | 1,783,100 | 1,686,400 | 849,300 | 1,037,000 | 912,800 | 772,100 | 772,100 |
| EOM - Post Petition A/P | | (724,200) | (964,300) | (1,349,600) | (1,542,100) | (1,686,400) | (1,783,100) | (1,686,400) | (849,300) | (1,037,000) | (912,800) | (772,100) | (724,000) | (724,000) |
| BOM - WFB LOC | 32 | (897,400) | (861,600) | (825,600) | (789,400) | (753,000) | (716,400) | (679,600) | (642,600) | (605,400) | (568,000) | (530,400) | (492,600) | (492,600) |
| Payments | | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 |
| Debt Elimination | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Add Back Interest Portion | | (5,200) | (5,000) | (4,800) | (4,600) | (4,400) | (4,200) | (4,000) | (3,800) | (3,600) | (3,400) | (3,200) | (3,000) | (3,000) |
| EOM - WFB LOC | | (861,600) | (825,600) | (789,400) | (753,000) | (716,400) | (679,600) | (642,600) | (605,400) | (568,000) | (530,400) | (492,600) | (454,600) | (454,600) |
| BOM - Pre-Petition Unsecured Claims | 40 | (4,370,600) | (4,370,600) | (4,370,600) | (4,148,000) | (4,148,000) | (4,148,000) | (3,706,000) | (3,706,000) | (3,706,000) | (3,042,400) | (3,042,400) | (3,042,400) | (3,042,400) |
| Payments | | - | - | 222,600 | - | - | 442,000 | - | - | 663,600 | - | - | 609,800 | 609,800 |
| EOM - Pre-Petition Unsecured Claims | | (4,370,600) | (4,370,600) | (4,148,000) | (4,148,000) | (4,148,000) | (3,706,000) | (3,706,000) | (3,706,000) | (3,042,400) | (3,042,400) | (3,042,400) | (2,432,600) | (2,432,600) |
| BOM - Pre-Petition Priority Tax Claims | 41 | (19,900) | (18,230) | (16,550) | (14,860) | (13,160) | (11,450) | (9,730) | (7,990) | (6,240) | (4,480) | (2,710) | (930) | (930) |
| Payments | | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 940 | 940 |
| Add Back Interest Portion | | (130) | (120) | (110) | (100) | (90) | (80) | (60) | (50) | (40) | (30) | (20) | (10) | (10) |
| EOM - Pre-Petition Priority Tax Claims | | (18,230) | (16,550) | (14,860) | (13,160) | (11,450) | (9,730) | (7,990) | (6,240) | (4,480) | (2,710) | (930) | - | - |
| BOM - Secured Notes Payable - Salinas | | (10,500) | (10,020) | (9,540) | (9,060) | (8,580) | (8,100) | (7,620) | (7,140) | (6,660) | (6,180) | (5,700) | (5,220) | (5,220) |
| 2006 Ford F150 | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2006 Ford Mustang | 35 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Cisco Phone System | 16 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2007 GM Yukon | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2008 Ford Expedition | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2008 Ford Explorer | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2008 Ford Explorer | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payments | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Debt Elimination | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Add Back Interest Portion | | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) |
| EOM - Secured Notes Payable - Salinas | | (10,020) | (9,540) | (9,060) | (8,580) | (8,100) | (7,620) | (7,140) | (6,660) | (6,180) | (5,700) | (5,220) | (4,740) | (4,740) |
| BOM - Secured Notes Payable - Laredo | | (817,430) | (809,930) | (802,330) | (794,630) | (786,830) | (778,930) | (770,930) | (762,830) | (754,630) | (746,330) | (737,930) | (729,430) | (729,430) |
| Scissorlift & Sweeper | 19 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Forklifts | 36 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Laredo House - 1st | 37 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 |
| Laredo House - 2nd | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Laredo Warehouse - B of A | 37 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| Laredo Warehouse - SBA | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Laredo Ice Maker/Injector | 19 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payments | 37 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 |
| Debt Elimination | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Add Back Interest Portion | | (4,200) | (4,100) | (4,000) | (3,900) | (3,800) | (3,700) | (3,600) | (3,500) | (3,400) | (3,300) | (3,200) | (3,100) | (3,100) |
| EOM - Secured Notes Payable - Laredo | | (809,930) | (802,330) | (794,630) | (786,830) | (778,930) | (770,930) | (762,830) | (754,630) | (746,330) | (737,930) | (729,430) | (720,830) | (720,830) |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 132 of 171

# Cimino Brothers Produce, Debtor
## Forecasted Cash Flows from Operations
### For the Five Fiscal Years Ending August, 31 2015

| | REF | Forecasted Sep-13 | Forecasted Oct-13 | Forecasted Nov-13 | Forecasted Dec-13 | Forecasted Jan-14 | Forecasted Feb-14 | Forecasted Mar-14 | Forecasted Apr-14 | Forecasted May-14 | Forecasted Jun-14 | Forecasted Jul-14 | Forecasted Aug-14 | Forecasted FY 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BOM - Note Payable - Vince Cimino** | 38 | | | | | | | | | | | | | |
| Payments | | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | |
| Debt Elimination | | | | | | | | | | | | | | |
| **EOM - Note Payable - Vince Cimino** | | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | |
| **BOM - DIP Legal Fees Payable** | 28 | | | | | | | | | | | | | |
| DIP Legal Fees Incurred | | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | |
| DIP Legal Retainer Applied | | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Legal Fees Paid | | - | - | - | - | - | - | - | - | - | - | - | - | |
| **EOM - DIP Legal Fees Payable** | | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | |
| **BOM - DIP Accounting Fees Payable** | 29 | | | | | | | | | | | | | |
| DIP Accounting Fees Incurred | | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Accounting Fees Paid | | - | - | - | - | - | - | - | - | - | - | - | - | |
| **EMO - DIP Accounting Fees Payable** | | - | - | - | - | - | - | - | - | - | - | - | - | |

*Forecasted Sources and Uses of Cash*

| | REF | Forecasted Sep-13 | Forecasted Oct-13 | Forecasted Nov-13 | Forecasted Dec-13 | Forecasted Jan-14 | Forecasted Feb-14 | Forecasted Mar-14 | Forecasted Apr-14 | Forecasted May-14 | Forecasted Jun-14 | Forecasted Jul-14 | Forecasted Aug-14 | Forecasted FY 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BOM - Cash** | 40 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | |
| **Cash from Operations** | | | | | | | | | | | | | | |
| Collections on A/R | 33 | 919,160 | 1,035,160 | 1,392,400 | 1,702,880 | 2,062,200 | 2,417,940 | 2,273,760 | 1,985,080 | 1,492,140 | 1,440,240 | 1,284,800 | 1,056,240 | |
| Total Cash from Operations | | 919,160 | 1,035,160 | 1,392,400 | 1,702,880 | 2,062,200 | 2,417,940 | 2,273,760 | 1,985,080 | 1,492,140 | 1,440,240 | 1,284,800 | 1,056,240 | |
| **Cash Used in Operations** | | | | | | | | | | | | | | |
| Payment of Operating Expenses - Salinas | 12 | (106,970) | (109,070) | (110,470) | (112,370) | (114,070) | (112,770) | (111,270) | (108,570) | (108,970) | (107,870) | (106,670) | (106,370) | |
| Payment of Operating Expenses - Laredo | 17 | (50,050) | (50,050) | (50,050) | (50,050) | (50,050) | (50,050) | (50,050) | (50,050) | (50,050) | (50,050) | (50,050) | (50,050) | |
| Payment of A/P | 8 | (713,200) | (724,200) | (964,300) | (1,349,600) | (1,542,100) | (1,686,400) | (1,783,100) | (1,686,400) | (849,300) | (1,037,000) | (912,830) | (772,100) | |
| Total Cash Used in Operations | | (870,220) | (883,320) | (1,124,820) | (1,512,020) | (1,706,220) | (1,849,220) | (1,944,420) | (1,845,020) | (1,008,320) | (1,194,920) | (1,069,520) | (928,520) | |
| **Cash Available from Operations** | | 798,940 | 901,840 | 1,017,580 | 940,860 | 1,105,980 | 1,318,720 | 1,079,340 | 890,060 | 1,233,820 | 995,320 | 965,280 | 877,720 | |
| **Other Sources of Cash** | | | | | | | | | | | | | | |
| Collections from Cimino Mexico | 34 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| Net Proceeds from Sale of Laredo House | 36 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Net Proceeds from Sale of Company Vehicles | 35 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Capital Contribution from Partners | 40 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Total Other Sources of Cash | | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| **Other Uses of Cash** | | | | | | | | | | | | | | |
| Payments on N/P - Salinas | | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | |
| Payments on N/P - Laredo | | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | |
| Payments to WFB | 32 | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | |
| Payments to Priority Tax Creditors | 41 | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (1,800) | (940) | |
| Expenditures for Phone and Network System | 16 | | | | | | | | | | | | | |
| DIP Legal Fees Paid | 28 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Laredo Litigation Fees Paid | 29 | - | - | - | - | - | - | - | - | - | - | - | - | |
| DIP Accounting Fees Paid | | - | - | - | - | - | - | - | - | - | - | - | - | |
| OUST Fees Paid | 30 | - | - | - | - | - | - | - | - | - | - | - | - | |
| Income Taxes Paid | 39 | (235,350) | | | | | | | | | (235,350) | | | |
| Lease assumption cure payments | | | | | | | | | | | | | | |
| Secured creditor catch-up payments | | | | | | | | | | | | | | |
| Payments on Pre-Petition Unsecured Claims | 40 | | | (222,600) | | | (442,000) | | | (663,600) | | | (609,800) | |
| Total Other Uses of Cash | 40 | (290,350) | (55,000) | (277,600) | (55,000) | (55,000) | (497,000) | (55,000) | (55,000) | (718,600) | (290,350) | (55,000) | (663,940) | |
| **EOM Cash** | | 512,590 | 850,840 | 743,980 | 889,860 | 1,054,980 | 825,720 | 1,028,340 | 839,060 | 519,220 | 708,970 | 914,280 | 217,780 | |
| **Cash Reserve for Operations** | 40 | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | |
| **Cash Available for Debt Service** | | (237,410) | 100,840 | (6,020) | 139,860 | 304,980 | 75,720 | 278,340 | 89,060 | (230,780) | (41,030) | 164,280 | (532,220) | |
| **Cumulative Cash Available for Debt Service** | | 344,370 | 445,210 | 439,190 | 579,050 | 884,030 | 959,750 | 1,238,090 | 1,327,150 | 1,096,370 | 1,055,340 | 1,219,620 | 687,400 | |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

*Forecasted Statements of Operations*

| | REF | Forecasted Sep-14 | Forecasted Oct-14 | Forecasted Nov-14 | Forecasted Dec-14 | Forecasted Jan-15 | Forecasted Feb-15 | Forecasted Mar-15 | Forecasted Apr-15 | Forecasted May-15 | Forecasted Jun-15 | Forecasted Jul-15 | Forecasted Aug-15 | Forecasted FY 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | | | | | | | |
| Number of Cartons Sold | 4 | 79,600 | 106,100 | 148,600 | 169,800 | 185,700 | 196,400 | 185,700 | 93,400 | 114,100 | 100,400 | 84,900 | 79,600 | 1,544,300 |
| Market Price per Carton - FOB | 5 | 12.31 | 12.80 | 10.67 | 11.45 | 12.29 | 10.11 | 9.14 | 13.76 | 11.61 | 11.23 | 10.73 | 10.63 | 11.39 |
| Net Commodity Sales | 6 | 979,700 | 1,358,500 | 1,586,100 | 1,943,600 | 2,281,400 | 1,985,800 | 1,697,200 | 1,285,600 | 1,324,900 | 1,127,100 | 910,900 | 846,100 | 17,326,900 |
| Freight Sales | 7 | 128,200 | 170,800 | 239,200 | 273,400 | 299,000 | 316,200 | 299,000 | 150,400 | 183,700 | 161,600 | 136,700 | 128,200 | 2,486,400 |
| **Total Sales** | | 1,107,900 | 1,529,300 | 1,825,300 | 2,217,000 | 2,580,400 | 2,302,000 | 1,996,200 | 1,436,000 | 1,508,600 | 1,288,700 | 1,047,600 | 974,300 | 19,813,300 |
| **Costs of Goods Sold** | | | | | | | | | | | | | | |
| Cartons - Interco Mexico | 8 | 105,100 | 140,100 | 196,200 | 224,100 | 245,100 | 259,200 | 245,100 | 123,300 | 150,600 | 132,500 | 112,100 | 105,100 | 2,038,500 |
| Cooling Fee - Cimino Mexico | | 87,600 | 116,700 | 163,500 | 186,800 | 204,300 | 216,000 | 204,300 | 102,700 | 125,500 | 110,400 | 93,400 | 87,600 | 1,698,800 |
| Handling Fee - Cimino Mexico | | 39,800 | 53,100 | 74,300 | 84,900 | 92,900 | 98,200 | 92,900 | 46,700 | 57,100 | 50,200 | 42,500 | 39,800 | 772,400 |
| Product | | 304,900 | 406,400 | 569,100 | 650,300 | 711,200 | 752,200 | 711,200 | 357,700 | 437,000 | 384,500 | 325,200 | 304,900 | 5,914,600 |
| Commodities Purchased | | 537,400 | 716,300 | 1,003,100 | 1,146,100 | 1,253,500 | 1,325,600 | 1,253,500 | 630,400 | 770,200 | 677,600 | 573,200 | 537,400 | 10,424,300 |
| Freight | 9 | 115,400 | 153,700 | 215,300 | 246,100 | 269,100 | 284,600 | 269,100 | 135,400 | 165,300 | 145,400 | 123,000 | 115,400 | 2,237,800 |
| Freight Mexico | 8 | 73,200 | 97,600 | 136,700 | 156,200 | 170,800 | 180,700 | 170,800 | 85,900 | 105,000 | 92,400 | 78,100 | 73,200 | 1,420,600 |
| Customs And Duties | 8 | 6,400 | 8,500 | 11,900 | 13,600 | 14,900 | 15,700 | 14,900 | 7,500 | 9,100 | 8,000 | 6,800 | 6,400 | 123,700 |
| Bags - Cooler | 10 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| **Total Costs of Goods Sold** | | 735,400 | 979,100 | 1,370,000 | 1,565,000 | 1,711,300 | 1,809,600 | 1,711,300 | 862,300 | 1,052,600 | 926,400 | 784,100 | 735,400 | 14,242,400 |
| **Gross Profit** | 11 | 372,500 | 550,200 | 455,300 | 652,000 | 869,100 | 492,400 | 284,900 | 573,800 | 456,000 | 362,300 | 263,500 | 238,900 | 5,570,900 |
| Gross Margin | | 33.6% | 36.0% | 24.9% | 29.4% | 33.7% | 21.4% | 14.3% | 40.0% | 30.2% | 28.1% | 25.2% | 24.5% | 28.1% |
| Gross Profit per Carton | | 4.68 | 5.19 | 3.06 | 3.84 | 4.68 | 2.51 | 1.53 | 6.14 | 4.00 | 3.61 | 3.10 | 3.00 | 3.78 |
| **Operating Expenses - Salinas** | 12 | | | | | | | | | | | | | |
| Alarm | | 440 | 440 | 440 | 440 | 440 | 440 | 440 | 440 | 440 | 440 | 440 | 440 | 5,280 |
| Automobile | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Bank Charges | | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 12,960 |
| Bad Debt Expense | 13 | 5,500 | 7,600 | 9,100 | 11,000 | 12,900 | 11,500 | 10,000 | 7,200 | 7,500 | 6,400 | 5,200 | 4,900 | 98,500 |
| Dues & Subscriptions | | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 22,920 |
| Insurance - Health | | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 64,920 |
| Insurance - Liability | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| Insurance - Workers' Compensation | | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 6,480 |
| Janitorial Service | | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 6,480 |
| Licenses & Fees | | 640 | 640 | 640 | 640 | 640 | 640 | 640 | 640 | 640 | 640 | 640 | 640 | 7,680 |
| Miscellaneous | | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 6,480 |
| Office Rent | 14 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 5,410 | 64,920 |
| Office Supplies | | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 6,480 |
| Postage | | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 4,080 |
| Professional Fees (Non-Bankruptcy) | | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 38,880 |
| Salaries & Wages | 15 | 70,360 | 70,360 | 70,360 | 70,360 | 70,360 | 70,360 | 70,360 | 70,360 | 70,360 | 70,360 | 70,360 | 70,360 | 844,320 |
| Taxes - Payroll | 16 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 51,840 |
| Telephone & Internet | | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 51,840 |
| Travel & Promotion | | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 6,480 |
| Utilities | | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 10,560 |
| **Total Operating Expenses - Salinas** | | 109,200 | 111,300 | 112,800 | 114,800 | 116,600 | 115,200 | 113,700 | 110,900 | 111,200 | 110,100 | 108,900 | 108,600 | 1,343,300 |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

Case: 09-60291   Doc# 143   Filed: 06/21/10   Entered: 06/21/10 11:19:28   Page 134 of 171

**Cimino Brothers Produce, Debtor**
Forecasted Cash Flows from Operations
For the Five Fiscal Years Ending August, 31 2015

| | REF | Forecasted Sep-14 | Forecasted Oct-14 | Forecasted Nov-14 | Forecasted Dec-14 | Forecasted Jan-15 | Forecasted Feb-15 | Forecasted Mar-15 | Forecasted Apr-15 | Forecasted May-15 | Forecasted Jun-15 | Forecasted Jul-15 | Forecasted Aug-15 | Forecasted FY 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Expenses - Laredo** | 17 | | | | | | | | | | | | | |
| Alarm | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Automobile | | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 4,080 |
| Cooler Supplies | 18 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 19,440 |
| Dues & Subscriptions | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Equipment Rental | 19 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 3,240 | 38,880 |
| Inspections | 20 | 2,060 | 2,060 | 2,060 | 2,060 | 2,060 | 2,060 | 2,060 | 2,060 | 2,060 | 2,060 | 2,060 | 2,060 | 24,720 |
| Insurance - Health | | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 4,080 |
| Insurance - Liability | | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 32,400 |
| Insurance - Workers' Compensation | 22 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 12,960 |
| Janitorial | | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 2,040 |
| Licenses & Fees | | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 10,560 |
| Loan Fees | | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 8,880 |
| Miscellaneous | | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 6,480 |
| Office Supplies | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Postage | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Repairs & Maintenance | | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 4,320 | 51,840 |
| Repairs & Maintenance - House | 21 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Salaries & Wages | 22 | 19,480 | 19,480 | 19,480 | 19,480 | 19,480 | 19,480 | 19,480 | 19,480 | 19,480 | 19,480 | 19,480 | 19,480 | 233,760 |
| Taxes - Payroll | 23 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 22,920 |
| Taxes - Personal Property | | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 6,480 |
| Taxes - Real Property | 24 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 10,560 |
| Telephone & Internet | 16 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 1,080 | 12,960 |
| Travel & Promotion | | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 6,480 |
| Utilities | 25 | 8,120 | 8,120 | 8,120 | 8,120 | 8,120 | 8,120 | 8,120 | 8,120 | 8,120 | 8,120 | 8,120 | 8,120 | 97,440 |
| Utilities - House | 26 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Expenses - Laredo** | 27 | 51,030 | 51,030 | 51,030 | 51,030 | 51,030 | 51,030 | 51,030 | 51,030 | 51,030 | 51,030 | 51,030 | 51,030 | 612,360 |
| **EBITDA** | | 212,270 | 387,870 | 291,470 | 486,170 | 701,470 | 326,170 | 120,170 | 411,870 | 293,770 | 201,170 | 103,570 | 79,270 | 3,615,240 |
| **Administrative Expenses** | | | | | | | | | | | | | | |
| DIP Legal Fees | 28 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Laredo Litigation Fees | 29 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DIP Accounting Fees | 30 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| OUST Fees | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Administrative Expenses** | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Other Expenses** | | | | | | | | | | | | | | |
| Depreciation - Salinas | 31 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Depreciation - Laredo | | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 144,000 |
| Interest Expense - Salinas | 32 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | - | - | 200 |
| Interest Expense - Laredo | | 3,000 | 2,900 | 2,800 | 2,700 | 2,600 | 2,500 | 2,400 | 2,300 | 2,200 | 2,100 | 2,000 | 1,900 | 29,400 |
| Interest Expense - WFB | | 2,800 | 2,600 | 2,400 | 2,200 | 2,000 | 1,800 | 1,600 | 1,400 | 1,200 | 1,000 | 800 | 600 | 20,400 |
| Interest Expense - priority claims | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Other Expenses** | | 24,820 | 24,520 | 24,220 | 23,920 | 23,620 | 23,320 | 23,020 | 22,720 | 22,420 | 22,120 | 21,800 | 21,500 | 278,000 |
| **Net Income (Loss)** | | 187,450 | 363,350 | 267,250 | 462,250 | 677,850 | 302,850 | 97,150 | 389,150 | 271,350 | 179,050 | 81,770 | 57,770 | 3,337,240 |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 135 of 171

# Cimino Brothers Produce, Debtor
## Forecasted Cash Flows from Operations
### For the Five Fiscal Years Ending August, 31 2015

*Forecasted Accruals*

| | REF | Forecasted Sep-14 | Forecasted Oct-14 | Forecasted Nov-14 | Forecasted Dec-14 | Forecasted Jan-15 | Forecasted Feb-15 | Forecasted Mar-15 | Forecasted Apr-15 | Forecasted May-15 | Forecasted Jun-15 | Forecasted Jul-15 | Forecasted Aug-15 | Forecasted FY 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BOM - A/R** | 33 | 1,141,140 | 1,295,740 | 1,750,880 | 2,131,160 | 2,582,060 | 3,023,800 | 2,818,080 | 2,456,600 | 1,835,240 | 1,795,800 | 1,590,420 | 1,305,340 | 1,141,140 |
| Sales | | 1,107,900 | 1,529,300 | 1,825,300 | 2,217,000 | 2,580,400 | 2,302,000 | 1,996,200 | 1,436,000 | 1,508,600 | 1,288,700 | 1,047,600 | 974,300 | 19,813,300 |
| Collections | | (953,300) | (1,074,160) | (1,445,020) | (1,766,100) | (2,138,660) | (2,507,720) | (2,357,680) | (2,057,360) | (1,548,040) | (1,494,080) | (1,332,680) | (1,095,820) | (19,765,620) |
| **EOM - A/R** | | 1,295,740 | 1,750,880 | 2,131,160 | 2,582,060 | 3,023,800 | 2,818,080 | 2,456,600 | 1,835,240 | 1,795,800 | 1,590,420 | 1,305,340 | 1,188,820 | 1,188,820 |
| **BOM - Due from Cimino Mexico** | 34 | 700,000 | 696,000 | 692,000 | 688,000 | 684,000 | 680,000 | 676,000 | 672,000 | 668,000 | 664,000 | 660,000 | 656,000 | 700,000 |
| Collections from Cimino Mexico | | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (48,000) |
| **EOM - Due from Cimino Mexico** | | 696,000 | 692,000 | 688,000 | 684,000 | 680,000 | 676,000 | 672,000 | 668,000 | 664,000 | 660,000 | 656,000 | 652,000 | 652,000 |
| **BOM - Post Petition A/P** | 8 | (724,200) | (735,400) | (979,100) | (1,370,000) | (1,565,000) | (1,809,600) | (1,711,300) | (1,711,300) | (862,200) | (1,052,600) | (926,400) | (784,100) | (724,200) |
| Costs of Goods Sold | | (735,400) | (979,100) | (1,370,000) | (1,565,000) | (1,711,300) | (1,809,600) | (1,711,300) | (862,200) | (1,052,600) | (926,400) | (784,100) | (735,400) | (14,242,400) |
| Payments | | 724,200 | 735,400 | 979,100 | 1,370,000 | 1,565,000 | 1,711,300 | 1,809,600 | 1,711,300 | 862,200 | 1,052,600 | 926,400 | 784,100 | 14,231,200 |
| **EOM - Post Petition A/P** | | (735,400) | (979,100) | (1,370,000) | (1,565,000) | (1,711,300) | (1,809,600) | (1,711,300) | (862,200) | (1,052,600) | (926,400) | (784,100) | (735,400) | (735,400) |
| **BOM - WFB LOC** | 32 | (454,600) | (416,400) | (378,400) | (339,400) | (300,600) | (261,600) | (222,400) | (183,000) | (143,400) | (103,600) | (63,600) | (23,400) | (454,600) |
| Payments | | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 24,000 | 475,000 |
| Debt Elimination | | | | | | | | | | | | | | |
| Add Back Interest Portion | | (2,800) | (2,600) | (2,400) | (2,200) | (2,000) | (1,800) | (1,600) | (1,400) | (1,200) | (1,000) | (800) | (600) | (20,400) |
| **EOM - WFB LOC** | | (416,400) | (378,000) | (339,000) | (300,600) | (261,600) | (222,400) | (183,000) | (143,400) | (103,600) | (63,600) | (23,400) | - | - |
| **BOM - Pre-Petition Unsecured Claims** | 40 | (2,432,600) | (2,432,600) | (2,432,600) | (2,157,100) | (2,157,100) | (2,157,100) | (1,624,000) | (1,624,000) | (1,624,000) | (832,400) | (832,400) | (832,400) | (2,432,600) |
| Payments | | | | 275,500 | | | 533,100 | | | 791,600 | | | 832,400 | 2,432,600 |
| **EOM - Pre-Petition Unsecured Claims** | | (2,432,600) | (2,432,600) | (2,157,100) | (2,157,100) | (2,157,100) | (1,624,000) | (1,624,000) | (1,624,000) | (832,400) | (832,400) | (832,400) | - | - |
| **BOM - Pre-Petition Priority Tax Claims** | 41 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payments | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Add Back Interest Portion | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **EOM - Pre-Petition Priority Tax Claims** | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **BOM - Secured Notes Payable - Salinas** | | (4,740) | (4,260) | (3,780) | (3,300) | (2,820) | (2,340) | (1,860) | (1,380) | (900) | (420) | - | - | (4,740) |
| 2006 Ford F150 | | | | | | | | | | | | | | |
| 2006 Ford Mustang | 35 | | | | | | | | | | | | | |
| Cisco Phone System | 16 | | | | | | | | | | | | | |
| 2007 GM Yukon | | | | | | | | | | | | | | |
| 2008 Ford Expedition | | | | | | | | | | | | | | |
| 2008 Ford Explorer | | | | | | | | | | | | | | |
| 2008 Ford Explorer | | | | | | | | | 500 | 500 | 440 | | | |
| Payments | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 440 | - | - | 4,940 |
| Debt Elimination | | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | | | (200) |
| Add Back Interest Portion | | | | | | | | | | | | | | |
| **EOM - Secured Notes Payable - Salinas** | | (4,260) | (3,780) | (3,300) | (2,820) | (2,340) | (1,860) | (1,380) | (900) | (420) | - | - | - | - |
| **BOM - Secured Notes Payable - Laredo** | | (720,830) | (712,130) | (703,330) | (694,430) | (685,430) | (676,330) | (667,130) | (657,830) | (648,430) | (638,930) | (629,330) | (619,630) | (720,830) |
| Scissorlift & Sweeper | 19 | | | | | | | | | | | | | |
| Forklifts | 36 | | | | | | | | | | | | | |
| Laredo House - 1st | 37 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 44,400 |
| Laredo House - 2nd | | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 96,000 |
| Laredo Warehouse - B of A | 37 | | | | | | | | | | | | | |
| Laredo Warehouse - SBA | | | | | | | | | | | | | | |
| Laredo Ice Maker/Injector | 19 | | | | | | | | | | | | | |
| Payments | 37 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 11,700 | 140,400 |
| Debt Elimination | | (3,000) | (2,900) | (2,800) | (2,700) | (2,600) | (2,500) | (2,400) | (2,300) | (2,200) | (2,100) | (2,000) | (1,900) | (29,400) |
| Add Back Interest Portion | | | | | | | | | | | | | | |
| **EOM - Secured Notes Payable - Laredo** | | (712,130) | (703,330) | (694,430) | (685,430) | (676,330) | (667,130) | (657,830) | (648,430) | (638,930) | (629,330) | (619,630) | (609,830) | (609,830) |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 136 of 171

**Cimino Brothers Produce, Debtor**
**Forecasted Cash Flows from Operations**
**For the Five Fiscal Years Ending August, 31 2015**

| | REF | Forecasted Sep-14 | Forecasted Oct-14 | Forecasted Nov-14 | Forecasted Dec-14 | Forecasted Jan-15 | Forecasted Feb-15 | Forecasted Mar-15 | Forecasted Apr-15 | Forecasted May-15 | Forecasted Jun-15 | Forecasted Jul-15 | Forecasted Aug-15 | Forecasted FY 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BOM - Note Payable - Vince Cimino** | 38 | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) |
| Payments | | | | | | | | | | | | | | |
| Debt Elimination | | | | | | | | | | | | | | |
| **EOM - Note Payable - Vince Cimino** | | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) | (310,600) |
| **BOM - DIP Legal Fees Payable** | 28 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| DIP Legal Fees Incurred | | | | | | | | | | | | | | |
| DIP Retainer Applied | | | | | | | | | | | | | | |
| DIP Legal Fees Paid | | | | | | | | | | | | | | |
| **EOM - DIP Legal Fees Payable** | | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| **BOM - DIP Accounting Fees Payable** | 29 | | | | | | | | | | | | | |
| DIP Accounting Fees Incurred | | | | | | | | | | | | | | |
| DIP Accounting Fees Paid | | | | | | | | | | | | | | |
| **EMO - DIP Accounting Fees Payable** | | | | | | | | | | | | | | |
| *Forecasted Sources and Uses of Cash* | | | | | | | | | | | | | | |
| **BOM - Cash** | 40 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 |
| **Cash from Operations** | | | | | | | | | | | | | | |
| Collections on A/R | 33 | 953,300 | 1,074,160 | 1,445,020 | 1,766,100 | 2,138,660 | 2,507,720 | 2,357,680 | 2,057,360 | 1,548,040 | 1,494,080 | 1,332,680 | 1,095,820 | |
| **Total Cash from Operations** | | 953,300 | 1,074,160 | 1,445,020 | 1,766,100 | 2,138,660 | 2,507,720 | 2,357,680 | 2,057,360 | 1,548,040 | 1,494,080 | 1,332,680 | 1,095,820 | |
| **Cash Used in Operations** | | | | | | | | | | | | | | |
| Payment of Operating Expenses - Salinas | 12 | (109,200) | (111,300) | (112,800) | (114,800) | (116,600) | (115,200) | (113,700) | (110,900) | (111,200) | (110,100) | (108,900) | (108,600) | |
| Payment of Operating Expenses - Laredo | 17 | (51,030) | (51,030) | (51,030) | (51,030) | (51,030) | (51,030) | (51,030) | (51,030) | (51,030) | (51,030) | (51,030) | (51,030) | |
| Payment of A/P | 8 | (724,200) | (735,400) | (979,100) | (1,370,000) | (1,565,000) | (1,711,300) | (1,809,600) | (1,711,300) | (862,200) | (1,052,600) | (926,400) | (784,100) | |
| **Total Cash Used in Operations** | | (884,430) | (897,730) | (1,142,930) | (1,535,830) | (1,732,630) | (1,877,530) | (1,974,330) | (1,873,230) | (1,024,430) | (1,213,730) | (1,086,330) | (943,730) | |
| **Cash Available from Operations** | | 818,870 | 926,430 | 1,052,090 | 980,270 | 1,156,030 | 1,380,190 | 1,133,350 | 934,130 | 1,273,610 | 1,030,350 | 996,350 | 902,090 | |
| **Other Sources of Cash** | | | | | | | | | | | | | | |
| Collections from Cimino Mexico | 34 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| Net Proceeds from Sale of Laredo House | 36 | | | | | | | | | | | | | |
| Net Proceeds from Sale of Company Vehicles | 35 | | | | | | | | | | | | | |
| Capital Contribution from Partners | 40 | | | | | | | | | | | | | |
| **Total Other Sources of Cash** | | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| **Other Uses of Cash** | | | | | | | | | | | | | | |
| Payments on N/P - Salinas | | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (440) | | | |
| Payments on N/P - Laredo | | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | (11,700) | |
| Payments to WFB | 32 | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | (41,000) | |
| Payments to Priority Tax Creditors | 41 | | | | | | | | | | | | | |
| Expenditures for Phone and Network System | 16 | | | | | | | | | | | | | |
| DIP Legal Fees Paid | 28 | | | | | | | | | | | | | |
| Laredo Litigation Fees Paid | 29 | | | | | | | | | | | | | |
| DIP Accounting Fees Paid | | | | | | | | | | | | | | |
| OUST Fees Paid | 30 | | | | | | | | | | | | | |
| Income Taxes Paid | 39 | (283,400) | | | | | | | | | (283,400) | | | |
| Lease assumption cure payments | | | | | | | | | | | | | | |
| Secured creditor catch-up payments | | | | | | | | | | | | | | |
| Payments on Pre-Petition Unsecured Claims | 40 | | | (275,500) | | | (533,100) | | | (791,600) | | | (832,400) | |
| **Total Other Uses of Cash** | | (336,600) | (53,200) | (328,700) | (53,200) | (53,200) | (586,300) | (53,200) | (53,200) | (844,800) | (336,540) | (52,700) | (868,100) | |
| **EOM Cash** | 40 | 486,270 | 877,230 | 727,390 | 931,070 | 1,106,830 | 797,890 | 1,084,150 | 884,930 | 432,810 | 697,810 | 947,650 | 37,990 | 37,990 |
| **Cash Reserve for Operations** | 40 | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) | (750,000) |
| **Cash Available for Debt Service** | | (263,730) | 127,230 | (22,610) | 181,070 | 356,830 | 47,890 | 334,150 | 134,930 | (317,190) | (52,190) | 197,650 | (712,010) | (712,010) |
| **Cumulative Cash Available for Debt Service** | | 423,670 | 550,900 | 528,290 | 709,360 | 1,066,190 | 1,114,080 | 1,448,230 | 1,583,160 | 1,265,970 | 1,213,780 | 1,411,430 | 699,420 | 699,420 |

The Accompanying Notes and Assumptions are an Integral Part of this Forecast

**Cimino Brothers Produce, Debtor**
**Forecasted Cash Flows from Operations**
**For the Five Fiscal Years Ending August, 31 2015**


<u>**NOTES & ASSUMPTIONS**</u>

1    The forecasted cash flows set forth herein represent management's best estimate as to the Debtor's future operations.  All information is provided by Debtor's management and has not been reviewed our audited.  No opinion on the contents of this forecast is expressed or implied.  Forecasted amounts reflect pro-forma adjustments to normalize regular fluctuations and adjust for expenses that will be reduced or eliminated by the Debtor.

   **ACTUAL RESULTS MAY VARY SIGNIFICANTLY FROM FORECASTED AMOUNTS.**

2    The model reflected in this forecast proposes that the Debtor continue its normal type of operations whereby the Debtor purchases produce (primarily the broccoli commodity) from its wholly owned, foreign subsidiary Cimino Mexico ("CM"), arranges cooling and shipment of the produce from Mexico to the United States and resells the produce to retailers, food service distributors and wholesalers in the United States.  The Debtor maintains administrative offices in Salinas, California and operates a cold storage facility in Laredo, Texas.  CM is located in Mexico and coordinates the growth of produce with Mexican growers and the shipment of fully grown produce to Laredo.

3    Forecasts assume changing the nature of the Debtor's operations in Laredo whereby icing and cooling operations are resourced to CM, with very little additional related costs to CM.  Also, this forecast assumes the maintenance of an "arm's length" supplier relationship with CM.

4    Forecasted number of cartons sold is determined by Debtor's management through analyzing the historical trends of the Debtor's volume, taking into consideration seasonality, change in customer mix, and offerings of icing in Laredo.  Each month forecasted subsequent to FY1 will show a 1.5% increase in volume of the corresponding  month in the prior fiscal year (note:  volume for September 2010 through January 2011 has been estimated based upon known planting and growing cycles).

5    Forecasted market price - FOB is determined by Debtor's management through analyzing historical market price trends for the Debtor's primary product, broccoli.  In fiscal years subsequent to year 1, it is assumed that the Debtor will have experienced continued success with developing contract pricing with its customers, which will in essence normalize some of the fluctuations experienced in the open market.  Further, it is the intention of Debtor's management to continue to change the product mix to higher margin produce, namely broccoli florets which on average earn approximately $1.50 more per carton than broccoli crowns.  Each month forecasted subsequent to FY1 will show a 2.5% increase of the market price of the corresponding  month in the prior fiscal year.

6    Net commodity sales are calculated by multiplying the forecasted number of cartons sold by the forecasted market price in any given month.

7    Freight sales are estimate to be applicable to 70% of the volume and are calculated at $2.30 per carton.

8    Costs of Goods Sold ("COGS") is calculated by multiplying the number of cartons sold by the unit cost for each type of COGS.  Expenses incurred for COGS vendors are assumed paid in the following month and represent the entire accounts payable balance.  Produce inventory is considered fully sold in the month acquired.  There is no rollover of inventory or related carrying cost.   The beginning post-petition accounts payable balance is taken from the projected balance on the Debtor's cash collateral projection for the three months ended 8/31/10.

9    Freight COGS is calculated at 90% of freight sales and reflects freight charges from Texas to the customers' facilities.  Freight Mexico COGS is calculated at $0.92 per carton and reflects freight charges from Mexico to Texas.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 138 of 171

**Cimino Brothers Produce, Debtor**
**Forecasted Cash Flows from Operations**
**For the Five Fiscal Years Ending August, 31 2015**

## NOTES & ASSUMPTIONS

**10**  Bags - Cooler are a fixed cost for repackaging.

**11**  Gross margin fluctuates as a function of the going market price.  Market price fluctuations can significantly impact bottom line revenue.  As noted elsewhere, Debtor's management intends to continually change the mix of produce sold to emphasize higher margin items.  Over the long run, this action coupled with improved market conditions will positively impact gross margin.  Gross profit per carton is calculated by dividing the monthly gross profit by the corresponding number of cartons sold.  This is a key metric for the Debtor.

**12**  Operating expenses for Salinas are estimated based on historical amounts that have pro-forma adjustments applied to reflect the intentions of Debtor's management to streamline operations.  Significant adjustments and changes are noted individually herein.  Operating expenses are assumed paid in the month incurred and are assumed to increase at a rate of 2% year over year in line with inflation and costs of living increases.   Increases in small monthly amounts may not be evident due to rounding.

**13**  Bad debt expense is calculated at a rate of 0.5% of net sales on a monthly basis, which is based on the Debtor's historic uncollectible activity.  It is shown as an operating expense which will reduce net cash flow by the bad debt amount on a monthly basis, thereby offsetting the collections on sales.

**14**  The Debtor rents administrative and operational office space in Salinas, California.  The buildings are owned by the Debtor's partners.  The partners intend to reduce the Debtor's lease payment to below-market rates.

**15**  The Debtor will reduce its work force in Salinas to eliminate three redundant personnel.  This cut will occur in month 1 of the forecast and will reduce payroll taxes by the same proportion.

**16**  Debtor's management intends to return its VOIP phone system to Cisco Systems eliminating $6700 in monthly note payments and $88,600 in debt.  This is assumed to occur in month 2 of the forecast.  To replace the system, the Debtor will obtain a hosted phone/network solution while still decreasing the monthly phone and internet expense (Debtor's management also intends to eliminate company paid cellular telephones for a number of employees, also reducing the monthly expense).  The capital expenditures related to the new systems are estimated to be $14,000 payable over two months.

**17**  Operating expenses for Laredo are estimated based on historical amounts that have pro-forma adjustments applied to reflect the intentions of Debtor's management to streamline operations.  Additional adjustments are made in month 2 to reflect the resourcing of icing and cooling operations to CM, further reducing the costs of Laredo's operations.  Significant adjustments and changes are noted individually herein.  Operating expenses are assumed paid in the month incurred.  They are assumed to increase at a rate of 2% year over year.

**18**  Cooler supplies expense is related to costs to repackage goods after FDA inspections.  The estimated amount is based upon the Debtor's prior activity and will not experience a reduction upon resourcing icing and cooling activities to CM.

**19**  In month 2 of the forecast, the Laredo operation will return to its lenders the ice injector and forklifts.  This will result in the elimination of $8200 in monthly note payments and $166,500 in secured debt.  As icing will be shifted to CM, the ice injector will no longer be needed in Laredo.  Further, the Debtor is already renting three other forklifts and no longer needs the ones covered by the loan.

**Cimino Brothers Produce, Debtor**
**Forecasted Cash Flows from Operations**
**For the Five Fiscal Years Ending August, 31 2015**

<u>**NOTES & ASSUMPTIONS**</u>

**20**   Inspections expense is related to FDA and USDA inspections and customs documentation. This amount is based upon the Debtor's prior activity and will not experience a reduction upon resourcing icing and cooling activities to CM.

**21**   Expenses related to repairs and maintenance on the Laredo house will be eliminated upon its sale.

**22**   The Debtor will reduce its work force in Laredo to eliminate seven redundant personnel as icing and cooling activities are going to be resourced to CM. Also, some managerial salaries will be pushed to CM in line with amount of time the managers spend in Mexico versus Laredo. This reduction will occur in month 2 of the forecast and will reduce payroll taxes and workers' compensation insurance by the same proportion.

**23**   Personal property taxes are assumed cut by 50% upon return of the cooling equipment in Laredo.

**24**   Real property taxes are assumed reduced by 20% upon sale of the Laredo house.

**25**   Utilities related to the Laredo operation are assumed to be cut by 25% upon relocation of icing and cooling activities to CM.

**26**   Utilities related to the Laredo house are eliminated upon its sale.

**27**   Earnings Before Interest Taxes Depreciation and Amortization ("EBITDA") is a standard measurement of a company's profitability from operations. For purposes of this forecast, expenses related to the administration of the Debtor's bankruptcy are also shown below the EBITDA line. As the Debtor is a partnership, income taxes flow through to the partners and are not reflected in this forecast.

**28**   Fees and costs related to Debtor's counsel are assumed covered by the remaining retainer paid to counsel and are paid as cash is available. Fees related to the Laredo litigation are assumed to be $10,000 per month for 20 months and are paid as incurred.

**29**   Fees and costs related to Debtor's accountants are paid as cash is available.

**30**   OUST Fees are assumed paid as incurred.

**31**   The Debtor calculates depreciation using the straight line method. For Salinas, upon relinquishing the phone system, depreciation will be reduced. For Laredo, upon relinquishing the cooling equipment, depreciation will be reduced. Forward looking amounts are estimated, but do not impact cash flow and are shown for net income information only.

**32**   Interest is assumed paid as incurred. Interest expense is included in payments on secured debt. Interest is added back to the payment for calculation of the EOM balance and is reduced as secured debt is fully paid off, eliminated, or otherwise settled. It is assumed that the debt with WFB is reduced to the collateralized amount in month one and that the remaining balance is amortized over five years with an APR of 7.5%. The current standing monthly payments to WFB continue until the debt is fully paid at the end of FY5.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 140 of 171

### NOTES & ASSUMPTIONS

**33**  80% of a current month's sales are assumed collected in the following month.  The remaining 20% balance is assume collected in the second month following the sales month.  Expenses related to bad debt are shown as a line item in operating expenses for Salinas.  The beginning accounts receivable balance is taken from the projected balance on the Debtor's cash collateral projection for the three months ended 8/31/10, less $636,000 of accounts receivable over 90 days as of 5/31/10 to maintain conservatism.

**34**  Amounts due from CM represent operating advances and grower receivables.  The amount is assumed repaid at the rate of $4000 per month.

**35**  The Debtor is currently in process of selling the 2006 Ford Mustang.  This transaction will result in the elimination of $15,000 of debt and $800 of monthly note payments.  The Debtor will realize net cash proceeds of $18,000 from this sale.  This transaction is assumed to occur in month 2 of the forecast.

**36**  The Laredo house is assumed sold at the beginning of month 3.  This transaction will result in lowering monthly note payments for Laredo by $2800 and eliminating $272,000 of secured debt.  Further, this transaction is estimated to result in net proceeds from the sale of $30,000 to the Debtor.

**37**  Debtor's management intends to renegotiate the terms of the loans with Bank of America and the Small Business Administration for the land, building, and equipment in Laredo.  The combined balance on the loans as of 1/31/10 is $1,714,000.  The intention is to return fully secured collateral in the form of cooling equipment that will no longer be utilized in Laredo after shifting cooling operations to CM.  The current market price of the equipment is estimated to be $800,000.  The original combined amount of the loans was $2,053,000.  The value of the secured equipment being returned represents approximately 40% of the original balance.  For purposes of the forecast, it will be assumed that the remaining loan balance will be reduced by the same pro-rata amount or $686,000.  It will be assumed that the remaining balance of $1,028,000 will be financed for ten years at a rate of 6.5%, resulting in a new monthly payment of $11,700.   This monthly amount is distributed pro-rata between BofA and the SBA based on their remaining collateral, resulting in a monthly payment of $3700 to BofA and $8000 to the SBA

**38**  One of the Debtor's partners, Vince Cimino, took a second mortgage out on his personal home to provide an operating loan to the Debtor.  This loan is evidenced by an unsecured note payable.  Mr. Cimino has voluntarily subordinated repayment of this loan by the Debtor until such time as the Debtor has repaid or otherwise settled its other pre-petition debt.

**39**  The Debtor will be re-organized as a non-pass-through entity for purposes of income taxes.  Taxes are assumed twice yearly following the prior fiscal year end and are calculated at a rate of 20% of net income.

**40**  Before cash is available for unsecured pre-petition debt service, the Debtor must build up a cash reserve to fund ongoing operations.  This reserve is estimated by management to be $750,000 and is reached in month 9.  Cash flows in excess of the reserve are shown as available for debt service.  Starting at the end of Q1 in FY2 and continuing quarterly until the pre-petition debt is repaid, the Debtor will may a minimum of $75,000 per quarter or 50% of the accumulated cash reserve through that quarter, whichever is higher, to the pre-petition unsecured creditors (except for the final month's payment which may be higher than 50% of the accumulated cash balance in order to pay off the remaining pre-petition unsecured balance).  In month 1, the Debtor's partners will contribute $350,000.  Those monies will be used to pay administrative professionals $250,000 and pre-petition unsecured creditors $100,000.   The beginning cash balance is taken from the projected balance on the Debtor's cash collateral projection for the three months ended 8/31/10.

**41**  Pre-petition priority tax claims are paid at $1800 per month over four years and earn interest at 8% per annum on the unpaid balance.

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 141 of 171

# EXHIBIT C

## Liquidation Analysis

### Cimino Brothers Produce as of March 31, 2010

All dollar amounts in thousands

| | Notes: | Book Value | Liquidation Value Low | Liquidation Value High | Liquidation Value As a Percent of Book Value Low | High |
|---|---|---|---|---|---|---|
| **Assets** | | | | | | |
| Cash & cash equivalents | | $ 49 | $ 49 | $ 49 | 100.0% | 100.0% |
| Interco receivable - Mexico | [2] | 45 | - | - | 0.0% | 0.0% |
| Accounts receivable, net | [2] | 1,821 | 1,366 | 1,457 | 75.0% | 80.0% |
| Employee receivable | | 6 | - | - | 0.0% | 0.0% |
| Workman's comp. deposit | [3] | 10 | - | - | 0.0% | 0.0% |
| Receivable - Misc | | 5 | - | - | 0.0% | 0.0% |
| Inventories, net | [2] | 161 | - | 16 | 0.0% | 10.0% |
| Prepaid expenses and other current assets | [4] | 152 | - | 8 | 0.0% | 5.0% |
| Total current assets | | $ 2,249 | $ 1,415 | $ 1,530 | 62.9% | 68.0% |
| Investment/CBT in Mexico | [5] | $ 2,438 | $ 122 | $ 366 | 5.0% | 15.0% |
| Property, plant, equipment, and software | | $ 5,157 | $ 2,063 | $ 2,063 | 40.0% | 40.0% |
| Accumulated depreciation | | 2,205 | 882 | 882 | 40.0% | 40.0% |
| Property, plant & equipment, net | [2] | $ 2,952 | $ 1,181 | $ 1,181 | 40.0% | 40.0% |
| Other long-term assets | [7] | 22 | 16 | 16 | 71.8% | 71.8% |
| Total Assets - Net | | $ 7,661 | $ 2,733 | $ 3,092 | 35.7% | 40.4% |
| **Administrative Expenses** | | | | | | |
| Chapter 11 Fees | | | $ 300 | $ 300 | | |
| Chapter 7 Trustee | [2], [8] | | 105 | 116 | | |
| Admin. Fees - Legal | | | 30 | 30 | | |
| Admin. Fees - Accounting | | | 15 | 15 | | |
| Accounts Receivable Collection fees | | | 341 | 364 | | |
| Net Recovery | | | $ 1,942 | $ 2,267 | | |

Notes:
[1] Based on Management's estimates.
[2] We have considered *Cimino Brothers Preliminary Hypothetical Liquidation Analysis* dated October 1.
[3] Deposits for Workers Comp, etc. Typically very little recovery in this area.
[4] Prepaid other expense includes prepaid attorney fees.
[5] Improvements and equipment in Mexico.
[6] Major assets include the cooling rooms in Laredo, and Mexico.
[7] Other long-term assets includes security deposit of $15.8k and loan fees of $6.4k.
[8] Chapter 7 Trustee fees are calculated thus:

    25% of first      $ 5,000
    10 % of next    $ 45,000
    5% of next      $950,000
    3% of balance

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 143 of 171

## LIQUIDATION UNDER CHAPTER 7

| Claim Class | Creditor | Type | Claim Amount | Collateral Fair Value Limitation | Pro-Rata Allocation of Funds | Deficiency |
|---|---|---|---|---|---|---|
| 1 | Bank of America | Secured | $235,000 | $235,000 | $140,487 | $94,513 |
| 2 | Chase Home Finance | Secured | 30,000 | 30,000 | 17,935 | 12,065 |
| 3 | Bank of America | Secured | 1,061,066 | 1,061,066 | 634,325 | 426,741 |
| 4 | South Texas Business Fund | Secured | 680,000 | 680,000 | 406,517 | 273,483 |
| 5 | Bank of the West | Secured | 19,500 | 19,500 | 11,657 | 7,843 |
| 6 | Bank of the West | Secured | 90,000 | 90,000 | 53,804 | 36,196 |
| 7 | Bank of the West | Secured | 89,000 | 89,000 | 53,206 | 35,794 |
| 8 | Cisco Systems Capital Corporation | Secured | 100,000 | 10,000 | 5,978 | 94,022 |
| 9 | Chase Auto Finance | Secured | 16,000 | 16,000 | 9,565 | 6,435 |
| 10 | Ford Motor Credit | Secured | 2,400 | 2,400 | 1,435 | 965 |
| 11 | Ford Motor Credit | Secured | 17,000 | 17,000 | 10,163 | 6,837 |
| 12 | Ford Motor Credit | Secured | 16,000 | 16,000 | 9,565 | 6,435 |
| 13 | Ford Motor Credit | Secured | 26,000 | 26,000 | 15,543 | 10,457 |
| 14 | GMAC | Secured | 1,300 | 1,300 | 777 | 523 |
| 15 | Wells Fargo Bank | Secured | 6,300,000 | 2,000,000 | 1,195,638 | 5,104,362 |
| | | | $8,683,266 | $4,293,266 | $2,566,596 | $6,116,670 |

A liquidation is expected to yield $2,566,596.

There are insufficient funds available to satisfy secured claims and no funds available for unsecured claimants. The above assumes an add back of Chapter 11 administrative claims as those are assumed unpaid, and it assur the payment of Chapter 7 administrative claims.

## REORGANIZATION PURSUANT TO PLAN

| Claim Class | Creditor | Type | Claim Amount | Collateral Fair Value Limitation | Pro-Rata Allocation of Funds | Deficiency |
|---|---|---|---|---|---|---|
| 1 | Bank of America | Secured | $235,000 | $235,000 | $235,000 | - |
| 2 | Chase Home Finance | Secured | 30,000 | 30,000 | 30,000 | - |
| 3 | Bank of America | Secured | 1,061,066 | 1,061,066 | 1,061,066 | - |
| 4 | South Texas Business Fund | Secured | 680,000 | 680,000 | 680,000 | - |
| 5 | Bank of the West | Secured | 19,500 | 19,500 | 19,500 | - |
| 6 | Bank of the West | Secured | 90,000 | 90,000 | 90,000 | - |
| 7 | Bank of the West | Secured | 89,000 | 89,000 | 89,000 | - |
| 8 | Cisco Systems Capital Corporation | Secured | 100,000 | 10,000 | 10,000 | 90,000 |
| 9 | Chase Auto Finance | Secured | 16,000 | 16,000 | 16,000 | - |
| 10 | Ford Motor Credit | Secured | 2,400 | 2,400 | 2,400 | - |
| 11 | Ford Motor Credit | Secured | 17,000 | 17,000 | 17,000 | - |
| 12 | Ford Motor Credit | Secured | 16,000 | 16,000 | 16,000 | - |
| 13 | Ford Motor Credit | Secured | 26,000 | 26,000 | 26,000 | - |
| 14 | GMAC | Secured | 1,300 | 1,300 | 1,300 | - |
| 15 | Wells Fargo Bank | Secured | 6,300,000 | 2,000,000 | 2,000,000 | 4,300,000 |
| | | | $8,683,266 | $4,293,266 | $4,293,266 | $4,390,000 |

Deficiency amount of $4.39 Million becomes unsecured

**Administrative Claims**

| | | | | | | |
|---|---|---|---|---|---|---|
| | Administrative Professionals | Admin. | 300,000 | 300,000 | 300,000 | - |

$250,000 of "new value" contribution allocated to administrative clai

**Priority Claims**

| | | | | | | |
|---|---|---|---|---|---|---|
| | Priority Tax Claim | Priority | 73,000 | 73,000 | 73,000 | - |

**General Unsecured Claims**

| | | | | | | |
|---|---|---|---|---|---|---|
| 16 | General Unsecured Claims | Gen. Uns. | 7,106,554 | 7,106,554 | 7,106,554 | - |

Comprised approximately of $1.8 Million Vendor debt and $4.39 Million Defic and a $916,554 claim by TIN
$100,000 received on Effective Date from "new value" contribution

**DRAFT**

**Cimino Brothers**
**Preliminary Hypothetical Liquidation Analysis (prepared by Scouler & Co.)**
**($ Thousands)**

| | F/S Balance | Percentage Realization Low | High | Realization Amount Low | High | Ref |
|---|---|---|---|---|---|---|
| Cash and cash equivalents | 40 | 100.0% | 100.0% | 40 | 40 | 1 |
| Trade A/R | 1,724 | 16.7% | 26.6% | 288 | 459 | 2 |
| Grower Advances | 6,509 | 0.0% | 0.0% | - | 381 | 3 |
| Inventories | 101 | 90.0% | 100.0% | 91 | 101 | 4 |
| Prepaid expenses and other current assets | 81 | 0.0% | 10.0% | - | 15 | 5 |
| Intellectual Property | - | | | 2 | 10 | 6 |
| | | | | | | |
| Property, Plant & Equipment, net | 4,731 | 42.3% | 63.4% | 2,000 | 3,000 | 7 |
| Mortgages | | | | (3,107) | (3,107) | 8 |
| Net Estimated Proceeds from PPE | | | | - | - | |
| Estimated liquidation proceeds | | | | 421 | 1,005 | |
| Operating expenses | | | | 200 | 100 | 9 |
| Net estimated liquidation proceeds | | | | 221 | 905 | |
| Claims | | | | | | |
| Secured - Wells Fargo | | | | 6,561 | 6,561 | 10 |
| Estimated Recovery for Wells Fargo | | | | 3% | 14% | |
| Trade Accounts Payable | | | | 2,361 | 2,361 | 11 |
| Recovery for Trade Creditors | | | | 0% | 0% | |

(1) This reflects latest Cash on Hand information as of Oct 1.

(2) See attached Schedule "9-30 AR Aging" Estimates reflect Total Realizable given current aging

(3) Awaiting detail of this from client

(4) See attached Schedule B - Inventory. Product inventory of $110K, and remainder is cartons and supplies. Scenarios reflect current peak market pricing.

(5) Deposits for Workers Comp, etc. Typically very little recovery in this area.

(6) Estimated value of the Brocolli.Net domain. Nothing on the books, but could have resale value

(7) Additional Evaluation necessary, but major assets are the Cooling rooms in Laredo TX, and Mexico

(8) Mortgages on Fixed Assets

(9) Further Administrative costs to wind down the company.

(10) Latest Statement at 9.30

(11) Current Debt summary from Phil Catalano, 6/30, (most recent available)
Current Estimated Value of Trade A/P

Case: 09-60291    Doc# 143    Filed: 06/21/10    Entered: 06/21/10 11:19:28    Page 145 of 171

# EXHIBIT D

| Creditor | Claim No. | FILED CLAIM Date Claim Filed | Secured | Priority | General Unsecured | SCHEDULED CLAIM Scheduled "D" Secured | Scheduled "E" Priority | Scheduled "F" Unsecured | D/C U/C |
|---|---|---|---|---|---|---|---|---|---|
| 5 Star | 27 | 1/5/10 | | | $2,500.00 | | | $2,500.00 | |
| A. Smith Trucking Inc | 17 | 12/22/09 | | | $31,590.00 | | | $5,850.00 | |
| ACETYLENE OXYGEN COMPNAY | | | | | | | | $208.20 | |
| Aling House Pest Control | 1 | 12/7/09 | | | $120.00 | | | $60.00 | |
| AIRGAS SOUTHWEST | | | | | | | | $2.97 | |
| ALLIANCE TRANSPORT | | | | | | | | $5,200.00 | |
| Alvarez Truck Brokers of Florida Inc | 53 | 3/8/10 | | | $8,940.00 | | | $8,800.00 | |
| American Express | 26 | 12/31/09 | | | $6,848.61 | | | | |
| American Express | 30 | 1/13/10 | | | $288.24 | | | | |
| American Express | 43 | 2/4/10 | | | $21,387.87 | | | | |
| American Express | 47 | 2/12/10 | | | $42,872.41 | | | | |
| AMERICAN EXPRESS | | | | | | | | $6,918.82 | |
| ANTHEM BLUE CROSS | | | | | | | | $5,886.00 | |
| AT & T | | | | | | | | $1,505.61 | |
| AT & T | | | | | | | | $509.97 | |
| AT&T | | | | | | | | $197.92 | |
| B&T A Gov't Lending | | | | | | $1,049,630.00 | | | |
| B&T A Mortgage | | | | | | $242,487.00 | | | |
| B&Y Express | 52 | 2/19/10 | | | $1,800.00 | | | $1,800.00 | |
| Bank of the West | | | | | | $19,574.00 | | | |
| Bank of the West | | | | | | $91,123.00 | | | |
| Bank of the West | | | | | | $89,486.00 | | | |
| BELARUS EXPRESS | | | | | | | | $0.00 | |
| BFI WASTE SERVICES OF SALINAS | | | | | | | | $73.10 | |
| BLAS TRUCKING | | | | | | | | $750.00 | |
| Briggs Equipment | 51 | 2/22/10 | | | $21,963.50 | | | | |
| Bug Busters Termite & Pest Control | 44 | 2/8/10 | | | $811.89 | | | $541.26 | |
| Clark Inc | 12 | 12/11/09 | | | $11,490.00 | | | $9,300.00 | |
| CAL-TEX TRANSPORTATION LLC | | | | | | | | $12,989.50 | |
| CGI Inc | 8 | 12/9/09 | | | $5,760.00 | | | $5,760.00 | |
| Chase Auto Finance | | | | | | $16,405.00 | | | |
| CHASE AUTO FINANCE | | | | | | | | $0.00 | |
| CHASE CARD SERVICES | | | | | | | | $14,624.49 | |
| Chase Home Finance | | | | | | | | | |
| Chase Home Finance | 31 | 1/14/10 | $31,040.04 | | | $31,154.00 | | | |
| CHH BUSINESS CARD | | | | | | | | $23,116.65 | |
| City of Laredo | 19 | 12/23/09 | | $17,133.53 | | | | | |
| CITY OF LAREDO UTILITIES | | | | | | | | $1,059.31 | |
| CITY OF SALINAS | | | | | | | | $222.00 | |
| COMPASSION INTERNATIONAL | | | | | | | | $44.00 | |
| Compton Brokerage LTD | 41 | 2/2/10 | | | $126,690.70 | | | $126,590.70 | |
| COOL RUNNINGS LOGISTICS INC | | | | | | | | $6,300.00 | |
| Covenant Transport Solutions, Inc. | 14 | 12/18/09 | | | $1,510.00 | | | $1,400.00 | |
| DH Page Landen Financial Services Inc | 55 | 3/9/10 | $87,090.09 | | | | | | |
| Desi Enterprises Inc | | | | | | | | | |
| DRIFTERS EXPRESS LLC | 34 | 1/22/10 | | | $1,400.00 | | | $29,085.00 | |
| Eagle Capital Corp | 64 | 3/18/10 | | | $2,300.00 | | | | |
| EAGLEFLY TRUCKING INC | | | | | | | | $3,300.00 | |
| ECOLAB Inc | | | | | | $1,277.68 | | | $1,277.68 |
| ED-HER PLASTICS INC | 50 | 2/16/10 | | | $1,167.15 | | | | |

| Creditor | Claim No. | Filed/Claim Date | Filed Claim Secured | Filed Priority | Filed General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | c | u | d |
|---|---|---|---|---|---|---|---|---|---|---|---|
| E-F'S NETWORK | | | | | | | | $770.00 | | | |
| EMERALD PACKAGING | 25 | 12/30/09 | | | | | | $499.80 | | | |
| Equipment Depot | | | | | $5,720.76 | | | $2,143.05 | | | |
| ERNESTO ALCALA DE LA FUENTE | | | | | | | | $1,632.84 | | | |
| FEDERAL EXPRESS | | | | | | | | $183.32 | | | |
| Fleet Fueling Systems Ltd | 45 | 2/8/10 | | $440.16 | | | | | | | |
| FLEET FUELING SYSTEMS LTD | | | | | | | | $118.73 | | | |
| FORD CREDIT | | | | | | | | $1,633.49 | | | |
| Ford Motor Credit Co | 11 | 12/11/09 | $1,782.36 | | | | | | | | |
| Flo Express | 62 | 3/16/10 | | | $185,742.00 | | | $165,850.00 | | | |
| Georgia-Pacific Corrugated LLC | 22 | 12/28/09 | | $12,272.26 | | | | | | | |
| GILTNER, INC | | | | | | | | $1,100.00 | | | |
| GMAC | 7 | 12/9/09 | $6,432.90 | | | | | | | | |
| Gonzalez Trucking SA de CV | 63 | 3/15/10 | | | $477,931.93 | | | $383,077.38 | | | |
| GRAINGER | | | | | | | | $1.67 | | | |
| GREEN MOUNTAIN ENERGY | | | | | | | | $9,251.71 | | | |
| GRIFFITH | | | | | | | | $2,700.00 | | | |
| Glower Ice Company | 3 | 12/7/09 | | | $11,229.13 | | | $11,229.13 | | | |
| H-T BAR INC | | | | | | | | $11,440.00 | | | |
| GOLDEN PRODUCE INC | 9 | 12/10/09 | | | $5,475.00 | | | $82,794.00 | | | |
| Hyder Transportation LLC | | | | | | | | $5,475.00 | | | |
| ECO SYSTEMS NA RPC DIVISION | 60 | 3/16/10 | | | $32,412.39 | | | $6,610.80 | | | |
| Int'l Customhouse Brokerage Svcs | 48 | 2/12/10 | | | $131,404.00 | | | $27,350.39 | | | |
| Intrade Industries Inc | 49 | 2/12/10 | | | $131,404.00 | | | | | | |
| Intrade Industries Inc | 28 | 1/6/10 | | | $1,192.66 | | | $39,767.00 | | | |
| IRS | | | | $7,017.88 | | | | | | | |
| IRRADENETWORK INC | | | | | | | | $416.00 | | | |
| J.D. FLORES TRUCKING | | | | | | | | $425.00 | | | |
| JAVCO | | | | | | | | $5,840.00 | | | |
| JOE CIMINO | | | | | | | | $761.19 | | | |
| Johnson Feed Inc | 2 | 12/7/09 | | | $3,253.33 | | | $3,100.00 | | | |
| JP Morgan Chase Bank | 6 | 12/9/09 | $17,091.26 | | | | | | | | |
| JUST TRUCKING LTD | | | | | | | | $5,930.00 | | | |
| KELVIA DEL SOCORRO CERVANTES NINO | 32 | 1/1/10 | | | $36,570.00 | | | $3,396.00 | | | |
| KEYSTONE LOGISTICS | | | | | | | | $2,470.00 | | | |
| L&H Transportation Inc | | | | | | | | $30,685.00 | | | |
| LAREDO ALARM SYSTEMS INC | 40 | 1/26/10 | $2,007.93 | | | | | | $127.72 | | | |
| Laredo Community College | | | | | | | | | | | |
| LAREDO COUNTRY CLUB | | | | | | | | $798.22 | | | |
| LAVORATO HOUSE CHILTON & LAVORATO | | | | | | | | $150.00 | | | |
| LAW OFFICE OF MICHELLE QUINTANILLA | | | | | | | | $1,000.00 | | | |
| LOGISTIC DYNAMICS, INC | 10 | 12/10/09 | | | $21,327.25 | | | $3,000.00 | | | |
| Marthy Truacking Inc | | | | | | | | $7,800.00 | | | |
| MAYEKAWA U.S.A. INC | | | | | | | | $10,920.88 | | | |
| MCCARRON & DIESS | | | | | | | | $34.50 | | | |
| Mobile Mini | 5 | 12/8/09 | | | $1,064.30 | | | | | | |
| Mobile Mini | 21 | 12/28/09 | | | $989.93 | | | $530.34 | | | |
| MOHLER NIXON & WILLIAMS | | | | | | | | $13,157.00 | | | |
| MONTEREY COUNTY TAX COLLECTOR | | | | | | | | $3,728.70 | | | |
| MRWPCA | | | | | | | | $40.78 | | | |

| Creditor | Claim No. | Date Claim Filed | Filed Claim Secured | Filed Claim Priority | Filed Claim General Unsecured | Scheduled Secured "D" | Scheduled Priority "E" | Scheduled Unsecured "F" | c/u/d |
|---|---|---|---|---|---|---|---|---|---|
| MUSCULAR DYSTROPHY ASSOCIATION | | | | | | | | $100.00 | |
| NEWCAL INDUSTRIES | | | | | | | | | |
| NEXTEL COMMUNICATIONS/SPRINT | | | | | | | | $868.50 | |
| NH3 Services LLC | 36 | 1/22/10 | | | $1,219.49 | | | $1,810.85 | |
| NIIHG Financal Services Inc | 58 | 3/16/10 | | | $101,569.50 | | | $1,219.49 | |
| OFFICE DEPOT | | | | | | | | | |
| OR A Roll Trucking Inc | 18 | 12/22/09 | | | $5,695.00 | | | $118.04 | |
| PAUL YOUNG | | | | | | | | $744.80 | |
| PERFORMANCE FOOD GROUP | | | | | | | | $0.00 | |
| Person, Whitworth, Borchers & Morales LLP | 61 | 3/23/10 | $57,068.02 | | | | | $47,051.36 | |
| PG&E | 33 | 1/20/10 | | | $1,061.91 | | | $823.29 | |
| PRO-ACT LLC | | | | | | | | $2,349.50 | |
| Produce Careers Inc | 29 | 1/6/10 | | | $17,000.00 | | | $758.33 | |
| PRODUCE COM | | | | | | | | $25.50 | |
| PURE WATER BOTTLING COMPANY | | | | | | | | $264.50 | |
| Qprintalab | | | | | $2,205.00 | | | $8,435.00 | |
| R&L TRANSPORTATION INC | 46 | 2/10/10 | | | | | | $19,736.27 | |
| RABOBANK N A | | | | | | | | $180.00 | |
| REAL TIME FREIGHT SERVICES, LLC | | | | | | | | $68.85 | |
| RED SHIFT INTERNET SERVICES | | | | | | | | $339.36 | |
| RELIANT ENERGY | | | | | | | | | |
| Reusable Container Co | 54 | 3/8/10 | | | $13,226.28 | | | | |
| Reusable Container Co | 56 | 3/10/10 | | | $13,226.28 | | | | |
| RM Compton Transport Inc | 42 | 2/2/10 | | | $41,490.00 | | | | |
| Rockdale Transport Services Inc | 37 | 1/25/10 | | | $12,960.00 | | | $34,975.00 | |
| ROYAL TREATMENT CAR WASH | | | | | | | | $7,110.00 | |
| Ryan & Janowsky LLP | 39 | 1/26/10 | | | $32,575.46 | | | $149.75 | |
| Salinas Valley Landscaping Co | 38 | 1/25/10 | | | $370.81 | | | $9,127.32 | |
| SAM KHOLI TRANSPORT | | | | | | | | $125.00 | |
| Sample Enterprises Inc | 24 | 12/29/09 | | $137.87 | | | | $4,200.00 | |
| SAM'S CLUB | | | | | | | | $137.87 | |
| South Transportation Inc | 4 | 12/7/09 | | | $1,995.00 | | | $0.40 | |
| Southern Sanitation | 15 | 12/21/09 | | | $251.19 | | | $1,900.00 | |
| SPLASH POOLS & SPAS | | | | | | | | $313.99 | |
| SPRINT | | | | | | | | $151.56 | |
| SPRINT | | | | | | | | $372.77 | |
| SPRINT | | | | | | | | $175.43 | |
| Sprint Nextel Corres. | 16 | 2/10/10 | | | $3,467.42 | | | $680.69 | |
| STATE COMPENSATION INSURANCE FUND | | | | | | | | $50,233.78 | |
| STEPHANIE G CIMINO | | | | | | | | $180.00 | |
| TEXAS ELECTRICAL | | | | | | | | $0.00 | Will be treated as unsecured |
| THE LAREDO CHAMBER OF COMMERCE | | | | | | | | | |
| TIN Inc dba Temple-Island | 57 | 3/15/10 | $916,554.04 | | | | | $0.00 | |
| Total Quality Logistics | 23 | 12/29/09 | | | $154,806.92 | | | $148,506.93 | |
| TRANSPORTES UNIDOS CASTANEDA S A DE CV | | | | | | | | $8,400.00 | |
| TRIPLE-S STEEL/ INTSEL STEEL | | | | | | | | $927.72 | |
| UGI, Inc. | 13 | 12/11/09 | | | $3,423.20 | | | $2,600.00 | |
| UniFirst Holdings LP | 35 | 1/22/10 | | | $12,427.34 | | | | |
| UNITED AGRICULTURAL BENEFIT TRUST | | | | | | | | $720.00 | |
| United Independent School District | 20 | 12/23/09 | $25,732.38 | | | | | $404.27 | |

| | | | FILED CLAIM | | | SCHEDULED CLAIM | | | |
|---|---|---|---|---|---|---|---|---|---|
| Creditor | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Secured Schedule "D" | Priority Schedule "E" | Unsecured Schedule "F" | C/U/D |
| USDA AMS | | | | | | | | $0.00 | |
| USDA AMS | | | | | | | | $0.00 | |
| Verizon | 65 | 4/12/10 | | | $243.98 | | | | |
| VINCE CIMINO | | | | | | | | $116,441.09 | |
| VINCENT A CIMINO | | | | | | | | $4,862.18 | |
| Wells Fargo Bank | 59 | 3/16/10 | $6,350,207.00 | | | | | | |

# EXHIBIT E

**C H E C K   R E G I S T E R   B Y** 5.14.04 PM

SELECTION: From Year = 2009; From Period = 9 Thru Year = 2009; Thru Period = 12

| VENDOR CODE BANK | NAME | CHECK DATE | NO | CHECK AMT |
|---|---|---|---|---|
| | 1 Wells Fargo Bank-Checking Ac 2572 | | | |
| CHAHOM | CHASE HOME FINANCE | 11/22/2009 | 2305 | 346.27 |
| STACCO | STACIE COOPER | 9/1/2009 | 44790 | 810.07 |
| USDAVA | USDA AMS- PACA BRANCH | 9/1/2009 | 44791 | 100.00 |
| AMEXLA | AMERICAN EXPRESS | 9/4/2009 | 44793 | 898.00 |
| AMELIF | AMERITAS LIFE INSURANCE CORP | 9/4/2009 | 44794 | 5689.18 |
| SBCDAL | AT&T | 9/4/2009 | 44795 | 1299.40 |
| | AT&T | 9/4/2009 | 44796 | 249.24 |
| CAPSER | CHASE CARD SERVICES | 9/4/2009 | 44798 | 332.35 |
| CITLAR | CITY OF LAREDO UTILITIES | 9/4/2009 | 44799 | 1252.98 |
| CITOFS | CITY OF SALINAS | 9/4/2009 | 44800 | 420.00 |
| CONELE | CONSOLIDATED ELECTRICAL DIST | 9/4/2009 | 44802 | 207.74 |
| DRGTEC | DRG TECHNOLOGIES, INC | 9/4/2009 | 44803 | 432.08 |
| DRIEXP | DRIFTERS EXPRESS LLC | 9/4/2009 | 44804 | 3835.00 |
| FEDEXP | FEDERAL EXPRESS | 9/4/2009 | 44806 | 27.97 |
| FORCRE | FORD CREDIT | 9/4/2009 | 44807 | 531.17 |
| FORCRE | FORD CREDIT | 9/4/2009 | 44808 | 598.41 |
| FROSEL | FRONTIER SELF STORAGE | 9/4/2009 | 44809 | 119.00 |
| GRAING | GRAINGER | 9/4/2009 | 44811 | 396.17 |
| HTBAR | H T BAR INC | 9/4/2009 | 44812 | 5100.00 |
| INTTRU | INTERNET TRUCKS I OP | 9/4/2009 | 44816 | 150.00 |
| ITRADE | ITRADENETWORK INC | 9/4/2009 | 44817 | 418.00 |
| JOECIM | JOE CIMINO | 9/4/2009 | 44818 | 761.19 |
| LHTRAN | L & H TRANSPORTATION INC | 9/4/2009 | 44820 | 2200.00 |
| LARDIS | LAREDO DISCOUNT METALS | 9/4/2009 | 44821 | 391.84 |
| MARCED | MARIA CEDILLO | 9/4/2009 | 44822 | 491.67 |
| PACTEC | PACKAGING TECHNOLOGY CENTER | 9/4/2009 | 44823 | 2925.00 |
| RCYPAC | ROYAL PACKAGING | 9/4/2009 | 44825 | 1296.55 |
| SMITRA | SMITH TRANSPORTATION INC | 9/4/2009 | 44826 | 2085.00 |
| TEXCHI | TEXAS CHILD SUPPORT SDU | 9/4/2009 | 44827 | 184.76 |
| TG | TG | 9/4/2009 | 44828 | 87.51 |
| TEXCH1 | TX CHILD SUPPORT SDU | 9/4/2009 | 44830 | 185.48 |
| WEBCOU | WEBB COUNTY TAX ASSESSOR-COLLECTOR | 9/4/2009 | 44831 | 71.80 |
| ASSPAC | ASSOCIATED PACKAGING  INC | 9/10/2009 | 44833 | 325.73 |
| ATTCA | AT & T | 9/10/2009 | 44834 | 6489.65 |
| ATTCA | AT&T | 9/10/2009 | 44835 | 270.03 |
| SBCDAL | AT &T | 9/10/2009 | 44836 | 501.54 |
| BUGBUS | BUG BUSTERS TERMITE & PEST CONTROL | 9/10/2009 | 44837 | 433.01 |
| FORCRE | FORD CREDIT | 9/10/2009 | 44842 | 1127.61 |
| GREMOU | GREEN MOUNTAIN ENERGY | 9/10/2009 | 44846 | 10573.14 |
| JAVCO | JAVCO | 9/10/2009 | 44852 | 5940.00 |
| MOBMIN | MOBILE MINI | 9/10/2009 | 44854 | 251.42 |
| PITBOW | PITNEY BOWES INC | 9/10/2009 | 44856 | 198.31 |
| POSHAR | POST HARVEST TECHNOLOGIES | 9/10/2009 | 44857 | 150.11 |
| PRILAS | PRIMUS LABS.COM | 9/10/2009 | 44858 | 625.00 |
| PROENE | PROPANE ENERGY LTD | 9/10/2009 | 44859 | 6.82 |
| SHEWIL | SHERWIN WILLIAMS CO | 9/10/2009 | 44861 | 123.59 |
| SPRIGA | SPRINT | 9/10/2009 | 44863 | 172.58 |
| SPRILA | SPRINT | 9/10/2009 | 44864 | 315.54 |
| SPRINJ | SPRINT | 9/10/2009 | 44865 | 80.12 |
| TEXMUT | TEXAS MUTUAL INSURANCE COMPANY | 9/10/2009 | 44866 | 3410.00 |
| GONTHU | GONZALEZ TRUCKING | 9/10/2009 | 44868 | 17780.00 |
| GONTRU | GONZALEZ TRUCKING | 9/10/2009 | 44870 | 18096.00 |
| AMEXLA | AMERICAN EXPRESS | 9/18/2009 | 44895 | 557.00 |
| ASHTER | ASASH TERMITE & PEST CONTROL | 9/18/2009 | 44896 | 194.85 |
| CASBRA | CASTLE BRANCH, INC | 9/18/2009 | 44896 | 55.00 |
| CITOFS | CITY OF SALINAS | 9/18/2009 | 44899 | 111.00 |
| CCMPIN | COMPASSION INTERNATIONAL | 9/18/2009 | 44900 | 44.00 |
| FEDEXP | FEDERAL EXPRESS | 9/18/2009 | 44903 | 36.31 |
| GRAING | GRAINGER | 9/18/2009 | 44906 | 107.16 |
| IFCO | IFCO SYSTEMS NA RPC DIVISION | 9/18/2009 | 44911 | 2716.00 |
| LARALA | LAREDO ALARM SYSTEMS INC | 9/18/2009 | 44912 | 127.72 |
| LARCOU | LAREDO COUNTRY CLUB | 9/18/2009 | 44915 | 479.06 |
| MOBMIN | MOBILE MINI | 9/18/2009 | 44914 | 279.92 |
| PGE | P G & E | 9/18/2009 | 44915 | 30.50 |
| POSHAR | POST HARVEST TECHNOLOGIES | 9/18/2009 | 44917 | 710.81 |
| RABOWI | RABOBANK  N A | 9/18/2009 | 44919 | 936.81 |
| REDSHI | RED SHIFT INTERNET SERVICES | 9/18/2009 | 44920 | 1150.00 |
| RELENE | RELIANT ENERGY | 9/18/2009 | 44921 | 86.85 |
| SHEWIL | SHERWIN WILLIAMS CO | 9/18/2009 | 44922 | 650.73 |
| SOUSAN | SOUTHERN SANITATION | 9/18/2009 | 44925 | 102.79 |
| SPRIMO | SPRINT | 9/18/2009 | 44926 | 332.08 |
| SYSPRO | SYSCO PRODUCE | 9/18/2009 | 44927 | 19.40 |
| TEMMEC | TEMPRITE MECHANICAL | 9/18/2009 | 44928 | 7490.25 |
| TENSAL | TENNANT SALES & SERVICE COMPANY | 9/18/2009 | 44929 | 440.56 |
| TEXCHI | TEXAS CHILD SUPPORT SDU | 9/18/2009 | 44930 | 536.00 |
| TG | TG | 9/18/2009 | 44931 | 184.76 |
| | | 9/18/2009 | 44932 | 87.51 |

| UNIHOL | UNIFIRST HOLDINGS L P | 9/18/2009 | 44934 | 1309.65 |
| ATTGA | AT & T | 9/25/2009 | 44941 | 751.15 |
| ATTCA | AT & T | 8/25/2009 | 44942 | 680.64 |
| BFIWAS | BFI WASTE SERVICES OF SALINAS | 9/25/2009 | 44943 | 87.60 |
| BRIEQU | BRIGGS EQUIPMENT | 9/25/2009 | 44944 | 708.64 |
| CALWAT | CALIFORNIA WATER SERVICE CO | 9/25/2009 | 44945 | 33.21 |
| CITLAR | CITY OF LAREDO UTILITIES | 9/25/2009 | 44946 | 138.53 |
| FEDEXP | FEDERAL EXPRESS | 9/25/2008 | 44950 | 40.84 |
| FROSEL | FRONTIER SELF STORAGE | 9/25/2009 | 44951 | 119.00 |
| HSABAN | HSA BANK | 9/25/2009 | 44958 | 1800.00 |
| INNWOR | INNERWORKINGS | 9/25/2009 | 44958 | 25.00 |
| MRWPCA | MRWPCA | 9/25/2009 | 44960 | 40.78 |
| NEXCOM | NEXTEL COMMUNICATIONS/SPRINT | 9/25/2009 | 44961 | 602.19 |
| PRILAS | PRIMUS LABS COM | 9/25/2009 | 44962 | 825.00 |
| PROACT | PRO*ACT LLC | 9/25/2009 | 44965 | 2954.00 |
| PURWAT | PURE WATER BOTTLING COMPANY | 9/25/2009 | 44964 | 11.25 |
| REATIM | REAL TIME FREIGHT SERVICES, LLC | 9/25/2009 | 44965 | 160.00 |
| SALVAL | SALINAS VALLEY LANDSCAPING CO | 9/25/2009 | 44967 | 125.00 |
| SAMENT | SAMPLE ENTERPRISES INC | 9/25/2009 | 44968 | 182.76 |
| SHELL | SHELL | 9/25/2009 | 44969 | 1384.20 |
| SPRIGA | SPRINT | 9/25/2009 | 44970 | 518.78 |
| STACOM | STATE COMPENSATION INSURANCE FUND | 9/25/2009 | 44971 | 429.00 |
| UNIHOL | UNIFIRST HOLDINGS L P | 9/25/2009 | 44972 | 118.95 |
| VERWIR | VERIZON WIRELESS | 9/25/2009 | 44973 | 290.53 |
| ACEOXY | ACETYLENE OXYGEN COMPNAY | 10/2/2009 | 44991 | 63.83 |
| AILHOU | AILING HOUSE PEST CONTROL | 10/2/2009 | 44992 | 60.00 |
| ATTCA | AT & T | 10/2/2009 | 44993 | 7282.53 |
| BLATRU | BLAS TRUCKING | 10/2/2009 | 44994 | 900.00 |
| BLUCRO | ANTHEM BLUE CROSS | 10/2/2009 | 44995 | 5696.00 |
| CITLAR | CITY OF LAREDO UTILITIES | 10/2/2009 | 44996 | 270.30 |
| COMPIN | COMPASSION INTERNATIONAL | 10/2/2009 | 44997 | 44.00 |
| FEDEXP | FEDERAL EXPRESS | 10/2/2009 | 45002 | 40.21 |
| FORCRE | FORD CREDIT | 10/2/2009 | 45003 | 599.41 |
| JAVCO | JAVCO | 10/2/2009 | 45009 | 5840.00 |
| JOECIM | JOE CIMINO | 10/2/2009 | 45010 | 761.19 |
| LARALA | LAREDO ALARM SYSTEMS INC | 10/2/2009 | 45013 | 127.72 |
| OFFDEP | OFFICE DEPOT | 10/2/2009 | 45014 | 288.05 |
| SPLPOO | SPLASH POOLS & SPAS | 10/2/2009 | 45016 | 87.66 |
| STACOO | STACIE COOPER | 10/2/2009 | 45017 | 796.09 |
| STPAUL | TRAVELERS | 10/2/2009 | 45018 | 4913.20 |
| TEXCHI | TEXAS CHILD SUPPORT SDU | 10/2/2009 | 45019 | 184.76 |
| TG | TG | 10/2/2009 | 45020 | 85.90 |
| UNIHOL | UNIFIRST HOLDINGS L P | 10/2/2009 | 45022 | 157.21 |
| PERWHI | PERSON WHITWORTH BORCHERS & MORALES, LLP | 10/9/2009 | 45024 | 16900.00 |
| ACEOXY | ACETYLENE OXYGEN COMPNAY | 10/9/2009 | 45025 | 63.39 |
| AMEXLA | AMERICAN EXPRESS | 10/9/2009 | 45026 | 4838.28 |
| ASHTER | ASABH TERMITE & PEST CONTROL | 10/9/2009 | 45027 | 46.71 |
| ATTCA | AT & T | 10/9/2009 | 45028 | 1499.85 |
| ATTCA | AT & T | 10/9/2009 | 45029 | 220.03 |
| BUGBUS | BUG BUSTERS TERMITE & PEST CONTROL | 10/9/2009 | 45030 | 270.93 |
| CITLAR | CITY OF LAREDO UTILITIES | 10/9/2009 | 45031 | 243.90 |
| FEDEXP | FEDERAL EXPRESS | 10/9/2009 | 45034 | 235.99 |
| FLEFUE | FLEET FUELING SYSTEMS LTD | 10/9/2009 | 45035 | 250.19 |
| GREMOU | GREEN MOUNTAIN ENERGY | 10/9/2009 | 45036 | 9569.29 |
| INTTRU | INTERNET TRUCKSTOP | 10/9/2009 | 45041 | 150.00 |
| ITRADE | ITRADENETWORK INC | 10/9/2009 | 45042 | 416.00 |
| MARCED | MARIA CEDILLO | 10/9/2009 | 45044 | 491.67 |
| MOBMIN | MOBILE MINI | 10/9/2009 | 45045 | 253.42 |
| QUANTA | QUANTALAB | 10/9/2009 | 45047 | 60.00 |
| RABOWI | RABOBANK N A | 10/9/2009 | 45048 | 2175.40 |
| REATIM | REAL TIME FREIGHT SERVICES, LLC | 10/9/2009 | 45049 | 160.00 |
| SPLPOO | SPLASH POOLS & SPAS | 10/9/2009 | 45050 | 730.88 |
| STACOM | STATE COMPENSATION INSURANCE FUND | 10/9/2009 | 45052 | 438.00 |
| UNIHOL | UNIFIRST HOLDINGS L P | 10/9/2009 | 45054 | 167.23 |
| USLOGI | US LOGICS, LLC | 10/9/2009 | 45055 | 530.47 |
| AMESUP | AMERICAN SUPPLY COMPANY | 10/19/2009 | 45073 | 116.60 |
| AMEXLA | AMERICAN EXPRESS | 10/19/2009 | 45074 | 619.00 |
| SBCDAL | AT&T | 10/19/2009 | 45076 | 184.44 |
| CITLAR | CITY OF LAREDO UTILITIES | 10/19/2009 | 45078 | 198.00 |
| FEDEXP | FEDERAL EXPRESS | 10/19/2009 | 45077 | 96.15 |
| FLEFUE | FLEET FUELING SYSTEMS LTD | 10/19/2009 | 45078 | 103.56 |
| FORCRE | FORD CREDIT | 10/19/2009 | 45079 | 1127.61 |
| MOBMIN | MOBILE MINI | 10/19/2009 | 45080 | 278.92 |
| OFFDEP | OFFICE DEPOT | 10/19/2009 | 45081 | 198.02 |
| PGE | P G & E | 10/19/2009 | 45082 | 1087.90 |
| PATINI | PATRIA INTERNATIONAL OFFICE SUPPLY | 10/19/2009 | 45083 | 108.04 |
| PURWAT | PURE WATER BOTTLING COMPANY | 10/19/2009 | 45084 | 35.00 |
| REDSHI | RED SHIFT INTERNET SERVICES | 10/19/2009 | 45085 | 66.85 |
| RELENE | RELIANT ENERGY | 10/19/2009 | 45086 | 410.93 |
| SOUSAN | SOUTHERN SANITATION | 10/19/2009 | 45087 | 313.99 |
| SPRICA | SPRINT | 10/19/2009 | 45088 | 81.19 |
| SPRILA | SPRINT | 10/19/2009 | 45089 | 261.83 |
| SPRINU | SPRINT | 10/19/2009 | 45090 | 52.92 |
| TEXCHI | TEXAS CHILD SUPPORT SDU | 10/19/2009 | 45091 | 184.76 |

| | | | | |
|---|---|---|---|---|
| TEXMUT | TEXAS MUTUAL INSURANCE COMPANY | 10/19/2009 | 45092 | 1722.00 |
| TG | TG | 10/19/2009 | 45093 | 120.33 |
| ULINE | ULINE SHIPPING SUPPLY SPECIALISTS | 10/19/2009 | 45094 | 306.87 |
| VEGGRO | VEGETABLE GROWERS SUPPLY CO | 10/19/2009 | 45095 | 130.80 |
| WESTEX | WEST TEXAS WAREHOUSE - EQUIP & SUPPLY | 10/19/2009 | 45096 | 184.00 |
| FEDEXF | FEDERAL EXPRESS FREIGHT | 10/20/2009 | 45097 | 79.10 |
| A1SCAL | A 1 SCALE SERVICE INC | 10/22/2009 | 45098 | 2404.67 |
| AMEXLA | AMERICAN EXPRESS | 10/22/2009 | 45099 | 1840.08 |
| AMELIF | AMERITAS LIFE INSURANCE CORP | 10/22/2009 | 45100 | 1306.30 |
| BLATRU | BLAS TRUCKING | 10/22/2009 | 45101 | 825.00 |
| BUGBUS | BUG BUSTERS TERMITE & PEST CONTROL | 10/22/2009 | 45102 | 182.36 |
| COOGRA | COOPERATIVE GRADING SERVICE | 10/22/2009 | 45103 | 184.40 |
| DIXFLA | DIXIE FLAG MANUFACTURING CO | 10/22/2009 | 45104 | 122.36 |
| FEDEXP | FEDERAL EXPRESS | 10/22/2009 | 45105 | 115.39 |
| FIRALA | FIRST ALARM MONTEREY COUNTY | 10/22/2009 | 45106 | 357.76 |
| GEOPAC | GEORGIA PACIFIC | 10/22/2009 | 45107 | 3847.02 |
| GROICE | GROWER ICE COMPANY | 10/22/2009 | 45108 | 587.06 |
| INTIND | INTRADE INDUSTRIES, INC | 10/22/2009 | 45109 | 7686.00 |
| NEXCOM | NEXTEL COMMUNICATIONS/SPRINT | 10/22/2009 | 45110 | 807.91 |
| PROENE | PROPANE ENERGY LTD | 10/22/2009 | 45111 | 102.00 |
| SATCRE | SATCHELL CREEK EXPRESS | 10/22/2009 | 45112 | 2160.00 |
| SUNPLA | SUNSHINE PLASTICS CORPORATION | 10/22/2009 | 45113 | 7392.57 |
| UARINC | UART, INC | 10/22/2009 | 45114 | 822.20 |
| UNIHOL | UNIFIRST HOLDINGS L P | 10/22/2009 | 45115 | 84.19 |
| USDAMO | USDA AMS PACA BRANCH | 10/22/2009 | 45116 | 520.53 |
| FORCRE | FORD CREDIT | 10/28/2009 | 45117 | 1237.91 |
| ALSMIT | A. L. SMITH TRUCKING INC | 10/30/2009 | 45133 | 3113.00 |
| AILHOU | AILING HOUSE PEST CONTROL | 10/30/2009 | 45134 | 60.00 |
| AMELIF | AMERITAS LIFE INSURANCE CORP | 10/30/2009 | 45136 | 1300.30 |
| ATTCA | AT &T | 10/30/2009 | 45137 | 2724.35 |
| BFIWAS | BFI WASTE SERVICES OF SALINAS | 10/30/2009 | 45138 | 89.44 |
| CALWAT | CALIFORNIA WATER SERVICE CO | 10/30/2009 | 45140 | 35.33 |
| FEDFXF | FEDERAL EXPRESS FREIGHT | 10/30/2009 | 45143 | 2.76 |
| FEDEXP | FEDERAL EXPRESS | 10/30/2009 | 45144 | 57.69 |
| FORCRE | FORD CREDIT | 10/30/2009 | 45145 | 569.41 |
| FROSEL | FRONTIER SELF STORAGE | 10/30/2009 | 45146 | 119.00 |
| INTTRU | INTERNET TRUCKSTOP | 10/30/2009 | 45147 | 150.00 |
| MARCED | MARIA CEDILLO | 10/30/2009 | 45151 | 491.67 |
| MONCSO | MONTEREY COUNTY SHERIFFS OFFICE | 10/30/2009 | 45152 | 613.86 |
| NEWDEP | NEW JERSEY DEPARTMENT OF AGRICLTURE | 10/30/2009 | 45153 | 273.78 |
| OFFDEP | OFFICE DEPOT | 10/30/2009 | 45154 | 180.44 |
| PRILAS | PRIMUS LABS COM | 10/30/2009 | 45156 | 625.00 |
| RESACC | RESERVE ACCOUNT | 10/30/2009 | 45156 | 400.00 |
| RICBAB | THE LAW OFFICE OF RICHARD B ABRAMSON | 10/30/2009 | 45157 | 1942.50 |
| SALVAL | SALINAS VALLEY LANDSCAPING CO | 10/30/2009 | 45158 | 125.00 |
| SHELL | SHELL | 10/30/2009 | 45159 | 1606.94 |
| SPRMO | SPRINT | 10/30/2009 | 45160 | 19.01 |
| STPAUL | TRAVELERS | 10/30/2009 | 45161 | 4338.20 |
| TENDEP | TENNESSEE DEPARTMENT OF AGRICULTURE | 10/30/2009 | 45162 | 212.60 |
| TEXCHI | TEXAS CHILD SUPPORT SDU | 10/30/2009 | 45163 | 184.76 |
| TG | TG | 10/30/2009 | 45184 | 100.85 |
| VERWIR | VERIZON WIRELESS | 10/30/2009 | 45185 | 231.50 |
| PERWHI | PERSON WHITWORTH BORCHERS & MORALES, LLP | 11/4/2009 | 45186 | 20000.00 |
| BANOFA | BANK OF AMERICA NA | 11/2/2009 | 82304 | 7912.66 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 9/8/2009 | 209830 | 25000.00 |
| CITBUS | CITI BUSINESS CARD | 9/8/2009 | 209832 | 910.89 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 9/9/2009 | 209833 | 20000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 9/10/2009 | 209834 | 10000.00 |
| AMEXTX | AMERICAN EXPRESS | 9/14/2009 | 209835 | 4861.56 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 9/17/2009 | 209836 | 20000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 9/21/2009 | 209837 | 65000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 9/24/2009 | 209838 | 20000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 10/5/2009 | 209839 | 25000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 10/8/2009 | 209840 | 25000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 10/9/2009 | 209841 | 25000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 10/13/2009 | 209842 | 8000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 10/15/2009 | 209843 | 10000.00 |
| CITBUS | CITI BUSINESS CARD | 9/10/2009 | 209844 | 311.00 |
| CITBUS | CITI BUSINESS CARD | 10/5/2009 | 209845 | 680.64 |
| CITBUS | CITI BUSINESS CARD | 10/19/2009 | 209846 | 350.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 10/19/2009 | 209847 | 10000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 10/19/2009 | 209848 | 17000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 10/21/2009 | 209849 | 30000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 10/22/2009 | 209850 | 12000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 10/23/2009 | 209851 | 25000.00 |
| MX199T | CBP - MEXICO - BANCOMER - 1997 | 10/29/2009 | 209852 | 25000.00 |
| MX1997 | CBP - MEXICO - BANCOMER - 1997 | 11/2/2009 | 209853 | 25000.00 |
| ARMCPR | ARMAND CIMINO | 11/5/2009 | 209856 | 60000.00 |
| STECPR | STEPHANIE CIMINO | 9/4/2009 | 20082194 | 5483.56 |
| VINCPR | VINCE CIMINO | 9/4/2009 | 20082195 | 5182.41 |
| VINCPR | VINCE CIMINO | 9/4/2009 | 20082196 | 8164.73 |
| CHATHO | CHARLES T HOWARD | 9/4/2009 | 20082197 | 891.09 |
| CHATHO | CHARLES T HOWARD | 9/4/2009 | 20082198 | 370.87 |
| COLSER | COLSON SERVICES | 9/4/2009 | 20082201 | 11058.09 |

| Code | Name | Date | Number | Amount |
|---|---|---|---|---|
| BANOFA | BANK OF AMERICA NA | 9/1/2009 | 20082203 | 7612.68 |
| NMHGFI | NMHG FINANCIAL SERVICES, INC. | 9/1/2009 | 20082204 | 2555.78 |
| GECAPI | GE CAPITAL | 9/1/2009 | 20082205 | 1331.10 |
| FORCRE | FORD CREDIT | 9/1/2009 | 20082206 | 765.70 |
| CHAHOM | CHASE HOME FINANCE | 9/1/2009 | 20082206 | 765.70 |
| CISSYS | CISCO SYSTEMS CAPITAL CRP | 9/2/2009 | 20082207 | 348.27 |
| COUHOM | BANK OF AMERICA HOME MORTGAGE | 9/2/2009 | 20082208 | 9707.78 |
| COUHOM | BANK OF AMERICA HOME MORTGAGE | 9/8/2009 | 20082209 | 3397.75 |
| IRSPR | INTERNAL REVENUE - CALIF | 9/9/2009 | 20082210 | 2296.40 |
| EDDPR | EMPLOYMENT DEV DEPT - CALIF | 9/9/2009 | 20082211 | 5493.44 |
| EDDPR | EMPLOYMENT DEV DEPT - CALIF | 9/9/2009 | 20082213 | 101.35 |
| IRSTX | INTERNAL REVENUE - TEXAS | 9/9/2009 | 20082214 | 834.50 |
| IRSTX | INTERNAL REVENUE - TEXAS | 9/9/2009 | 20082216 | 945.58 |
| IRSTX | INTERNAL REVENUE - TEXAS | 9/9/2009 | 20082217 | 834.50 |
| ARMCPR | ARMAND CIMINO | 9/9/2009 | 20082218 | 1930.62 |
| STECPR | STEPHANIE CIMINO | 9/18/2009 | 20082219 | 5463.68 |
| VINCPR | VINCE CIMINO | 9/18/2009 | 20082220 | 5182.41 |
| STECIM | STEPHANIE CIMINO | 9/18/2009 | 20082221 | 8164.73 |
| BANOFT | BANK OF THE WEST | 9/15/2009 | 20082222 | 202.85 |
| GECAPI | GE CAPITAL | 9/15/2009 | 20082223 | 9070.62 |
| GECAPI | GE CAPITAL | 9/15/2009 | 20082225 | 4001.05 |
| GENMOT | GENERAL MOTORS ACCEPTANCE CORP | 9/15/2009 | 20082226 | 2541.59 |
| CHAAUT | CHASE AUTO FINANCE | 9/15/2009 | 20082227 | 1296.58 |
| IRSPR | INTERNAL REVENUE - CALIF | 9/11/2009 | 20082228 | 799.90 |
| EDDPR | EMPLOYMENT DEV DEPT - CALIF | 9/22/2009 | 20082231 | 5850.06 |
| EDDPR | EMPLOYMENT DEV DEPT - CALIF | 9/22/2009 | 20082232 | 1040.57 |
| IRSTX | INTERNAL REVENUE - TEXAS | 9/22/2009 | 20082233 | 202.99 |
| IRSTX | INTERNAL REVENUE - TEXAS | 9/22/2009 | 20082234 | 2024.33 |
| IRSTX | INTERNAL REVENUE - TEXAS | 9/22/2009 | 20082236 | 645.58 |
| IRSTX | INTERNAL REVENUE - TEXAS | 9/22/2009 | 20082237 | 834.50 |
| ARMCPR | ARMAND CIMINO | 9/24/2009 | 20082238 | 487.36 |
| STECPR | STEPHANIE CIMINO | 10/2/2009 | 20082239 | 5463.68 |
| VINCPR | VINCE CIMINO | 10/2/2009 | 20082240 | 5182.41 |
| CHATHO | CHARLES T HOWARD | 10/2/2009 | 20082242 | 8164.73 |
| CENPOI | CENTER POINT ENERGY | 8/29/2009 | 20082243 | 202.13 |
| COLSER | COLSON SERVICES | 8/29/2009 | 20082244 | 12.66 |
| BANOFA | BANK OF AMERICA NA | 10/1/2009 | 20082245 | 11058.08 |
| NMHGFI | NMHG FINANCIAL SERVICES, INC. | 10/1/2009 | 20082246 | 7612.68 |
| GECAPI | GE CAPITAL | 10/1/2009 | 20082247 | 2555.78 |
| CHAHOM | CHASE HOME FINANCE | 10/1/2009 | 20082248 | 1331.10 |
| CISSYS | CISCO SYSTEMS CAPITAL CRP | 10/1/2009 | 20082250 | 348.27 |
| FORCRE | FORD CREDIT | 10/1/2009 | 20082251 | 9707.78 |
| FORCRE | FORD CREDIT | 9/30/2009 | 20082252 | 765.70 |
| IRSPR | INTERNAL REVENUE - CALIF | 10/1/2009 | 20082253 | 758.39 |
| EDDPR | EMPLOYMENT DEV DEPT - CALIF | 10/2/2009 | 20082254 | 5850.05 |
| EDDPR | EMPLOYMENT DEV DEPT - CALIF | 10/2/2009 | 20082255 | 1040.57 |
| IRBTX | INTERNAL REVENUE - TEXAS | 10/2/2009 | 20082256 | 202.99 |
| IRSTX | INTERNAL REVENUE - TEXAS | 10/2/2009 | 20082257 | 1674.67 |
| IRSTX | INTERNAL REVENUE - TEXAS | 10/2/2009 | 20082258 | 834.50 |
| IRSTX | INTERNAL REVENUE - TEXAS | 10/2/2009 | 20082259 | 645.58 |
| STECPR | STEPHANIE CIMINO | 10/2/2009 | 20082260 | 78.32 |
| ARMCPR | ARMAND CIMINO | 10/16/2009 | 20082262 | 5182.41 |
| VINCPR | VINCE CIMINO | 10/16/2009 | 20082263 | 5463.68 |
| COUHOM | BANK OF AMERICA HOME MORTGAGE | 10/16/2009 | 20082264 | 8164.73 |
| COUHOM | BANK OF AMERICA HOME MORTGAGE | 10/9/2009 | 20082266 | 3397.75 |
| CHAAUT | CHASE AUTO FINANCE | 10/14/2009 | 20082267 | 2296.40 |
| SCOCOM | SCOULER & COMPNAY | 10/2/2009 | 20082269 | 25000.00 |
| BANOFT | BANK OF THE WEST | 10/15/2009 | 20082270 | 9070.62 |
| GECAPI | GE CAPITAL | 10/15/2009 | 20082271 | 4001.05 |
| GENMOT | GENERAL MOTORS ACCEPTANCE CORP | 10/15/2009 | 20082272 | 2541.59 |
| SCOCOM | SCOULER & COMPNAY | 10/15/2009 | 20082273 | 1296.58 |
| PERWHI | PERSON WHITWORTH BORCHERS & MORALES, LLP | 10/14/2009 | 20082274 | 15000.00 |
| IRSPR | INTERNAL REVENUE - CALIF | 10/16/2009 | 20082276 | 5000.00 |
| EDDPR | EMPLOYMENT DEV DEPT - CALIF | 10/20/2009 | 20082277 | 5850.06 |
| IRSTX | INTERNAL REVENUE - TEXAS | 10/20/2009 | 20082279 | 1040.57 |
| IRSTX | INTERNAL REVENUE - TEXAS | 10/20/2009 | 20082280 | 834.50 |
| IRSTX | INTERNAL REVENUE - TEXAS | 10/20/2009 | 20082283 | 1913.57 |
| IRSPR | INTERNAL REVENUE - CALIF | 10/20/2009 | 20082283 | 645.58 |
| IRSTX | INTERNAL REVENUE - TEXAS | 10/28/2009 | 20082285 | 39.23 |
| ARMCPR | ARMAND CIMINO | 10/28/2009 | 20082286 | 43.94 |
| STECPR | STEPHANIE CIMINO | 11/2/2009 | 20082292 | 5463.68 |
| VINCPR | VINCE CIMINO | 11/2/2009 | 20082293 | 5182.41 |
| VINCIM | VINCE CIMINO | 11/2/2009 | 20082294 | 8164.73 |
| TEXWOR | CASHIER | 11/2/2009 | 20082295 | 891.09 |
| COLSER | COLSON SERVICES | 10/28/2009 | 20082296 | 221.33 |
| NMHGFI | NMHG FINANCIAL SERVICES, INC. | 11/2/2009 | 20082300 | 11058.08 |
| GECAPI | GE CAPITAL | 11/2/2009 | 20082296 | 2555.78 |
| FORCRE | FORD CREDIT | 11/2/2009 | 20082301 | 765.70 |
| FORCRE | FORD CREDIT | 11/2/2009 | 20082302 | 798.39 |
| BANOFA | BANK OF AMERICA NA | 11/2/2009 | 20082304 | 7612.68 |
| CHAHOM | CHASE HOME FINANCE | 11/2/2009 | 20082305 | 348.27 |
| CENPOI | CENTER POINT ENERGY | 10/28/2009 | 20082306 | 12.66 |
| IRSPR | INTERNAL REVENUE - CALIF | 11/3/2009 | 20082307 | 5850.06 |

| | | | | |
|---|---|---|---|---|
| EDDPR | EMPLOYMENT DEV DEPT - CALIF | 11/3/2009 | 20082308 | 1040.57 |
| IRSTX | INTERNAL REVENUE - TEXAS | 11/3/2009 | 20082309 | 1707.28 |
| IRSTX | INTERNAL REVENUE - TEXAS | 11/3/2009 | 20082310 | 645.56 |
| IRSTX | INTERNAL REVENUE - TEXAS | 11/3/2009 | 20082311 | 624.50 |
| HENNIL | HENRY NILES | 11/4/2009 | 20082312 | 15000.00 |
| SCOCOM | SCOULER & COMPNAY | 11/3/2009 | 20082313 | 25000.00 |
| CISSYS | CISCO SYSTEMS CAPITAL CRP | 11/3/2009 | 20082314 | 6707.78 |
| | | TOTALS | | 1063351.66 |

| Name | Relationship to Debtor | Nov 23 2008 thru Dec 2008 Gross Amounts | Amount Paid from Jan thru Nov 11 09 | Amount Unpaid From Nov 12 Thru 23 09 | TOTAL Current Yr Prior to Chapter 11 | Basis of payment |
|---|---|---|---|---|---|---|
| Mary Cimino | relative of general partner | $ 1,592.35 | $ 25,052.38 | $ 636.96 | $ 27,281.89 | Payroll |
| Michele D. Cimino | relative of general partner | $ 3,461.58 | $ 54,461.52 | $ 1,384.65 | $ 59,307.75 | Payroll |
| Christina N. Cimino | relative of general partner | $ 3,825.47 | $ 57,039.62 | $ 1,450.23 | $ 62,115.32 | Payroll |
| Juan Jose Morales Avina | relative of general partner | $ 3,460.84 | $ 32,415.52 | $ 992.37 | $ 36,868.73 | Payroll |
| Christina N. Cimino | relative of general partner | | | | $ 6,642.08 | Exp Reimbursments |
| Joe Cimino | former general partner and relative | | | | $ 6,373.09 | Distribution |
| Michele D Cimino | relative of general partner | | | | $ 2,033.92 | Exp Reimbursments |
| Armand Cimino | general partner | | | | $ 180,652.14 | Compensation |
| Armand Cimino | general partner | | | | $ 2,335.50 | Taxes |
| Armand Cimino | general partner | | | | $ 1,302.67 | Health Ins |
| Armand Cimino | general partner | | | | $ 4,904.32 | Health Ins |
| Armand Cimino | general partner | | | | $ 882.46 | Compensation |
| Armand Cimino | general partner | | | | $ 4,963.42 | Reimbursements |
| Stephanie Cimino | general partner | | | | $ 125,575.36 | Compensation |
| Stephanie Cimino | general partner | | | | $ 119,918.26 | Life Insurance |
| Stephanie Cimino | general partner | | | | $ 2,335.50 | Taxes |
| Stephanie Cimino | general partner | | | | $ 1,760.00 | Health Ins |
| Stephanie Cimino | general partner | | | | $ 789.17 | Health Ins |
| Stephanie Cimino | general partner | | | | $ 965.13 | Compensation |
| Vince Cimino | general partner | | | | $ 229,093.00 | Compensation |
| Vince Cimino | general partner | | | | $ 1,761.00 | Taxes |
| Vince Cimino | general partner | | | | $ 3,520.00 | Health Ins |
| Vince Cimino | general partner | | | | $ 5,578.24 | Health Ins |
| Vince Cimino | general partner | | | | $ 21,033.50 | Life Insurance |
| Vince Cimino | general partner | | | | $ 2,790.89 | Reimbursements |
| Vince Cimino | general partner | | | | $ 43,940.70 | Life Insurance |
| Vince Cimino | general partner | | | | $ 24,930.40 | BofA (CountryWide)-Mor |
| Jimco | Landlord (insider owned) | | | | $ 61,138.48 | office rent |
| Cimino Brothers de Mexico | Wholly-owned subsidiary | | | | $ 6,403,541.16 | product purchases |

# EXHIBIT F

# VALUATION OF CIMINO BROTHERS PRODUCE WITH KEY PERSONS

## *ENTERPRISE (DEBT FREE) VALUE WITH THE CIMINOS REMAINING AT THE COMPANY*

The value of Cimino Brother Produce, assuming the Ciminos remain at the Company, on a debt-free basis is $7,550,000 as of the Valuation Date of May 24, 2010. The valuation of $$7.55 million is based on the Company's projections and reflects the April 30, 2010 Net Working Capital balance. The projections assume various restructuring measures discussed elsewhere.

As of April 30, 2010, the Company's net working capital was $768,000[1]. Of this amount, approximately $700,000 in accounts receivable is overdue by 90 days.

## *EQUITY VALUE WITH THE CIMINOS REMAINING AT THE COMPANY*

Our analysis shows that the total debts of the Company are approximately $11.4 million. Since the debts exceed the debt-free-value of the Company, **the value of the Company's equity is zero**.

---

[1] Current Assets $2,029,000 less Current Liabilities of $1,261,000.

# VALUATION OF CIMINO BROTHERS PRODUCE WITHOUT KEY PERSONS

Cimino Brothers Produce is extremely dependent on certain Key Personnel. Without these Key Personnel, the Company has negligible value. The main reason is that the sales are dependent on the personal relationships between Key Persons and the customers. If the Key Persons leave the Company, the customers will follow them. We estimate that 90% of the sales are dependent on relationships with Key Persons. The second main reason is that the Company depends on the production expertise of Key Persons. The Company averages approximately $2.00 more per unit than the national average. Without the production expertise of the Key Persons, the higher revenue per unit would decline without them in the Company. Below we discuss the Key Persons and their impact on the value of the Company.

The Key Personnel are the following individuals (Collectively, "Key Persons"):

- Vince Cimino heads the Salinas, California office, which is responsible for all sales, marketing and administrative functions for the Debtor. He is also the Debtor's Chief Financial Officer (CFO). In addition to his duties as CFO, Vince Cimino is responsible for establishing and managing relationships with key customers and carrying out administrative functions related to the day-to-day operations. As of April 19, 2010, Vince Cimino receives compensation of $9,405.45 bi-monthly.

- Armand Cimino is responsible for managing and overseeing the Debtor's Texas and Mexico operations. In 1996, Armand Cimino moved to Mexico and established production and the post harvest processes. Additionally, he developed the quality control systems, food safety procedures, accounting, maintenance, packing, and purchasing. He is responsible for managing relationships with growers, scheduling harvesting and ensuring quality control. In 2005-2006, Armand facilitated the acquisition and construction of the Laredo operation. Mr. Cimino coordinates the operations between the Debtor and its subsidiary in Mexico. During the period 2005-2008, the Debtor was the largest fresh broccoli shipper in Mexico, and it was the largest shipper of Asian cut broccoli crowns in North America. As of April 19, 2010, Armand Cimino receives compensation of $4,702.71 bi-monthly.

- Stephanie Cimino is a part of the core team in Texas and Mexico. Ms. Cimino manages and operates the Debtor's operations in Texas and coordinates operations in Mexico, along with Armand Cimino. She focuses on the daily operation, from a management and administrative side, to assist the Debtor in operating efficiently. As of April 19, 2010, Stephanie Cimino receives compensation of $4,702.71 bi-monthly.

The Company's significant growth and market leadership are the result of the Key Persons' complementary capabilities.

## *VALUATION METHOD APPLIED*

The following is a summary description of the income approach and assumptions that were utilized to value CBP without Key Persons.

### Income Approach

The Income Approach indicates the fair market value of an asset based on the value of the cash flows that the asset could be expected to generate in the future. This approach specifically applies the Discounted Cash Flow Method. The Discounted Cash Flow Method is comprised of four steps:

1) Estimate future cash flows for a certain discrete projection period;

2) Discount these cash flows to present value at a rate of return that considers the relative risk of achieving the cash flows and the time value of money;

3) Estimate the residual value of cash flows subsequent to the discrete projection period if applicable; and

4) Combine the present value of the residual cash flow with the present value of discrete projection period cash flows to indicate the fair market value.

To value CBP without the Key Persons, we estimated the cash flows from the Company's operations over the projected period without the Key Persons. The amount of revenues and profits that are expected to be lost each year if the Key Persons are not in the Company is based on discussions with the Management and review of the details of the customer list, industry pricing, and industry gross margin analysis. In the absence of the Key Persons, the Company's forecasted revenue will decline by approximately 90% during the proforma period. Additionally, the Company's expected cost of goods sold as a percentage of revenue will increase by 2.5% during the pro forma period. Below we discuss the impact of the Key Persons in more detail.

### Revenue

1. **Customer Relationships** – In an established company, the customer relationships have been developed over a period of years. The customer relationships reflect the sum total of the ongoing sales efforts of the business over its life. A customer relationship exists, even if it is not contractual, if there is a reasonable expectation that the customer will continue to purchase goods or services. The probable profit that will be generated by the existing customer relationships in future years is an important factor in assessing the business overall. Among Vince Cimino's strengths are the close relationships he has cultivated with his customers. He spends a majority of his time in building relationships with the Company's existing and new customers. Based on discussions with Vince Cimino, he has personal relationships with customers accounting for approximately 85%

Cimino Brothers Produce
Valuation prepared by Crowe Horwath LLP

of sales in 2009 and 70% of sales in 2008. We weighted 66.63% to 2009 and 33.34% to 2008 customers for a weighted average potential impact to the revenue of 80%. The probability of these customers leaving with Vince is approximately 100%. Additionally, the probability of remaining 20% of the Company's customers leaving is approximately 50%. The net expected impact on sales is a reduction of 90%.

If Vince were to leave and establish a start-up company to compete or join a competitor, we assume there will be a negligible lag time for him to compete directly against CBP.

2. **Premium Pricing** – Given the year-round growing season for its product and the Key Persons' proprietary methods of growing, packing, processing, shipping, and delivering its fresh produce, management believes that the Company's products are fresher and considered higher quality than that of its competitors in North America. Thus, the Company commands higher per unit pricing. For instance, CBP's broccoli price per case has been on average $2.00, (29%) higher than the national average over the 2000 to 2008 period. Please see the Company's analysis below:

Cimino Brothers Produce
Sales by Ship date
Sales Synopsis

| YEAR | QUANTITY | Cimino Brother Produce AVE PRICE | FOB $ SALES | U.S.A. GOV AVE | U.S.A. GOV $ SALES | DIFF +/- | ADDITIONAL SALES INCOME |
|------|----------|---------|---------|---------|---------|---------|---------|
| 2000 | 270,851 | $8.46 | $ 2,291,833 | $7.17 | $ 1,942,002 | $1.29 | $ 349,831 |
| 2001 | 498,752 | $8.91 | $ 4,443,880 | $6.93 | $ 3,456,351 | $1.98 | $ 987,529 |
| 2002 | 720,927 | $9.27 | $ 6,682,993 | $6.98 | $ 5,032,070 | $2.29 | $ 1,650,923 |
| 2003 | 896,740 | $9.29 | $ 8,330,715 | $7.31 | $ 6,555,169 | $1.98 | $ 1,775,545 |
| 2004 | 1,271,311 | $8.68 | $ 11,040,065 | $7.88 | $ 10,017,931 | $0.80 | $ 1,022,134 |
| 2005 | 1,829,164 | $7.52 | $ 13,755,313 | $6.01 | $ 10,993,276 | $1.51 | $ 2,762,038 |
| 2006 | 1,908,805 | $8.76 | $ 16,721,132 | $6.03 | $ 11,510,094 | $2.73 | $ 5,211,038 |
| 2007 | 1,671,569 | $9.17 | $ 15,323,273 | $6.10 | $ 10,196,571 | $3.07 | $ 5,126,702 |
| 2008 | 1,612,732 | $8.81 | $ 14,208,169 | $6.50 | $ 10,482,758 | $2.31 | $ 3,725,411 |
| OVERALL | 10,680,851 | $8.76 | $ 92,797,373 | $6.77 | $ 70,186,222 | $2.00 | $ 22,611,151 |

¹ EVERY JUNE, THE MONTEREY COUNTY AG COMMISIONER'S OFFICE COMES OUT WITH ITS ANNUAL REPORT FOR THE PREVIOUS YEAR. THE REPORT USES THE DATA THAT THE U.S.D.A. ACCUMULATES ALL YEAR TO GIVE READERS CROP ACRES, CROP YIELDS IN TONS, AND VALUE PER TON PER ACRE. THIS CRITERIA IS WHAT IS USED TO COMPARE OURSELVES TO THE MARKET PLACE.

### Gross Margin:

3. **Key Persons' Know How** – Based on preceding discussions on the Company's premium pricing, production efficiencies and Key Persons' know-how, CBP earns an additional 2.5% higher gross margin for its broccoli. The gross margin of CBP without Key Persons is projected to increase from 18.5% in year 1 to a normalized level of 25% in year 5 and during the remaining proforma period without Key Persons.

Cimino Brothers Produce
Valuation prepared by Crowe Horwath LLP

**Operating Expenses**

4. Based on the review of operating expense line items and discussions with management, we assumed that 25% of the operating expenses are fixed costs and 75% are variable costs. Thus, we assumed that the decline in sales resulting from the departure of the Key Persons would result in a decline of approximately 75% of the operating expenses during the proforma period.

**The concluded fair value of CBP, before debt and without Key Persons, is determined to be $0.**

Crowe reserves the right to amend its analysis and conclusions as new information or assumptions become available.

.

Cimino Brothers Produce
Valuation prepared by Crowe Horwath LLP

# ANALYST'S QUALIFICATIONS

### Daniel L. McConaughy, PhD, ASA
### Director, Valuation Services

#### Contact Information
Crowe Horwath LLP
15233 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-2201
818-325-8418 Direct
818.501.5200 Main
818.325-8518 Fax
Email: daniel.mcconaughy@crowehorwath.com

#### Experience

Dr. McConaughy has over 15 years of experience, as a Finance professor and in consulting on the valuation of businesses and business interests, derivative securities, economic damages, and intangible assets for bankruptcy, financial reporting, tax purposes, mergers and acquisitions, financial structuring, and litigation support services.

In addition to the valuation of businesses and financial securities, Dr. McConaughy has consulted on the cost of capital, the determination of the appropriate discounts and premia for control and marketability associated with closely held businesses, restricted securities of public companies, other financial securities, and limited partnership / LLC interests in connection with tax planning and IRS appeals, estate valuations, ESOP valuations and charitable donations.

Dr. McConaughy's publications include the areas of cost of capital, capital structure, IPOs, mergers and acquisitions, illiquidity discounts, family business, executive compensation, and restricted securities under Rule 144. A complete list is available on request.

Dr. McConaughy is an Associate Professor of Finance at California State University, Northridge.

#### Education

- PhD in Finance, University of Cincinnati
- PhD and MA in Syriac and Greek, University of Chicago
- BS in Business Administration, The College of Charleston

#### Professional Memberships

- American Society of Appraisers

# EXHIBIT G

# Cimino Brothers Produce
## Cash Collateral Budget
### Actual Amounts by Month

| | December 2009 | January 2010 | February 2010 | March 2010 | April 2010 | May 2010 thru 21st | Total |
|---|---|---|---|---|---|---|---|
| ESTIMATED CARTON | 78,517 | 98,778 | 82,011 | 86,275 | 73,902 | 55,271 | 474,754 |
| MARKET PRICE | 12.16 | 8.85 | 9.93 | 14.08 | 12.38 | 13.53 | 11.82 |
| SALES | 930,917 | 872,410 | 810,134 | 1,214,956 | 915,127 | 741,985 | 5,485,529 |
| PRODUCT PURCHASES | 647,422 | 581,664 | 482,882 | 484,785 | 664,234 | 335,814 | 3,196,800 |
| FREIGHT | 163,466 | 181,799 | 140,902 | 114,195 | 162,982 | 83,053 | 846,396 |
| | - | | | | | | |
| BEGINNING CASH | 18,520 | 551,880 | 374,717 | 247,055 | 172,924 | 339,530 | 18,520 |
| CASH RECEIPTS | 1,530,630 | 761,683 | 899,832 | 926,376 | 1,326,239 | 556,654 | 6,001,414 |
| AVAILABLE CASH | 1,549,150 | 1,313,563 | 1,274,549 | 1,173,431 | 1,499,163 | 896,184 | 6,019,934 |
| | | | | | | | |
| **EXPENSES** | | | | | | | |
| | | | | | | | |
| PRODUCE PURCHASED | 647,422 | 581,664 | 482,882 | 484,785 | 664,234 | 335,814 | 3,196,800 |
| | | | | | | | |
| AUTO / FUEL | - | - | 1,150 | 1,395 | 631 | - | 3,176 |
| BANK CHARGES & FEES - ACH | - | - | - | - | - | | - |
| SUBSCRIPTIONS - PRIMUS & ITRADE | 1,811 | 770 | 776 | 1,451 | 625 | 1,400 | 6,833 |
| BUSINESS PROMOTION | - | - | - | 564 | - | - | 564 |
| PROMOTION - SYSCO & PRO*ACT | - | - | 4,333 | 4,819 | - | 9,472 | 18,624 |
| INSURANCE - HEALTH - BLUE CROSS | 14,876 | 7,690 | 7,344 | 10,255 | 8,394 | 6,421 | 54,979 |
| INSURANCE - LIABILITY & AUTO | 4,882 | - | 3,941 | 11,610 | 4,723 | 8,655 | 33,811 |
| INSURANCE - LIFE | 3,683 | - | - | 1,740 | 1,928 | - | 7,351 |
| WORKERS COMP | 4,344 | 1,551 | 276 | 2,353 | 502 | - | 9,026 |
| JANITORIAL SERVICE | 1,173 | 492 | 606 | 532 | 492 | 492 | 3,787 |
| ALARM MONITORING | - | 358 | - | - | 358 | - | 716 |
| LEGAL - LEVENE BENDER- | - | - | - | - | - | - | - |
| OFFICE EXPENSES | 232 | 1,747 | 959 | 355 | 1,052 | 30 | 4,375 |
| POSTAGE | 161 | 339 | 594 | 696 | 638 | 101 | 2,529 |
| RENT - JAVCO (rabobank) | 9,253 | 6,582 | 6,582 | 5,000 | 5,000 | 5,000 | 37,417 |
| RENT - MEXICO CARTON WAREHOUSE | - | 288 | - | - | - | 238 | 526 |
| TRAVEL | - | - | 497 | 60 | 258 | 202 | 1,017 |
| SALARIES & WAGES - CA | 118,401 | 86,938 | 85,429 | 88,609 | 94,218 | 72,803 | 546,398 |
| TAXES / PAYROLL - CA&TX | 9,024 | 12,943 | 33,693 | 7,048 | 6,994 | 7,182 | 76,884 |
| TAXES / LICENSES/FEES | 514 | - | 859 | 70 | 550 | - | 1,993 |
| TAXES / CHILD SUPPORT | 974 | 555 | 370 | 370 | 370 | 370 | 3,009 |
| TELEPHONE | 1,233 | 413 | 7,535 | 6,539 | 5,908 | 3,432 | 25,060 |
| UTILITIES | 453 | 1,433 | 1,162 | 1,181 | 267 | 564 | 5,060 |
| INTEREST EXPENSE - WFB | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 41,000 | 246,000 |
| ACH - FORD MOTOR CREDIT - EXPLORER | 945 | 766 | - | 766 | 766 | 1,531 | 4,774 |
| ACH - SBA LAREDO COOLER | 13,638 | 8,478 | 11,058 | 11,058 | 11,058 | - | 55,290 |
| ACH - B OF A LAREDO COOLER | 9,636 | 11,457 | 7,813 | 7,813 | 7,813 | 7,813 | 52,344 |
| ACH - CISCO PHONE SYSTEM | 8,273 | 13,416 | - | 6,708 | 6,708 | - | 35,105 |
| ACH - GE CAPITAL - 2 CAT FORKLIFTS | - | 1,331 | 1,331 | 1,331 | 1,331 | 1,331 | 6,655 |
| ACH - FORD MOTOR CREDIT - FORD TRK | - | 1,596 | - | 798 | 798 | 797 | 3,989 |
| ACH - CHASE LAREDO HOUSE 2ND | 430 | 696 | 348 | 348 | 348 | 348 | 2,519 |
| ACH - GE CAPITAL - FORKLIFTS | 596 | 2,556 | 2,556 | - | 2,556 | 2,556 | 10,820 |
| ACH - B OF A MORTGAGE LAREDO HSE | 4,191 | 2,458 | - | 2,458 | 3,798 | 2,458 | 15,363 |
| ACH - B OF A MORTGAGE VINCE HSE | - | - | - | - | - | - | - |
| ACH - CHASE - MUSTANG | 987 | - | 1,600 | 800 | - | - | 3,387 |
| ACH - BOTW - FORKLIFTS, SCISSORLIFT | 11,188 | 9,071 | 9,071 | 9,071 | 1,745 | 873 | 41,018 |
| ACH - GE CAPITAL - GENERATOR | 616 | 7,695 | 4,001 | 4,001 | 4,001 | 4,001 | 24,315 |
| ACH - GE CAPITAL - COMPRESSOR | 2,515 | 5,084 | 2,542 | 5,097 | 2,542 | 2,542 | 20,321 |
| ACH - GMAC - YUKON XL | 300 | 1,287 | 1,287 | 1,287 | - | 1,287 | 5,447 |
| MONTHLY ESCAPE PAYMENT -CHECK | 599 | 599 | 600 | - | - | - | 1,798 |
| MONTHLY EXPEDITION PAYMENT - CHECK | - | 1,128 | 1,128 | 1,128 | 1,128 | 1,128 | 5,639 |
| MONTHLY EXPLORER PAYMENT - CHECK | 984 | 506 | 506 | 506 | 506 | 506 | 3,514 |
| RETAINER | - | - | - | - | - | - | - |
| PROFESSIONAL FEES | - | - | 4,145 | - | 163 | - | 4,308 |
| UNITED STATES TRUSTEE FEES | - | 6,500 | - | - | 9,750 | - | 16,250 |
| MISCELLANEOUS | - | 1,600 | 2,062 | 654 | 251 | - | 4,568 |
| TOTAL OPERATING EXP. - CA | 266,913 | 239,320 | 247,150 | 239,471 | 229,170 | 184,533 | 1,406,557 |

# Cimino Brothers Produce
## Cash Collateral Budget
### Actual Amounts by Month

| | December 2009 | January 2010 | February 2010 | March 2010 | April 2010 | May 2010 thru 21st | Total |
|---|---|---|---|---|---|---|---|
| OPERATING EXPENSES - LAREDO | - | - | - | - | - | - | - |
| AUTO / FUEL - LAREDO | 86 | - | 721 | 643 | - | - | 1,450 |
| FUEL/DIESEL - LAREDO | 59 | - | 645 | - | 202 | - | 906 |
| EQUIPMENT RENTAL - LAREDO | 248 | 251 | 604 | 596 | 303 | 292 | 2,294 |
| UNIFORM LAUNDRY - LAREDO | 61 | - | - | - | - | - | 61 |
| WORKERS COMP - LAREDO | 3,691 | 2,406 | 1,991 | - | 1,801 | - | 9,889 |
| ALARM MONITORING - LAREDO | 128 | 128 | - | 128 | - | - | 384 |
| OFFICE SUPPLIES - LAREDO | 49 | 254 | 464 | 30 | 238 | 303 | 1,338 |
| COOLER SUPPLIES - LAREDO | - | 12,483 | 28,143 | 25,767 | 21,361 | 428 | 88,183 |
| INSPECTIONS - LAREDO | 640 | 1,800 | 9,524 | 3,629 | 5,363 | 2,401 | 23,357 |
| JANITORIAL - LAREDO | - | 17 | - | - | 522 | - | 539 |
| POSTAGE - LAREDO | 41 | 31 | 81 | 123 | - | - | 276 |
| PROPERTY TAXES - LAREDO | 64 | - | - | - | - | - | 64 |
| REPAIRS & MAINT - LAREDO | - | - | 1,336 | 2,270 | 585 | 899 | 5,090 |
| SECURITY - LAREDO | - | - | - | - | 128 | - | 128 |
| SALARIES & WAGES - TX | 26,905 | 14,563 | 12,507 | 29,404 | 18,481 | 13,668 | 115,528 |
| TAXES / PAYROLL - TX | 1,953 | - | - | - | 77 | - | 2,030 |
| TELEPHONE - LAREDO | 448 | 238 | 4,606 | 1,042 | 288 | 1,000 | 7,622 |
| TRAVEL - LAREDO | - | - | - | - | - | - | - |
| PRODUCT FREIGHT | 38,400 | 76,147 | 224,040 | 190,360 | 206,686 | 123,665 | 859,298 |
| UTILITIES - LAREDO | 8,356 | 9,272 | 11,875 | 13,353 | 8,520 | 9,556 | 60,932 |
| UTILITIES - LAREDO HOUSE | 410 | 271 | - | 223 | 1,100 | - | 2,004 |
| INSURANCE - LAREDO HOUSE | 1,396 | - | 925 | 8,683 | 575 | 4,281 | 15,860 |
| OUTBOUND FREIGHT (GROSSED TO SALES | - | - | - | - | - | - | - |
| THIRD PARTY CROSS DOCK FACILITIES | - | - | - | - | - | - | - |
| TOTAL OPERATING EXP. - LAREDO | 82,935 | 117,862 | 297,462 | 276,251 | 266,230 | 156,493 | 1,197,233 |
| | | | | | | | |
| TOTAL OPERATING EXPENSES | 997,270 | 938,846 | 1,027,494 | 1,000,507 | 1,159,633 | 676,840 | 5,800,590 |
| **ENDING CASH** | 551,880 | 374,717 | 247,054 | 172,924 | 339,530 | 219,344 | 219,343 |

# EXHIBIT H

# Cimino Brothers Produce

|  | As of May 21, 2010 |
|---|---|
| Cash at Petition Date | 117,000 |
| Cash at Month End | 219,344 |
| Net Change in Cash | 102,344 |
|  |  |
| A/R at Petition Date | 1,877,437 |
| A/R at Month End (per operating report) | 1,650,272 |
| Net Change in A/R | (227,165) |
|  |  |
| Inventory at Petition Date | 126,549 |
| Inventory at Month End (per operating report) | 226,568 |
| Net Change in Inventory | 100,019 |
|  |  |
| Net Change in Assets | (24,802) |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Ste. 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING PLAN OF REORGANIZATION DATED AS OF JUNE 16, 2010** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 21, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

* Effie F. Anastassiou    effieesq@salinasaglaw.com, paralegal@salinasaglaw.com
* Todd M. Arnold    TMA@lnbrb.com
* Jason Binford    jason.binford@haynesboone.com
* Bradley D. Blakeley    bblakeley@blakeleyllp.com
* Todd Dressel    tdressel@winston.com, btolmer@winston.com
* David B. Golubchik    dbg@lnbrb.com, angela@lnbrb.com
* Michael J. Gomez    mgomez@frandzel.com, efiling@frandzel.com
* Ralph P. Guenther    rguenther@duffyguenther.com
* Edwin L. Joe    edwin.joe@sba.gov
* Brian Y. Lee    bylee@winston.com
* Paul E. Manasian    manasian@mrlawsf.com, gradl@mrlawsf.com
* Austin P. Nagel    melissa@apnagellaw.com
* Office of the U.S. Trustee / SJ    USTPRegion17.SJ.ECF@usdoj.gov, ltroxas@hotmail.com
* Marion I. Quesenbery    marion@rjlaw.com
* Gregory A. Rougeau    rougeau@mrlawsf.com, gradl@mrlawsf.com
* Timothy J. Silverman    tim@sgsslaw.com
* John M. Sorich    generalmail@aswlawoffice.com
* James A. Tiemstra    jat@tiemlaw.com, sml@tiemlaw.com
* Richard James Wallace    richard.wallace@solidcounsel.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On  June 21, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**VIA OVERNIGHT DELIVERY**
Hon. Arthur S. Weissbrodt
Attn: Tanya Bracegirdle, Courtroom Deputy
United States Bankruptcy Court
280 South First Street, Room 3020
San Jose, CA 95113-3099          ☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 21, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

| **June 21, 2010** | Angela Antonio | /s/ Angela Antonio |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F**                                                                                                        **9013-3.1**